**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:15-cv-2362

DANA ALIX ZZYYM,

      Plaintiff,

v.

JOHN F. KERRY, in his official capacity as the Secretary of State; and,

SHERMAN D. PORTELL, in his official capacity as the Director of the Colorado Passport
    Agency for the United States Department of State,

      Defendants.

---

**COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF**

---

    Plaintiff Dana Alix Zzyym ("Dana" or "Plaintiff"), by and through the undersigned

attorneys, files this Complaint for Declaratory, Injunctive, and Other Relief against Defendant

John F. Kerry in his official capacity as the Secretary of State of the United States ("Defendant

Kerry" or "Secretary") and Defendant Sherman D. Portell in his official capacity as the Director

of the Colorado Passport Agency for the United States Department of State ("Defendant Portell")

(jointly, "Defendants" or "State Department"). In support thereof, Plaintiff alleges as follows:

**<u>INTRODUCTION</u>**

    1.    This is an action to hold unlawful and set aside certain agency actions by the State

Department that, in effect, deprive Dana, a United States citizen and U.S. Navy veteran who was

born intersex, a U.S. passport for international travel because Dana's gender identity is neither

male nor female. By denying Dana a U.S. passport with a gender marker that respects Dana's

1

identity, Defendants lock Dana within the confines of our nation's borders with no legal means to depart the United States.

2.      The State Department's denial of Dana's passport application solely because Dana cannot accurately identify as either male or female was arbitrary and capricious, not in accordance with law, in excess of statutory jurisdiction and authority and violates constitutional guarantees of equality and liberty. Specifically, the Constitution prohibits the State Department from discriminating against Dana based on sex or because Dana is a member of a class of people who identify as neither male nor female; and prohibits the State Department from infringing upon Dana's fundamental rights and liberty interests, including the freedom to travel and right to define and express one's own identity, all without adequate justification.

3.      Therefore, Plaintiff seeks injunctive relief and a judicial declaration that the State Department has exceeded its authority under the Administrative Procedure Act ("APA"), 5 U.S.C. §706(2) and the Fifth Amendment to the U.S. Constitution.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 (federal question). This Court has jurisdiction to review final agency action pursuant to the APA, 5 U.S.C. § 702 ("[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."). Plaintiff has exhausted all administrative remedies.

5.      Venue is properly vested in the District of Colorado pursuant to 28 U.S.C. § 1391(e) because Defendants are officers or employees of an agency of the United States acting in their official capacities and because this judicial district is where Defendant Portell performs his

official duties, where a substantial part of the events or omissions giving rise to the claim

occurred, and where Plaintiff resides and no real property is involved in the action.

6.      This Court can grant declaratory and injunctive relief under 28 U.S.C. § 2201

(declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), and 5 U.S.C. §§ 701-706, for

violations of, *inter alia*, the APA, 5 U.S.C. § 706, and because the State Department actions are

contrary to the Fifth Amendment to the U.S. Constitution. The Court may also compel an officer

or employee of the State Department to perform a nondiscretionary duty under 28 U.S.C. § 1361

(mandamus relief).

## PARTIES

7.      Plaintiff Dana Alix Zzyym is a United States citizen born in Michigan, who

currently resides in Fort Collins, Colorado.

8.      Defendant John F. Kerry is the duly appointed and confirmed Secretary of State

for the United States. In this capacity, Defendant Kerry has the authority to grant and issue

passports, and cause passports to be granted, issued, and verified in foreign countries by

diplomatic and consular officers of the United States, and by such other employees of the

Department of State who are citizens of the United States as he may designate. 22 U.S.C. §

211(a). Defendant Kerry is the head of the U.S. Department of State and responsible for setting

and overseeing implementation of the policies and procedures employed by the agency and all its

various subdivisions, including the Bureau of Consular Affairs. Defendant Kerry is sued in his

official capacity.

9.      Defendant Sherman D. Portell is the Director of the Regional Passport Agency

located in Aurora, Colorado. In this capacity, Defendant Portell is responsible for the Colorado

Passport Agency ("CPA"), which is within the Bureau of Consular Affairs and one of 26

regional passport agencies and centers open to the public that, among other things, reviews

passport applications and issues U.S. passports to traveling Americans. Defendant Portell is sued

in his official capacity

## STATEMENT OF FACTS

### I.   DANA, WHO WAS BORN INTERSEX, IS NEITHER MALE NOR FEMALE

10.     Plaintiff Dana Zzyym was born in 1958. Because Dana was born intersex, with

ambiguous external sex characteristics, the sex field on Dana's birth certificate was initially left

blank.

11.     "Intersex" is an umbrella term used to describe a wide range of natural bodily

variations. Intersex people are born with sex characteristics that do not fit typical binary notions

of bodies designated "male" or "female." In some cases, intersex traits are visible at birth, while

in others they are not apparent until puberty. Some variations may not be visibly apparent at all.

Experts estimate that between 0.05% and 1.7% of the population is born with intersex traits.

12.     Moments after a child is born, the general practice in this country is for a

physician to assess visually the newborn's genitalia and assign the newborn's sex as "male" or

"female" on that basis. Sex, however, is much more complex, and is determined by a number of

factors, including chromosomes, gonads, hormones, genitalia and gender identity. A person's

gender identity, meaning the innate sense of being male, female, both, or neither, is the most

important determinant of that person's sex. Although there is not yet one definitive explanation

for what determines gender identity, recent research points to the influence of biological factors,

most notably the role of sex differentiation in the brain in gender identity development.

13.     When a child is born with mixed or ambiguous markers of sex, doctors often assign a sex they guess is likely to match the child's gender identity. However, it is impossible to predict with certainty how an intersex infant's gender identity will develop. As with any other person, an intersex person eventually may identify as female, male or, less commonly but with some regularity, as both or neither.

14.     Sometime after Dana's birth, Dana's parents and doctors decided Dana would be raised as a boy. Dana's intersex variance was kept secret from Dana. Dana was given the name "Brian Orin Whitney," and the sex field on Dana's birth certificate was filled in with "Male."

15.     Similar to many other intersex children, by age five, Dana had been subjected to several irreversible, invasive, painful, and medically unnecessary surgeries designed to make Dana's body conform to binary sex stereotypes. The surgeries immediately failed and caused permanent scarring and damage. None of the surgeries Dana underwent altered, or even fully disguised, Dana's intersex nature.

16.     Like many intersex adults subjected to such surgeries as children, Dana experienced shame and stigma, as well as physical and emotional pain caused by attempts to erase Dana's intersex traits. Dana eventually came to realize that Dana had been forced into an incorrect gender category.

17.     In 1978, at the age of twenty, Dana enlisted as a Machinist Mate in the U.S. Navy. During Dana's six years with the Navy, Dana completed three tours of duty in Beirut and one tour throughout the Persian Gulf.

18.     In 1984, Dana declined to re-enlist in the Navy due to increased scrutiny over and interrogation regarding Dana's perceived sexual orientation. In 1991, Dana began working as a

custodian at Colorado State University ("CSU") in Fort Collins.

19.     In 1994, Dana, came to understand the male gender Dana had been arbitrarily and inaccurately assigned as an infant was not accurate. Dana completed a legal name change in 1995, from Brian Orin Whitney to Dana Alix Zzyym.[1]

20.     In approximately 2008, on a suspicion of having been born intersex and receiving "masculinizing" gender-assignment surgeries, Dana began researching possible causes of the severe scarring and damage Dana has lived with since childhood.

21.     In 2009, Dana was examined by a urologist at the Veteran's Affairs ("VA") hospital, who confirmed Dana's intersex traits. The urologist also informed Dana that an orchiectomy and other surgical intervention might greatly reduce the pain Dana had experienced for several years and allow Dana to gain sexual function.  But because the VA would not pay for what it considered to be "transgender" procedures, given Dana's early history of being labeled male, Dana ultimately found a surgeon outside of the VA to complete the procedure. Around the same time, Dana began experimenting with living as female.  However, Dana soon came to understand that living as a woman was not right either.

22.     By 2011, Dana came to terms with being intersex; Dana identifies neither as male nor female. Dana's medical records—provided to Defendants in connection with Dana's application for a U.S. passport—reflect that Dana is intersex, and the doctors who have treated Dana for the last six years consistently report that Dana is intersex. In 2012, Dana successfully

---

[1] As an intersex person who does not identify as either male or female, Dana uses the singular "they," "them," and "their" third-person gender-neutral pronouns. *See* 'They,' the Singular Pronoun, Gets Popular, The Wall Street Journal, April 10, 2015 at http://www.wsj.com/articles/can-they-be-accepted-as-a-singular-pronoun-1428686651; Writing Around Gender, The New York Times, Feb. 6, 2015 at http://www.nytimes.com/times-insider/2015/02/06/writing-around-gender.

amended the gender marker on Dana's certificate of live birth that was originally left blank, and later inappropriately switched to "Male," to "Unknown."

23.     Dana currently serves as the Associate Director for the United States affiliate of the Organisation Intersex International ("OII-USA") (a/k/a Intersex Campaign for Equality).

24.     Dana was invited to attend the International Intersex Forum on October 27-31, 2014, in Mexico City, Mexico to represent and vote on behalf of OII-USA. However, to travel internationally, Dana needed to obtain a U.S. passport.

## II.  THE STATE DEPARTMENT POLICIES REGARDING GENDER MARKERS ON U.S. PASSPORTS

25.     A U.S. passport is a travel document issued under the authority of State Department attesting to the identity and nationality of the bearer. To travel internationally, a U.S. citizen must carry a U.S. passport. 8 U.S.C. § 1185.

26.     Before a U.S. passport can be issued, the applicant "shall subscribe to and submit a written application which shall contain a true recital of each and every matter of fact which may be required by law or by any rules authorized by law to be stated as a prerequisite to the issuance of any such passport." 22 U.S.C. § 213.

27.     A U.S. citizen seeking a first-time passport must complete the two-page Application for a U.S. Passport, Form DS-11 (09-2013) ("Application"), available at http://www.state.gov/documents/organization/212239.pdf. The Application contains twenty-one numbered fields, including a field for "Sex" with two boxes—an "M" box and an "F" box—as shown in the excerpt below:

28.     The State Department requires each applicant to select either "M" for male or "F" for female on the Application.

29.     In addition to submitting a completed Application, proof of identity, a recent color photograph, and fees, a first-time applicant born in the United States must also submit a certified birth certificate, which "must include your full name, date and place of birth, [and] sex . . . ."

30.     An applicant is subject to civil and criminal sanctions for "willfully and knowingly mak[ing] any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another." 18 U.S.C. § 1542

31.     The State Department Foreign Affairs Manual ("FAM") recognizes people born with intersex traits "do[] not fit typical definitions of male or female." *See* 7 FAM 1350 Appendix M, available at http://www.state.gov/documents/organization/143160.pdf (last visited October 25, 2015).

32.     The State Department's current policies prohibit applicants who identify as

neither male nor female from accurately listing their gender.

33.     Defendants will not issue a U.S. passport to an applicant who is unable to select "M" or "F" but has otherwise complied with the application instructions.

### III. THE STATE DEPARTMENT DENIES DANA'S PASSPORT APPLICATION

34.     In September 2014, Dana visited the CPA to obtain a U.S. passport in order to attend the International Intersex Forum in Mexico City. Dana submitted a completed Application, with the requisite identity and citizenship documentation, photograph, and fee payment.

35.     In the sex field on the Application, Dana accurately listed "Intersex"—instead of "M" or "F"—and, by separate letter, clarified that, "I'm not male or female." Dana requested "X" as the marker in the sex field of the passport because such designation conforms to the International Civil Aviation Organization (ICAO) standards for machine-readable travel documents. *See* ICAO Document 9303, Machine Readable Travel Documents, at IV-14 (7th ed. 2015) ("Sex of the holder, to be specified by . . . the capital letter F for female, M for male, or X for unspecified."), available at http://www.icao.int/Security/mrtd/Pages/Document9303.aspx.[2]

36.     In a letter dated September 24, 2014 ("September 2014 Letter"), the State Department, through its customer service department, informed Dana that the "Department of State currently requires the sex field on United States passports to be listed as 'M' or 'F'" and that it was "unable to fulfill your request to list your sex as 'X.'" The September 2014 Letter provided Dana with three alternative options: (a) receive a passport listing Dana as female, (b) receive a passport listing Dana as male, or (c) withdraw Dana's application. Defendant offered

---

[2] ICAO Document 9303 was still in its 6th edition when Dana applied for a passport.  It has since been updated, but the relevant provision remains the same.

no rationale for requiring that an applicant select "M" or "F" on the Application or for requiring an issued passport to identify its holder as "M" or "F."

37.     On December 19, 2014, Dana appeared at the CPA's office to present additional documentation in support of Dana's intersex classification and use of the "X" marker on the passport. Dana again reiterated that Dana only wished to be issued a passport that accurately reflected Dana's gender by the use of a third gender marker.

38.     In a letter dated December 29, 2014 ("Notification of Denial"), Defendant Portell denied Dana's passport application, stating that because "the Department of State requires the sex field on United States passports to be listed as 'M' or 'F,'" it was unable to accommodate Dana's request for the use of the "X" marker in the sex field. Again, the Notification of Denial provided no rationale for requiring that an applicant select "M" or "F" on the Application or for requiring an issued passport to identify its holder as "M" or "F."

39.     In a letter dated February 26, 2015 ("Request for Reconsideration or Hearing"), Dana requested that the State Department reconsider its decision to deprive Dana of a passport for international travel or, alternatively, to provide Dana with a review hearing pursuant to 22 C.F.R. § 51.70(a). Plaintiff's Request for Reconsideration or Hearing expressly noted that the agency's Notification of Denial "did not set forth any explanation, specific reason, or legal basis" for such assertion and that the State Department "must articulate the reasoning behind its conclusion that Dana is not entitled to a U.S. passport with an accurate sex marker[.]"

40.     In a letter dated April 10, 2015 ("April 2015 Letter"), the State Department confirmed that its denial of Dana's passport application due to Dana's inability to select an "M" or "F" marker was final, and denied the request for a review hearing. Reiterating its refusal to

recognize the use of "X" on a U.S. passport, the State Department Director for Legal Affairs,

Jonathan Rolbin, asserted that its "current policy requires that the applicant select 'M' or 'F' on

the sex field on a U.S. passport application, and that the corresponding sex of 'M' or 'F' be

identified on the issued passport." Again, no rationale was provided for requiring that an

applicant select "M" or "F" on the Application or for requiring an issued passport to identify its

holder as "M" or "F." A true and correct copy of Defendant's April 10, 2015, letter is attached

hereto as Exhibit A.

      41.    Aside from Dana's inability to select an "M" or "F" marker, Defendants did not

identify any other issues or deficiencies in connection with Dana's passport application. None of

the provisions in 22 C.F.R. § 51.60 apply. *See* 22 C.F.R. § 51.60 (setting forth reasons for

mandatory and discretionary denials and restrictions of passports).

      42.    The grounds for refusal asserted by the State Department do not relate to Dana's

citizenship or allegiance, nor to criminal or unlawful conduct.

      43.    Dana does not seek to acquire a passport for an unlawful or improper purpose.

      44.    According to Director Rolbin, "Dana remains eligible at any time to submit a new

passport application, provide sufficient supporting documentation, and receive a U.S. passport

listing the sex [either male or female] supported by the documentation." *See* Ex. A.

      45.    For all of the reasons described above, Dana cannot truthfully submit an

application claiming to be either male or female. Therefore, resubmission of a passport

application to the State Department is futile.

      46.    Defendants denied Plaintiff a passport on the basis of personal characteristics

rather than area restrictions affecting all citizens. Other United States citizens are permitted and

currently do travel to Mexico with valid U.S. passports listing an accurate gender marker.

47.     By denying Plaintiff a passport, Defendants have wholly deprived Plaintiff access to any and all means of lawfully exiting the United States.

## CLAIMS FOR RELIEF

### COUNT I:
### VIOLATION OF THE ADMINISTRATIVE
### PROCEDURE ACT (5 U.S.C. § 706(2)(A))

**(The State Department's Conduct Is Arbitrary And Capricious)**

48.     Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

49.     The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if it is not the product of reasoned decisionmaking.  This means, among other things, that an agency must provide an adequate evidentiary basis for its action and consider all important aspects of the problem before it.

50.     The State Department failed to provide a reasoned explanation of both its decision to refuse the Plaintiff a passport and its male-or-female, binary-only gender marker policy (together, "Policy"). Not only did the State Department fail to provide sufficient written notice to Plaintiff supported by the legal and factual basis for its decision to withhold a U.S. passport from Dana, it further failed to articulate any rational connection between the facts found and the course of action taken.

51.     The State Department gave insufficient consideration, if any, to the viability of possible alternatives for passport applicants who are neither male nor female, such as Plaintiff, including the use of the "X" as the marker in the sex field on the passport.

52.     The State Department's decision to deny Plaintiff a passport based upon its Policy is wholly inconsistent with its practice to allow foreign nationals who have a passport with "X" as a sex marker, and otherwise qualify to be admitted, secure entry into the United States.

53.     The State Department's refusal to issue Plaintiff a passport with a gender marker other than "M" (male) or "F" (female) constitutes a clear error of judgment because it runs counter to the evidence before the agency, and is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. Any conclusion the State Department may have made regarding the viability of utilizing a gender marker other than "M" (male) or "F" (female) on U.S. passports for individuals, such as Plaintiff who do not fit into a binary sex classification, is flawed because it does not reflect the State Department bringing expertise to bear on the question.

54.     The State Department has acted by regulatory fiat to effectively prohibit or severely restrict international travel of people who do not fit into a binary sex classification based upon constitutionally protected personal characteristics. The State Department has thus stigmatized and denigrated individuals, including Plaintiff, who are neither female nor male.

55.     Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by the State Department's arbitrary and capricious conduct, and the agency action must therefore be set aside and permanently enjoined.

**COUNT II:**
**VIOLATION OF THE ADMINISTRATIVE**
**PROCEDURE ACT (5 U.S.C. § 706(2)(C))**

**(The State Department's Conduct Exceeds The Authority Delegated By Congress)**

56.     Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

57.     The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

58.     Pursuant to the Passport Act of 1926, 22 U.S.C. § 211a, Defendant Kerry has the power to grant and issue passports, and cause passports to be granted by those acting under him. Any exercise of delegated powers to curtail or diminish personal freedoms, such as the freedom to travel or the freedom to define and express one's identity, must be construed narrowly.

59.     The State Department engages in an unlawful practice of imposing an inaccurate gender marker on a United States passport for people such as Plaintiff who identify as neither male nor female.

60.     The Passport Act of 1926, 22 U.S.C. § 211a, does not expressly or implicitly authorize Defendants to refuse to issue a passport unless and until the applicant accepts either a male or female gender marker inconsistent with that person's gender identity.

61.     The final agency action by the State Department against Plaintiff in denying a passport on the ground that Dana cannot identify as either "M" (male) or "F" (female) is unlawful and *ultra vires*.

62.     No provision of law purports to authorize such authority by the State Department to impinge on Plaintiff's personal freedoms, nor could any law do so constitutionally.

63.     Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by the State Department's exceeding its authority delegated by Congress, and its agency action must therefore be set aside and permanently enjoined.

## COUNT III:
## DEPRIVATION OF DUE PROCESS
### U.S. Const. Amend. V

**(The State Department's Conduct Violates Plaintiff's Fundamental Right To International Travel, And Fundamental Liberty To Make Personal Choices Central To Individual Dignity And Autonomy, Including the Right To Define and Express One's Own Identity And Beliefs)**

65.     Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

66.     The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). In addition, this Court has authority under 28 U.S.C. § 1331 and its traditional powers of equity to declare invalid and enjoin agency action that violates the Constitution.

67.     Where a Complaint contends that agency action offends the Constitution, and for that reason should be set aside, the Court affords no deference to the agency but instead reviews the constitutional issues independently.

68.     The Fifth Amendment to the United States Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend.

V. The Due Process Clause has a substantive component that provides heightened protection against government interference with fundamental rights and liberty interests.

69.     The right to international travel and freedom of movement without undue government restriction is one of the fundamental liberty interests protected by the Due Process Clause of the Fifth Amendment.

70.     Defendants' refusal to issue a U.S. passport to Plaintiff with a gender marker other than "M" (male) or "F" (female) impermissibly infringes upon Plaintiff's fundamental right to movement, including Plaintiff's fundamental right to travel abroad.

71.     The Fifth Amendment's Due Process Clause also protects each person's fundamental liberty to individual dignity and autonomy, including the right to define and express one's own identity, to define one's own concept of existence, and make intimate decisions concerning marriage, procreation, and family life, all without undue government interference.

72.     A person's gender identity constitutes a core aspect of individual self-definition. Defendant's Policy as applied to Plaintiff impermissibly interferes with the most intimate choices a person may make in a lifetime, including Plaintiff's right to existence and self-expression as a person who identifies neither as male nor female. It would disparage Plaintiff's choice to live openly and authentically and diminish Plaintiff's personhood to deny Plaintiff this right.

73.     When government deprives an individual of a fundamental right or substantially infringes upon a fundamental liberty interest, such government action may be sustained only upon a showing that it is, at the very least, substantially related to an important government interest, if not narrowly tailored to serve a compelling government interest. Here, Defendants' Policy lacks adequate tailoring and fails to serve even a legitimate governmental interest.

16

74.     Defendants' Policy violates Plaintiff's fundamental right to travel and

impermissibly infringes upon Plaintiff's fundamental liberty interests in personal decision-

making central to individual dignity and autonomy, in violation of the Fifth Amendment to the

United States Constitution, and will continue to do so if Plaintiff is not afforded the relief

requested. Defendants' actions must therefore be set aside and permanently enjoined.

**COUNT IV:**
**DEPRIVATION OF EQUAL PROTECTION**
**U.S. Const. Amend. V**

**(The State Department's Conduct Discriminates Against Plaintiff**
**Based on Sex, Status As A Person Whose Gender Identity Is Neither Male Nor**
**Female, And Exercise Of A Fundamental Right)**

75.     Plaintiff incorporates by reference all of the preceding paragraphs of this

Complaint as though fully set forth herein.

76.     The APA empowers the Court to "hold unlawful and set aside agency action,

findings, and conclusions" that are "contrary to constitutional right, power, privilege, or

immunity." 5 U.S.C. § 706(2)(B). In addition, this Court has authority under 28 U.S.C. § 1331

and its traditional powers of equity to declare invalid and enjoin agency action that violates the

Constitution.

77.     Where a Complaint contends that agency action offends the Constitution, and for

that reason should be set aside, the Court affords no deference to the agency but instead reviews

the constitutional issues independently.

78.     The Fifth Amendment to the United States Constitution provides that no person

shall "be deprived of life, liberty, or property, without due process of law[.]" U.S. CONST.

amend. V. The Due Process Clause of the Fifth Amendment includes a guarantee of equal

protection equivalent to that expressly provided for under the Equal Protection Clause of the Fourteenth Amendment.

79.     People such as Plaintiff, who do not identify as either male or female, are similarly situated to people who identify as exclusively male or female in all of the characteristics relevant to issuance of a passport by the State Department. Plaintiff, like other citizens or non-citizen nationals, may seek to travel abroad for job and business opportunities; for cultural, political and social activities; or for all the reasons any other person may have.

80.     **Discrimination Based On Sex.** Defendant's Policy discriminates against Plaintiff on the basis of sex, both facially and as applied, by barring Plaintiff from obtaining an accurate U.S. passport with a gender marker other than "M" (male) or "F" (female). For example, if Plaintiff were male, Defendants would have issued Plaintiff a passport.

81.     Discrimination against an individual who is neither male nor female as such, just like discrimination against a woman as such, is discrimination based on sex.  In denying a passport to Plaintiff, the State Department relied upon sex-based considerations.  Because of the State Department's rigid sex-based classification, Plaintiff, a person who is neither male nor female, is precluded from obtaining a passport with a marker that properly indicates Plaintiff's sex. If Plaintiff were intersex and also identified as either male or female, Plaintiff would qualify for and be issued a passport for international travel by the State Department.

82.     Defendants' Policy is also impermissibly premised on assumptions, expectations, stereotypes, or norms about the nature of sex as a binary characteristic, either male or female.

83.     The State Department excluded Dana from obtaining a passport because Plaintiff failed to conform to the sex-based stereotype that individuals are all clearly male or female.  That

is, the State Department relies on an inaccurate assumption that sex is binary and that individuals cannot fall along (or outside of) a sex continuum, i.e., the false belief that all people are either exclusively men/male or exclusively women/female.

84.     All sex-based classifications must be supported by an exceedingly persuasive justification and be substantially related to the achievement of that underlying objective.

85.     The exclusion of individuals who are neither male nor female, such as Plaintiff, from passports unless they falsely describe themselves as exclusively male or female, cannot survive the heightened scrutiny required for sex-based classifications. Indeed, the Policy is not even tailored to further any legitimate interest at all.

86.     **Discrimination Based On Status As Neither Male Nor Female.** On its face, Defendants' Policy denies passports to the class of United States citizens whose sex is neither male nor female. Thus, in addition to being discrimination based on sex, Defendants' Policy also targets people who do not fit in a male or female sex classification as a group.

87.     The United States Supreme Court has not yet determined the level of scrutiny applicable for laws that classify persons for adverse treatment based on their status as people who cannot identify as male or female or their status as intersex. At the very least, such classifications must be rationally related to a legitimate government interest. Here, Defendants' Policy lacks even a rational relationship to a legitimate interest.

88.     **Discrimination With Respect To Fundamental Rights And Liberty Interests Secured By The Due Process Clause**. Defendants discriminate against Plaintiff with respect to Plaintiff's access to the fundamental right to international travel and liberty interests in

individual dignity and autonomy, including Plaintiff's right to define and express identity, self-definition and privacy.

89.     Differential treatment with respect to exercise of fundamental rights and liberty interests subjects Defendants' conduct to strict or at least heightened scrutiny, which Defendants' conduct cannot withstand.

90.     Defendant's Policy deprives Plaintiff of equal protection and equal liberty and dignity without due process, in violation of the Fifth Amendment to the United States Constitution, and will continue to do so if Plaintiff is not afforded the relief requested. Defendants' actions must therefore be set aside and permanently enjoined.

## COUNT V:
## WRIT OF MANDAMUS

91.     Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

92.     Plaintiff's claims—as set forth in paragraphs 51 through 90 above— are clear and certain.

93.     Pursuant to 22 U.S.C. § 211a, the Defendant Kerry has the power to grant and issue passports, and to cause passports to be granted by those acting under him. Moreover, Defendants' duty to adjudicate Plaintiff's passport application and issue Plaintiff a U.S. passport is nondiscretionary, ministerial, and free from doubt.

94.     Plaintiff has exhausted any administrative remedies that may exist, and no other adequate remedy is available to Plaintiff.

95.     Pursuant to 28 U.S.C. § 1361, Plaintiff is entitled to mandamus relief compelling Defendant process Plaintiff's application for a U.S. passport that accurately reflects Plaintiff's sex.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Issue a declaratory judgment that Defendants' denial of Plaintiff's application for a U.S. passport based on Plaintiff's inability to accurately select "M" or "F" (a) constitutes agency action that is arbitrary and capricious in violation of the Administrative Procedure Act, (b) constitutes agency action that exceeds statutory jurisdiction and authority in violation of the Administrative Procedure Act, and (c) violates Plaintiff's constitutional rights;

B.      Permanently restrain or enjoin Defendants from relying upon its male-or-female, binary-only gender marker policy to withhold the requested passport from Dana or any other individual;

C.      Issue a writ of mandamus compelling Defendants to process Plaintiff's passport application on an individualized, nondiscriminatory basis in a manner consistent with the applicable burden of proof;

D.      Award attorney's fees, costs, and expenses of all litigation in accordance with law, including the Equal Access to Justice Act, 28 U.S.C. § 2412; and

E.      Grant all such other and further relief as the Court may deem just and proper.

Dated: October 25, 2015

Respectfully submitted,

*Attorneys for Plaintiff Dana Alix Zzyym*

s/ Paul D. Castillo

Michael A. Ponto
Emily E. Chow
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: (612) 766-7000
Fax: (612) 766-1600
michael.ponto@faegrebd.com
emily.chow@faegrebd.com

Trina K. Taylor
FAEGRE BAKER DANIELS LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203-4532
Phone: (303) 607-3577
Fax: (303) 607-3600
trina.taylor@faegrebd.com

Jessica Kunevicius
Kristin Petri
THE LAW OFFICE OF JESSICA KUNEVICIUS, LLC
695 South Colorado Blvd., Suite 480
Denver, CO 80246
Phone: (303) 459-2806
Fax: (303) 722-7281
jessica@denverimmigrationlaw.com
kristin@denverimmigrationlaw.com

Paul D. Castillo
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219-6722
Phone: (214) 219-8585
Fax: (214) 219-4455
pcastillo@lambdalegal.org

Hayley Gorenberg
M. Dru Levasseur
Demoya R. Gordon
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 1005
Phone: (212) 809-8585
Fax: (212) 809-0055
hgorenberg@lambdalegal.org
dlevasseur@lambdalegal.org
dgordon@lambdalegal.org

Camilla B. Taylor
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
105 West Adams Street, Suite 2600
Chicago, IL 60603-6256
Phone: (312) 663-4413
Fax: (312) 663-4307
ctaylor@lambdalegal.org

22