## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02362-WYD

DANA ALIX ZZYYM,

      Plaintiff,

v.

JOHN F. KERRY, in his official capacity as Secretary of State; and
SHERMAN D. PORTELL, in his official capacity as Director of the Colorado Passport Agency
of the United States Department of State,

      Defendants.

---

## DEFENDANTS' MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD ON COUNTS ONE AND TWO AND MOTION TO DISMISS COUNTS THREE, FOUR, AND FIVE

---

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

STATUTORY AND REGULATORY BACKGROUND ............................................................ 3

FACTUAL BACKGROUND..................................................................................................... 4

STANDARD OF REVIEW ........................................................................................................ 6

    I.   Administrative Procedure Act Standards for Counts One and Two.........................................................................................................................6

    II.  Motion to Dismiss Standard for Counts Three, Four, and Five ...........................................7

ARGUMENT............................................................................................................................... 8

    I.   Count One (APA): The State Department's Decision Is Neither Arbitrary nor Capricious ...............................................................................7

    II.  Count Two (APA): The State Department's Decision Did Not Exceed Its Authority ...................................................................................10

    III. Count Three: Plaintiff Has Failed to State a Substantive Due Process Claim...............................................................................................11

        A.  Plaintiff's Substantive Due Process Claim Is Subject to Rational Basis Review ........ 13

        B.  The State Department Had a Rational Basis for Refusing to Issue a Passport With a Gender Marker other then "M" or "F"............................................................ 15

    IV. Count Four: Plaintiff Has Failed to State an Equal Protection Claim ......................................................................................................17

    V.  Count Five: Plaintiff Has Failed to State a Claim for a Writ of Mandamus ...............................................................................................20

CONCLUSION......................................................................................................................... 21

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Allied Chemical Corporation v. Daiflon, Inc.*,
    449 U.S. 33 (1981)......................................................................................... 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................... 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................... 8

*Chavez v. Martinez*,
    538 U.S. 760 (2003)................................................................................... 13, 16

*Dias v. City & Cty. of Denver*,
    567 F.3d 1169 (10th Cir. 2009) .................................................................... 12

*Haig v. Agee*,
    453 U.S. 280 (1981) ................................................................................... 11, 14

*Jacobsen v. Deseret Book Co.*,
    287 F.3d 936 (10th Cir. 2002) ...................................................................... 5

*Mohammed v. Holder*,
    47 F. Supp. 3d 1236 (D. Colo. 2014).......................................................... 7

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*,
    463 U.S. 29 (1983)........................................................................................... 7

*Obergefell v. Hodges*,
    135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015) ............................................... 15

*Oklahoma Educ. Ass'n v. Alcoholic Beverage Laws Enf't Comm'n*,
    889 F.2d 929 (10th Cir. 1989) ...................................................................... 19

*Olenhouse v. Commodity Credit Corporation*,
    42 F.3d 1560 (10th Cir. 1994) ................................................................... 2, 8

*Personnel Adm'r of Mass. v. Feeney*,
    442 U.S. 256 (1979)................................................................................... 1, 8

*Peterson v. Grisham*,
    594 F.3d 723 (10th Cir. 2010) ...................................................................... 5

*Rios v. Ziglar*,
   398 F.3d 1201 (10th Cir. 2005) .............................................................. 21

*Schanzenbach v. Town of Opal, Wyo.*,
   706 F.3d 1269 (10th Cir. 2013) .............................................................. 13

*SECSYS, LLC v. Vigil*,
   666 F.3d 678 (10th Cir. 2012) ........................................................... 18, 19

*Seegmiller v. Laverkin City*,
   528 F.3d 762 (10th Cir. 2008) ........................................................... passim

*Sorenson Commc'ns, Inc. v. F.C.C.*,
   567 F.3d 1215 (10th Cir. 2009) .............................................................. 7

*Utahns for Better Transp. v. United States Dept. of Transp.*,
   305 F.3d 1152 (10th Cir.2002) ............................................................ 7, 8

*Washington v. Glucksberg*,
   521 U.S. 702 (1997)................................................................................ 13

*Zemel v. Rusk*,
   381 U.S. 1 (1965)..................................................................................... 4

## STATUTES

5 U.S.C § 706(2)(A) ...................................................................................... 7
5 U.S.C § 706(2)(C) ...................................................................................... 7
8 U.S.C.§ 101(a)(30) ...................................................................................10

22 U.S.C.§ 211a................................................................................... passim
22 U.S.C § 231 ............................................................................................ 12
28 U.S.C.§ 1361........................................................................................... 21

## REGUALTIONS

22 CFR § 51.20(a)........................................................................... 10, 11, 16
22 CFR § 51.23(a)....................................................................... 4, 9, 11, 17
22 CFR § 51.7 ......................................................................................... 4, 14
22 CFR §51.1(d) ..................................................................................... 4, 16
22 CFR §§ 51.1 – 51.74 ................................................................................ 4
31 Fed. Reg. 10603 (Aug. 9, 1966)............................................................10

## RULES

Federal Rule of Civil Procedure 12(b)(6) ............................................ passim

**MISC.**

Passport Office, U.S. Dep't of State, THE AMERICAN PASSPORT: PAST, PRESENT AND FUTURE, 59-73, 63 (1976)

Bishop, *Comment: Gender and Sex Designations for Identification Purposes: a Comment on Inclusive Documentation for a Less Assimilationist Society*, 30 WIS. J.L. GENDER & SOC'Y 131, 148 (2015)

iv

## INTRODUCTION

In this action, Plaintiff Dana Alix Zzyym, an intersex individual who identifies as neither male nor female, challenges the decision of Defendant United States Department of State (the Department) to deny Plaintiff's application for a passport.  Plaintiff acknowledges failing to complete the Department's passport application form, which requires applicants to identify their sex by marking either "F" (female) or "M" (male).  But Plaintiff challenges the Department's decision not to issue Plaintiff a passport that identifies Plaintiff's sex with an "X."  Plaintiff raises claims challenging this decision under both the Administrative Procedure Act (APA) and the Constitution.  For the reasons stated below, the Court should enter judgment for the Department on Plaintiff's APA claims and dismiss Plaintiff's constitutional claims for failure to state a claim upon with relief can be granted.[1]

In Counts One and Two, Plaintiff claims that the Department's decision is arbitrary, capricious, and exceeds the Department's statutory authority, in violation of the APA.  In Counts Three and Four, Plaintiff claims that the Department's decision violates Plaintiff's substantive due process and equal protection rights under the Fifth Amendment to the Constitution.  In Count Five, Plaintiff seeks a writ of mandamus directing the Department to issue a passport indicating Plaintiff's sex with an "X."

---

[1] Under the Tenth Circuit's decision in *Olenhouse v. Commodity Credit Corporation,* district courts reviewing agency actions under the APA function as appellate courts, and "[r]eviews of agency action in the district courts must be processed as *appeals*."  42 F.3d 1560, 1581 (10th Cir. 1994) (emphasis in original).  Accordingly, APA claims in the District of Colorado are typically briefed on a schedule that requires the plaintiff or petitioner to file the opening brief.  *See* ECF No. 12-1 (providing a template case management plan for social security cases that requires the plaintiff to file the opening brief).  The parties previously stipulated, with the Court's approval, that the defendants would file the first dispositive motion in this case, and this motion addresses the APA claims and seeks dismissal of related non-APA claims under Rule 12(b)(6).

With respect to the APA claims, the Court should find that the Department's decision was neither arbitrary nor capricious based on the administrative record submitted with this motion. As that record indicates, Plaintiff refused to complete the passport application form by marking either "M" or "F," and the Department correctly followed its regulations by denying Plaintiff's incomplete passport application. In addition, because the documentation submitted by Plaintiff as proof of identity – a Colorado driver's license – identified Plaintiff as female, the Department reasonably refused to issue Plaintiff a passport listing Plaintiff's sex as "X." The Department's decision was also within its statutory authority. The Passport Act of 1926, 22 U.S.C. § 211a, grants the Department authority to prescribe rules that govern the granting of passports. The Department acted within that authority by declining to issue Plaintiff a passport after Plaintiff refused to complete the passport application form. Because the Department's decision was reasonable and within its authority, the Court should enter judgment for the Defendants on Plaintiff's APA claims.

Plaintiff's constitutional claims should be dismissed because they fail to state a claim upon which relief can be granted. Plaintiff's substantive due process claim fails because Plaintiff does not have a fundamental right to be issued a passport that identifies Plaintiff's sex as "X." Plaintiff's equal protection claim fails, first, because the Department's policy requiring passport applicants to mark either "M" or "F" on the passport application form is generally applicable to all persons, and does not support an inference of discriminatory intent, and second, because that policy does not burden a suspect class. Plaintiff's substantive due process and equal protection claims are thus subject only to rational basis review. Under that deferential standard, Plaintiff bears the burden of showing that the Department's policy does not further a legitimate purpose by any rational means.

Plaintiff cannot make that showing here.  In order to protect the integrity of the U.S. passport and ensure that it remains a secure and unassailable proof of identity and citizenship, the Department has created a passport application form that applicants must complete, in accordance with governing regulations, before they can be issued a passport.  Plaintiff's application was denied, not because Plaintiff identifies as intersex, but because Plaintiff declined to complete the application in accordance with the Department's governing regulations.  Moreover, the Department acted reasonably in furtherance of its interest in ensuring the integrity of the passports it issues by denying Plaintiff's request for a passport that identified a sex different from Plaintiff's proffered identifying document – a Colorado driver's license identifying Plaintiff as female.  Because the facts as pled demonstrate a rational basis for the Defendants' actions, Plaintiff's constitutional claims should be dismissed on the pleadings under Rule 12(b)(6).

Plaintiff's mandamus claim should also be dismissed because Plaintiff has failed to establish eligibility for mandamus relief or show the extraordinary circumstances required to warrant such a drastic remedy.  Because the Department of State's decision did not violate the APA, and Plaintiff has failed to state viable claims under the Constitution or the mandamus statute, the Court should grant the Defendants' motions with respect to all claims.

## STATUTORY AND REGULATORY BACKGROUND

The Passport Act of 1926 states that, "[t]he Secretary of State may grant and issue passports … under such rules as the President shall designate and prescribe for and on behalf of the United States… ."  22 U.S.C. § 211a.  Pursuant to the "broad rule-making authority" granted by the Act, *Zemel v. Rusk*, 381 U.S. 1, 12 (1965), the Department of State has promulgated a series of regulations that govern the issuance of passports.  *See* 22 C.F.R. §§ 51.1 - 51.74.  The

Department's regulations define a passport as "a travel document regardless of format issued under the authority of the Secretary of State attesting to the identity and nationality of the bearer," 22 C.F.R. § 51.1(d), and explain that "[a] passport at all times remains the property of the United States and must be returned to the U.S. Government upon demand," 22 C.F.R. § 51.7(a). Before the Department issues a passport, "[a]n application for a passport … must be completed using the forms the Department prescribes." 22 C.F.R. § 51.20(a). As part of the application, "[t]he applicant has the burden of establishing his or her identity." 22 C.F.R. § 51.23(a).

## FACTUAL BACKGROUND

According to the Complaint, Plaintiff "was born intersex, with ambiguous external sex characteristics." Plaintiff's Complaint, ECF No. 1 (Complaint) ¶10. On September 2, 2014, Plaintiff submitted a passport application to the Colorado Passport Agency of the Department of State (Agency) in Aurora, Colorado. *Id.* ¶34; Administrative Record (AR), AR-00002-3.[2] Along with the name, date of birth, social security number, and other fields that must be completely filled out to apply for a U.S. passport, each form includes a field titled "Sex," with boxes for "M" and "F" to be checked by the applicant. Complaint ¶27; AR-00002. Rather than

---

[2] For purposes of Defendants' motion with respect to the APA claims, the Court may consider the documents in the administrative record. For purposes of Defendants' separate motion to dismiss the constitutional claims, the Court may assume the truth of the well-pleaded factual allegations in the Complaint. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). The Tenth Circuit has also held that, when analyzing a motion to dismiss under Rule 12(b)(6), "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). The documents in the Administrative Record – Plaintiff's passport application, the documents submitted in connection with that application, and the Department's letters in response to the application – are referred to extensively in Plaintiff's Complaint, *see* Complaint ¶¶ 34-47, and their authenticity is not in dispute. Accordingly, the Court may consider the documents in the Administrative Record with respect to all claims.

checking one of the boxes, Plaintiff wrote "Intersex" on the application form, Complaint ¶35; AR-00002, and submitted a letter that stated that Plaintiff is intersex and requested a passport identifying Plaintiff's sex with an "X." Complaint ¶35; AR-00004. As proof of identity, Plaintiff submitted a Colorado driver's license that identified Plaintiff's sex as female. AR-00007. In addition, Plaintiff submitted a letter from a doctor at the Department of Veterans Affairs stating that Plaintiff "was born with ambiguous genitalia which would classify her as intersex," AR-00010, and a Michigan birth certificate that Plaintiff had amended in 2012 to list Plaintiff's sex as "UnKnown," Complaint ¶ 22; AR-00005.

The Colorado Passport Agency responded to Plaintiff's passport application with a letter, dated September 24, 2014, requesting additional information. Complaint ¶36; AR-00018-19. In the letter, the Agency explained that, because "[t]he Department of State currently requires the sex field on United States passports to be listed as 'M' or 'F,'" it was unable to fulfill Plaintiff's request for a passport listing Plaintiff's sex as "X." AR-00018. The Agency offered, however, to adjudicate Plaintiff's application for a passport listing Plaintiff's sex as female, as shown on Plaintiff's driver's license, if Plaintiff requested. *Id.* The Agency also provided Plaintiff with information about how Plaintiff could apply for a passport listing Plaintiff's sex as male. *Id.*

Plaintiff submitted a letter, dated December 18, 2014, responding to the Agency's request for additional information. Complaint ¶ 37; AR-00029. In the letter, Plaintiff acknowledged submitting a driver's license that lists Plaintiff's sex as female. AR-00029. Plaintiff claimed, however, to have submitted the necessary documentation to receive a passport reflecting a sex different than the one listed on Plaintiff's identification evidence. *Id.*

The documentation Plaintiff submitted consisted of two letters from doctors at the Veterans Administration Medical Center, in Cheyenne, Wyoming.  AR-00031, AR-00033.  In one letter, Dr. Orcutt states that Plaintiff "has had the appropriate clinical treatment for transition to intersex."  AR-00031.  In the other letter, Dr. Johnson states that Plaintiff "was born intersex," "identifies as intersex," and "has had surgery for transition to female genitalia."  AR-00033.

In a letter dated December 29, 2014, the Agency issued its final decision on Plaintiff's passport application.  Complaint ¶38; AR-00036.  The Agency's decision letter explained that, because Plaintiff had responded to its September 24, 2014, letter by indicating both in writing and in person that Plaintiff did not want a passport to be issued unless it listed Plaintiff's sex as "X," and because the Department requires the sex field in passports to contain either "M" or "F," the Agency could not fulfill Plaintiff's request and was denying Plaintiff's application for a passport.  AR-00036

## STANDARD OF REVIEW

## I.    Administrative Procedure Act Standards for Counts One and Two

In Counts One and Two, Plaintiff claims that the Department's decision should be set aside under the APA on the grounds that it is arbitrary and capricious, *see* 5 USC § 706 (2)(A), and in excess of the Department's authority, *see* 5 USC § 706 (2)(C).  "The APA's arbitrary and capricious standard is a deferential one; administrative determinations may be set aside only for substantial procedural or substantive reasons, and the court cannot substitute its judgment for that of the agency."  *Utahns for Better Transp. v. United States Dept. of Transp.*, 305 F.3d 1152, 1164 (10th Cir. 2002). "The duty of a court reviewing agency action under the 'arbitrary or capricious' standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made."  *Olenhouse,*

42 F.3d at 1574 (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 42 (1983)). "An agency's action is entitled to a presumption of validity, and the burden is upon the petitioner to establish the action is arbitrary or capricious." *Sorenson Commc'ns, Inc. v. F.C.C.*, 567 F.3d 1215, 1221 (10th Cir. 2009). Accordingly, even a decision of less than ideal clarity should be upheld if the agency's path may be reasonably discerned. *Motor Vehicle Mfrs. Ass'n* 463 U.S. at 43. If a court determines that an agency has acted arbitrarily in violation of the APA, the appropriate remedy is to remand the matter back to the agency for reconsideration. *Mohammed v. Holder*, 47 F. Supp. 3d 1236, 1263 (D. Colo. 2014).

In determining whether an agency acted in excess of its authority, courts delineate the scope of the agency's authority and discretion and consider whether the agency's action can reasonably be said to be within that range. *Olenhouse*, 42 F.3d at 1574.

## II.    Motion to Dismiss Standard for Counts Three, Four, and Five

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the ground that a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a court must accept all well-pleaded factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Id.*

7

**ARGUMENT**

**I.    Count One (APA):  The Department's Decision Is Neither Arbitrary nor Capricious**

In Count One of the Complaint, Plaintiff alleges that the Department's refusal to issue a passport listing Plaintiff's sex as "X" is arbitrary and capricious in violation of the APA. Complaint ¶¶ 48-55.  As explained above, "[t]he APA's arbitrary and capricious standard is a deferential one; administrative determinations may be set aside only for substantial procedural or substantive reasons, and the court cannot substitute its judgment for that of the agency." *Utahns for Better Transp.*, 305 F.3d at 1164.

Here, the administrative record reflects a reasoned basis for the Department's refusal to issue a passport indicating Plaintiff's sex with an "X."  In order to ensure the integrity of U.S. passports as proof of identity and citizenship, the Department has created passport application forms that applicants must complete before they can receive a passport.  22 C.F.R. § 51.20(a). The forms require an applicant to provide information regarding his or her identity, including whether the applicant is male or female.  AR-00002; *see* 22 C.F.R. § 51.23 (a) ("The applicant has the burden of establishing his or her identity.").  Information regarding whether an individual is male or female is part of that identity, and is commonly used in documents that, like passports, serve as forms of identification for their bearers.  *See*, *e.g.*, AR-00007 (Colorado driver's license submitted with Plaintiff's passport application, listing Plaintiff's sex as "F"). Requiring passport applicants to indicate whether they are male or female is a reasonable part of the Department's process for confirming the identity of the applicant and ensuring the integrity of the passports it issues.  In its final decision letter, the Department explained that it "requires the sex field on United States passports to be listed as 'M' or 'F.'"  AR-00036.  Because Plaintiff refused to properly complete the passport application form by marking either "M" or

8

"F," the Department reasonably followed its regulations and rejected Plaintiff's passport application.

The Department also acted reasonably in refusing to issue Plaintiff a passport listing a sex inconsistent with the identifying document submitted in support of Plaintiff's application, a Colorado driver's license that listed Plaintiff's sex as "F."  In its September 24, 2014 letter, the Department informed Plaintiff that it would adjudicate an application for a passport identifying Plaintiff as female, as shown on Plaintiff's Colorado driver's license.  AR-00018.  In its final decision letter, the Department explained that because Plaintiff had indicated both in person and in writing that Plaintiff did not want a passport to be issued unless it listed Plaintiff's sex as "X," the Department could not approve Plaintiff's application.  AR-00036.

Plaintiff argues in the Complaint that the Department's decision is arbitrary and capricious because it "is wholly inconsistent with its practice to allow foreign nationals who have a passport with 'X' as a sex marker, and otherwise qualify to be admitted, secure entry into the United States."  Complaint ¶52.  Even accepting the allegations in the Complaint as true, the Department does not control the information that other countries choose to include in the passports they issue.  And the fact that the Department may accept as valid passports issued by the competent authorities of recognized foreign governments that differ in form or content from U.S. passports, *see* 8 U.S.C. 101(a)(30) (defining "passport" for purposes of the Immigration and Nationality Act), does not obligate the United States to follow those governments' choices in determining the content and format of U.S. passports, *see* 22 U.S.C. § 211a ("The Secretary of State may grant and issue passports … under such rules as the President shall designate and prescribe for and on behalf of the United States"); Executive Order No. 11295, 31 Fed. Reg.

10603 (Aug. 9, 1966) (delegating the President's authority to the Secretary of State), let alone support an argument that the Department's choices in that regard are "arbitrary and capricious."

Plaintiff also claims that the Department's decision is arbitrary and capricious because "it does not reflect the State Department bringing expertise to bear on the question." Complaint ¶53. But the Department has brought its expertise to bear, in promulgating a regulatory framework that governs the passport application process, *see* 22 C.F.R. §§ 51.1-51.74, and resolving Plaintiff's application consistent with that framework. These regulations include the requirement that passport applicants complete the passport application form before they can receive a passport, 22 C.F.R. § 51.20 (a), and the Department's judgment that identity information on passports should be consistent with other government-issued identification. When Plaintiff declined repeated invitations to complete the passport application form, the Department's established regulations required that Plaintiff's application be denied. *See id.* Because the Department's decision was consistent with its regulations, reasonable, and neither arbitrary nor capricious, the Court should enter judgment for the Department on Count One.

## II.    Count Two (APA):  The Department's Decision Did Not Exceed Its Authority

In Count Two, Plaintiff alleges that the Department violated the APA by exceeding its statutory authority in refusing to provide Plaintiff with a passport indicating Plaintiff's sex with an "X." Complaint ¶¶ 56-61. Plaintiff claims that, while the Passport Act of 1926, 22 U.S.C. § 211a, grants the Department the power to issue passports, it does not authorize the Department to "refuse to issue a passport unless and until the applicant accepts either a male or female gender marker inconsistent with that person's gender identity." *Id.* ¶60. This claim is without merit. The Passport Act states that, "[t]he Secretary of State may grant and issue passports … under such rules as the President shall designate and prescribe for and on behalf of the United

States, … ."  22 U.S.C. § 211a.  While this grant of authority does not expressly authorize the denial of passport applications, nor specify particular reasons they may be denied, "[i]t is beyond dispute that the Secretary has the power to deny a passport for reasons not specified in the statutes."  *Haig v. Agee*, 453 U.S. 280, 290 (1981).

The Department has exercised its authority to create a passport application form that has long required applicants to select either "M" or "F" as part of the applicants' duty to establish their identity, AR-00002; *see* 22 C.F.R. § 51.23(a) ("The applicant has the burden of establishing his or her identity."), and by promulgating a regulation requiring an applicant to fully complete the passport application before a passport can be issued, 22 C.F.R. § 51.20(a). The Department's "consistent administrative construction" of its authority under the Passport Act is entitled to substantial deference.  *Haig*, 453 U.S. at 291.  Moreover, the language of the Passport Act supports the Department's refusal to issue a passport when Plaintiff declined to complete the application form in full.  *See* 22 U.S.C. § 213 ("Before a passport is issued to any person," such person must submit an application containing all information "which may be required by law or by any rules authorized by law").  Because the Department did not exceed its authority in denying Plaintiff's request for a passport listing Plaintiff's sex as "X," the Court should enter judgment for the Department on Count Two.

## III.    Count Three:  Plaintiff Has Failed to State a Substantive Due Process Claim

In Count Three, Plaintiff alleges that the Department's refusal to provide a passport that identifies Plaintiff's sex with an "X" violates Plaintiff's substantive due process rights under the Fifth Amendment to the Constitution.  Complaint ¶¶ 65-74.  "The Supreme Court has described two strands of the substantive due process doctrine."  *Seegmiller v. Laverkin City*, 528 F.3d 762, 767 (10th Cir. 2008).  One strand protects primarily fundamental liberty and property interests,

"while the other protects against the exercise of governmental power that shocks the conscience." *Id.* Plaintiff alleges only that the Department has violated the first strand, by infringing on Plaintiff's fundamental rights and liberty interests. Complaint ¶¶ 65-74.

A fundamental property or liberty interest is "one that is deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty." *See Seegmiller*, 528 F.3d at 767. If government action infringes on a "fundamental" interest, the action is reviewed under strict scrutiny. *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1181 (10th Cir. 2009). "'[I]dentifying a new fundamental right subject to the protections of substantive due process is often an uphill battle, as the list of fundamental rights is short.'" *Seegmiller*, 528 F.3d at 770 (quoting *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007)). The Supreme Court has counseled restraint because recognizing such rights, "'to a great extent, places the matter outside the arena of public debate and legislative action' and risks transforming the Due Process Clause 'into the policy preferences of the Members of the Court.'" *Id.* at 770 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).

Courts in the Tenth Circuit analyze whether the claimed right is fundamental in two steps. First, they "carefully describe the asserted fundamental liberty interest." *Seegmiller*, 528 F.3d at 769 (quoting *Glucksberg*, 521 U.S. at 721). "[V]ague generalities … will not suffice." *Chavez v. Martinez*, 538 U.S. 760, 776 (2003). Second, they decide "whether the asserted liberty interest, once described, is 'objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Seegmiller*, 528 F.3d at 769 (quoting *Glucksberg*, 521 U.S. at 721).

Absent a fundamental right, courts review an alleged infringement of an interest under the deferential rational basis test. *See id.* at 771-72. Under rational basis review, "[t]he burden is

12

on the plaintiff to show the governmental act complained of does not further a legitimate state purpose by rational means." *Id.* at 772.  When a government action does not impinge upon a fundamental right, "[t]he arbitrariness of government action must be extreme for the action to violate substantive due process." *Schanzenbach v. Town of Opal, Wyo.*, 706 F.3d 1269, 1277 (10th Cir. 2013).

> ### A.    Plaintiff's Substantive Due Process Claim Is Subject to Rational Basis Review

The Tenth Circuit's two-step analysis shows that Plaintiff has not established the violation of a fundamental right.  At step one, the court "carefully" describes the specific right that is being asserted.  *See Seegmiller*, 528 F.3d at 769.  The specific right Plaintiff is asserting in this action is the right to be issued a U.S. passport that indicates Plaintiff's sex with an "X."  At step two, the court determines whether the asserted right is "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty." *Id.*  Here, there is no right to have particular information printed in a U.S.-government issued passport, a document that "at all times remains the property of the United States and must be returned to the U.S. Government upon demand."  22 CFR § 51.7 (a).  On the contrary, the Department has defined the information included in U.S. passports since the time of the Founding.  *See* Passport Office, U.S. Dep't of State, THE AMERICAN PASSPORT: PAST, PRESENT AND FUTURE, 59-73, 63 (1976) (*e.g.*, passports issued 1917-1926, unlike earlier versions, included place and date of birth and occupation).  The Department's historic practice is entitled to deference, "especially in the area[] of foreign policy." *Haig*, 453 U.S. at 291.  In any case, the  "right" Plaintiff asserts is neither deeply rooted in our nation's history and tradition nor implicit in the concept of ordered liberty, and, accordingly, Plaintiff's substantive due process claim is subject to rational basis review.

Plaintiff seeks to escape this conclusion by reframing the right Plaintiff is asserting as the right to international travel, Complaint ¶¶ 69-70, and the right to individual dignity and autonomy, *id.* ¶¶ 71-72.  Neither attempt should be credited.  As an initial matter, the Supreme Court has explained that, while the right to interstate travel is fundamental, the right to international travel is not:

> The constitutional right of interstate travel is virtually unqualified.  By contrast the "right" of international travel has been considered to be no more than an aspect of the "liberty" protected by the Due Process Clause of the Fifth Amendment.  As such this "right," the Court has held, can be regulated within the bounds of due process.

*Haig*, 453 U.S. at 307 (citations omitted).  Yet even if the right to international travel were also a fundamental right, Plaintiff has not been denied that right.  The Department offered to adjudicate Plaintiff's passport application if Plaintiff provided a signed statement indicating that Plaintiff wanted a passport listing Plaintiff's sex as female, consistent with the Colorado driver's license submitted by Plaintiff as proof of identification, and also informed Plaintiff of how to apply for a passport listing Plaintiff's sex as male.  AR-00018.  Under either option, Plaintiff could have traveled internationally.  But Plaintiff indicated both in writing and in person that Plaintiff did not want a passport unless it could be issued showing Plaintiff's sex as "X."  AR-00036.  Plaintiff was not denied the right to a passport or the right to international travel; Plaintiff was merely denied the "right" to be issued a passport containing particular information – an "X" in the sex field – that was inconsistent with the identifying documents presented and contrary to Department policy and regulations.

Plaintiff's attempt to define the right asserted in this case as the right to individual dignity and autonomy is similarly misplaced.  In *Obergefell v. Hodges*, 135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015), the Supreme Court explained that the fundamental liberties protected by the Due

Process Clause "extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs." *Obergefell,* 135 S. Ct. at 2597.  Notably, however, the Court stated that only "certain" decisions within this general category of choices rise to the level of fundamental liberties.  *Id.*; *see also Seegmiller*, 528 F.3d at 771 ("[A]s the Court made clear in *Glucksberg*, not all important, intimate, and personal decisions are protected by substantive due process.") (quotation omitted).  After speaking in general terms about individual dignity and autonomy, the Court analyzed the claim in *Obergefell* based on the specific right asserted:  the right to marry.  *Id.* at 2598.

Plaintiff here identifies no such specific right, but instead asserts broadly that the Department's policy "infringes upon Plaintiff's fundamental liberty interests in personal decisionmaking central to individual dignity and autonomy."  Complaint ¶74.  This assertion, however, provides nothing more than the "[v]ague generalities" that the Supreme Court has expressly instructed "will not suffice" to define the right asserted.  *Chavez*, 538 U.S. at 776.  Because the specific right Plaintiff asserts in this action – the right to a passport indicating Plaintiff's sex as "X" – is not a fundamental right, Plaintiff's substantive due process claim is subject only to rational basis review.

**B.    The Department Had a Rational Basis for Refusing to Issue a Passport with a Gender Marker other than "M" or "F"**

The Department has a rational basis for its policy of requiring all passport applicants to complete the prescribed form, including by selecting either "M" or "F" for the sex field.  A U.S. passport is a travel document issued under the authority of the Secretary of State that attests to the identity of the bearer.  22 C.F.R. § 51.1 (d).  The Department has a legitimate governmental interest in ensuring the integrity of the U.S. passport such that it remains a secure and unassailable proof of identity and citizenship.  The Department has furthered that interest by

creating a passport application form that must be completed before an applicant can receive a passport. 22 C.F.R. § 51.20(a). The passport application form requires applicants to provide information regarding their identity, including their name, date of birth, place of birth, and social security number, and to indicate their sex by checking the box for either "male" or "female." Complaint ¶27; AR-00002. This information is used, along with the identification documents provided by the applicant, to establish the identity of the applicant. *See* 22 C.F.R. § 51.23.

Documents that may serve as proof of identification commonly include a field for the sex of the person identified, and the overwhelming majority of the U.S. jurisdictions that issue identification documents permit only "male" or "female" designations to be listed on those documents. *See*, *e.g.*, AR-00007 (Colorado driver's license submitted with Plaintiff's passport application, listing Plaintiff as female). Indeed, Defendants are not aware of a single exception. *See generally* Bishop, *Comment: Gender and Sex Designations for Identification Purposes: a Comment on Inclusive Documentation for a Less Assimilationist Society*, 30 WIS. J.L. GENDER & SOC'Y 131, 148 (2015) ("M" and "F" the "only legal designations currently available in the United States" for birth certificates, driver's licenses, passports, and other legal documentation). It is therefore reasonable for the Department to decline to provide an identification document that is both contrary to the underlying documents that it must use to verify an applicant's identity and incompatible with the identification documents issued by the vast, if not uniform, majority of U.S. jurisdictions. The Department's practice is reasonably related to its legitimate interest in ensuring that a U.S. passport remains the unassailable proof of identity and citizenship that it has historically been.

16

The Department also had a rational basis for refusing to issue Plaintiff a passport with the non-standard gender marker, "X," that Plaintiff requested. Under Department regulations, [t]he applicant has the burden of establishing his or her identity." 22 C.F.R. § 51.23 (a). Plaintiff submitted as proof of identification a driver's license that lists Plaintiff as female, AR-00007, and the Department refused to issue Plaintiff a passport that would have been inconsistent with Plaintiff's proof of identity. The Department's refusal to issue a passport that contradicted the proof of identification submitted by Plaintiff rationally furthered its interest in ensuring the integrity of the passports it issues. Because the Department had a rational basis for denying Plaintiff's passport application, the Court should dismiss Plaintiff's substantive due process claim.

## IV.    Count Four:  Plaintiff Has Failed to State an Equal Protection Claim

In Count Four, Plaintiff alleges that the Department's refusal to issue a passport that identifies Plaintiff's sex with an "X" violates Plaintiff's rights under the Equal Protection Clause. Courts in the Tenth Circuit analyze equal protection claims in two steps. *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012). "First, [they] ask whether the challenged state action ***intentionally*** discriminates between groups of persons." *Id.* (emphasis added). Second, if a court identifies an act of intentional discrimination against a particular group, it must then determine whether the discrimination can be "justified by reference to some upright government purpose." *Id.*

Plaintiff's equal protection challenge does not survive the first step. "Discriminatory intent … 'implies more than intent as volition or intent as awareness of consequences.'" *Id.* (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). "It requires that the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not

merely in spite of the law's differential treatment of a particular class of persons." *Id.*  Thus, a discriminatory effect "does not run afoul of the Constitution unless it is an intended consequence of state action." *Id.*  "[F]or a constitutional violation to take place, an intent to discriminate must be present." *Id.*

The Tenth Circuit also has explained that, "when the law under review is generally applicable to all persons, no presumption of intentional discrimination arises" and proof of discriminatory intent is required. *Id.*  "This is so because many laws, perhaps most and often unavoidably, affect some groups of persons differently than others even though they involve no intentional discrimination." *Id.*  The Department's policy of requiring all passport applicants to fully complete the application form, and to indicate their sex by checking either "M" or "F," is generally applicable to all persons and is not the product of a discriminatory practice or intent. And Plaintiff does not even suggest in the Complaint that this policy was motivated by a desire to discriminate based upon sex. *See* Complaint ¶¶80-87.  Because Plaintiff cannot show discriminatory intent, the Court should dismiss Plaintiff's equal protection claim on this basis alone.

Even if the Court conducts the second step of the equal protection analysis, Plaintiff's equal protection claim still should be dismissed.  The standard of review the court applies for this claim depends on the nature of the group that is being discriminated against and the rights that are allegedly being impinged.  *See SECSYS, LLC*, 666 F.3d at 685.  When the government discriminates based on "suspect classifications," such as race or national origin, courts apply "strict scrutiny" and will sustain the government action only if it is narrowly tailored to serve a compelling state interest.  *Okla. Educ. Ass'n v. Alcoholic Beverage Laws Enf't Comm'n*, 889 F.2d 929, 932 (10th Cir. 1989).  When the government discriminates based on "quasi-suspect"

classifications, such as gender, illegitimacy, and alienage, courts apply "intermediate" scrutiny and will uphold the government action only if it is substantially related to an important or substantial state interest. *Id.* Government actions that discriminate between groups on other bases are subject to rational basis review. *SECSYS, LLC*, 666 F.3d at 685. As explained above, under the rational basis standard, "[t]he burden is on the plaintiff to show the governmental act complained of does not further a legitimate state purpose by rational means." *Seegmiller*, 528 F.3d at 772.

Plaintiff alleges that a heightened standard of review is required because the Department's policy of requiring passport applicants to indicate their sex by marking either "M" or "F" discriminates on the basis of sex. Complaint ¶¶ 80-85. But Plaintiff also concedes that the Supreme Court has not recognized people who do not identify as either male or female as a class subject to any heightened review. *Id.* ¶87 ("The United States Supreme Court has yet to determine the level of scrutiny applicable for laws that classify persons for adverse treatment based on their status as people who cannot identify as male or female… ."). On this basis alone, the Department's actions should be subject to rational basis review. Moreover, the Department of State's policy does not deny a passport to Plaintiff or anyone on the basis of sex. The purpose of sex identification on the passport is to help identify the bearer of the document, and thus ensure that the passport remains a reliable proof of identification, not to prevent any person – male, female, or intersex – from receiving a passport on the basis of their sex. Put another way, the policy at issue does not deny a passport to individuals who are intersex, but to *any person of any gender* who declines to comply with the application requirements. And, as Plaintiff acknowledges, individuals who are intersex in fact qualify for a passport under this system. *See* Complaint ¶81 ("If Plaintiff were intersex and also identified as either male or

female, Plaintiff would qualify for and be issued a passport for international travel by the

Department.").  *See also* AR-00018 (advising how to proceed in order to apply for a passport

with "M" or "F" as the sex designation).

And for the reasons set forth above, the Department's policy is supported by rational

bases. Given the common practice of identifying individuals in government identification

documents as either male or female, and in particular where Plaintiff's own state driver's

license identified Plaintiff as female, the Department's action did not deny Plaintiff a passport

because of Plaintiff's intersex status but to maintain the integrity of the identification system

vital to the purpose of a passport.  *See supra* p. 16-17.  For these reasons, Plaintiff has not stated

an equal protection claim that Plaintiff was denied a passport on the basis of gender.[3]

## V.    Count Five:  Plaintiff Has Failed to State a Claim for a Writ of Mandamus

In Count Five, Plaintiff claims entitlement to a writ of mandamus under 28 U.S.C.

§ 1361.  Complaint ¶95.  28 U.S.C. § 1361 grants district courts authority "to compel an officer

or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

The Supreme Court has cautioned, however, that "the remedy of mandamus is a drastic one, to

be invoked only in extraordinary situations."  *Allied Chemical Corporation v. Daiflon, Inc.*, 449

U.S. 33, 34 (1980).  To be eligible for mandamus relief, the petitioner must establish (1) that he

has a clear right to relief, (2) that the respondent's duty to perform the act in question is plainly

defined and peremptory, and (3) that he has no other adequate remedy.  *Rios v. Ziglar*, 398 F.3d

---

[3] Plaintiff also attempts to trigger a heightened level of scrutiny by alleging that the
Department's refusal to issue a passport listing Plaintiff's sex as "X" discriminates against
Plaintiff with respect to the "fundamental right to international travel and liberty interests in
individual dignity and autonomy."  Complaint ¶¶ 88-89.  This simply restates Plaintiff's Due
Process claim, which fails for the reasons discussed above.  *See supra* p. 14-16.

1201, 1206 (10th Cir. 2005).  Only after the petitioner has established the prerequisites for mandamus relief may the court exercise its discretion to grant the writ.  *Id.*

Plaintiff has failed to establish any of the three requirements for a writ of mandamus. First, Plaintiff has not shown a clear right to relief.  As shown in this motion, the Department of State is entitled to judgment on Plaintiff's APA claims, and Plaintiff has failed to state valid constitutional claims.  Second, Plaintiff has failed to show that the Department has a plainly defined and peremptory duty to issue Plaintiff a passport indicating Plaintiff's sex as "X."  And third, Plaintiff has failed to show that Plaintiff has no other adequate remedy.  If the facts alleged by Plaintiff did give rise to a valid claim – and they do not – the constitutional and APA claims pled in the Complaint would provide a complete remedy.  As Plaintiff has failed to establish eligibility for a writ of mandamus, the Court should dismiss Count Five.

## CONCLUSION

For the reasons set forth above, the Court should grant the Defendants' motions and dismiss the Complaint.

Date: March 18, 2016                    Respectfully submitted,

                                        BENJAMIN C. MIZER
                                        Principal Assistant Attorney General

                                        JOHN F. WALSH
                                        United States Attorney, District of Colorado

                                        ANTHONY J. COPPOLINO
                                        Deputy Director, Federal Programs Branch
                                        */s/ Ryan Parker*
                                        RYAN B. PARKER (UT Bar No. 11742)
                                        Trial Attorney
                                        United States Department of Justice, Civil Division
                                        Telephone: (202) 514-4336
                                        Email: ryan.parker@usdoj.gov

                                        Attorneys for Defendants

21