# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02362-WYD

DANA ALIX ZZYYM,

     Plaintiff,

v.

JOHN F. KERRY, in his official capacity as Secretary of State; and
SHERMAN D. PORTELL, in his official capacity as Director of the Colorado Passport Agency
of the United States Department of State,

     Defendants.

---

## DEFENDANTS' REPLY IN SUPPORT OF THEIR DISPOSITIVE MOTION AND OPPOSITION TO PLAINTIFF'S REQUEST FOR JUDGMENT

---

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 5

I.    The Department's Decision to Deny Plaintiff's Request for a Passport
      Listing Plaintiff's Sex with an "X" Did Not Violate the APA ...........................................5

      A.        The Department's Decision Was Neither Arbitrary Nor
                Capricious ............................................................................................. 5

      B.    The Department Acted Within Its Authority under the Passport Act ........................ 9

II.   The Department's Decision to Deny Plaintiff's Request for a Passport
      Listing Plaintiff's Sex as "X" Did Not Violate the Due Process or Equal
      Protection Clauses...........................................................................................11

      A.    Plaintiff's Due Process Claim is Subject to Rational Basis Review..................... 12

      B.    Plaintiff's Equal Protection Claim Should Be Dismissed Because
            Plaintiff Cannot Show Intentional Discrimination and the
            Challenged Action Has a Rational Basis. ............................................................ 14

      C.    The Department's Passport Policy Should Be Upheld under Any
            Level of Scrutiny...................................................................................... 16

III.   The Availability of Relief under the APA Precludes Mandamus Relief ...........................19

CONCLUSION................................................................................................................ 19

## TABLE OF AUTHORITIES

CASES

*Aptheker v. Secretary of State*,
  378 U.S. 500 (1964)................................................................................................ 12

*Chavez v. Martinez*,
  538 U.S. 760 (2003)................................................................................................ 14

*Freedom to Travel Campaign v. Newcomb*,
  82 F.3d 1431 (9th Cir. 1996) ................................................................................. 13

*Haig v. Agee*,
  453 U.S. 280 (1981)........................................................................... 9, 10, 11, 12

*Hutchins v. Dist. of Columbia*,
  188 F.3d 531 (D.C. Cir. 1999) .............................................................................. 12

*Kent v. Dulles*,
  357 U.S. 116 (1958).................................................................................. 9, 10, 12

*Lewis v. City of Fort Collins*,
  903 F.2d 752 (10th Cir. 1990) .............................................................................. 15

*Lewis v. Clark*,
  577 F. App'x 786 (10th Cir. 2014)........................................................................ 15

*Motor Vehicle Manufacturers Association v. State Farm Mutual Auto. Insurance
  Company*,
  463 U.S. 29 (1983)................................................................................................... 8

*Mt. Emmons Min. Co. v. Babbitt*,
  117 F.3d 1167 (10th Cir. 1997) ............................................................................ 19

*Obergefell v. Hodges*,
  135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015)........................................................... 14

*Regan v. Wald*,
  468 U.S. 222 (1984)................................................................................................ 12

*SECSYS, LLC v. Vigil*,
  666 F.3d 678 (10th Cir. 2012) .............................................................................. 14

*Seegmiller v. Leverkin City*,
  528 F.3d 762 (10th Cir. 2008) .............................................................................. 14

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
  429 U.S. 252 (1977)................................................................................................ 15

*Washington v. Glucksberg*,
  521 U.S. 702 (1997)................................................................................................ 13

*Zemel v. Rusk*,
  381 U.S. 1 (1965)................................................................................................... 12

STATUTES

22 U.S.C. § 211a ...................................................................................................... 9, 11

RULES

Fed.R.Civ.P. 12 ............................................................................................................ 5

REGULATIONS

22 C.F.R. § 51.20 ................................................................................................. 9, 11
22 C.F.R. § 51.23 ................................................................................................. 17

OTHER REGULATIONS

Executive Order 11295 (Aug. 5, 1996) ................................................................. 9, 11

## INTRODUCTION

Defendants showed in their opening dispositive motion (ECF No. 35)[1] that the Department of State's decision to deny Plaintiff's request for a passport indicating Plaintiff's sex with an "X," rather than an "M" or an "F," was consistent with the Department's regulations and was neither arbitrary nor capricious.  Defendants accordingly sought judgment on the Administrative Record as to Plaintiff's Administrative Procedure Act ("APA") Claims, Counts One and Two.  Defendants also sought dismissal of Plaintiff's constitutional claims, Counts Three and Four, for failure to state of claim under Rule 12(b)(6), on the grounds that the Department's decision did not violate Plaintiff's constitutional rights under the Due Process or Equal Protection Clauses.  Plaintiff responded by filing an "Opening Brief" that opposes Defendants' motion and seeks judgment in Plaintiff's favor on both Plaintiff's APA claims and constitutional claims.[2]

Plaintiff makes two principal arguments in support of Plaintiff's motion for judgment on the APA claims.  Both arguments are meritless.  First, Plaintiff contends that the Department failed to provide a reasoned basis for its decision to deny Plaintiff's request for a passport listing Plaintiff's sex with an "X."  The Administrative Record in this case, however, shows that the Department provided Plaintiff with a sound and appropriate reason for denying Plaintiff's

---

[1] *See* "Defendants' Motion for Judgment on the Administrative Record on Counts One and Two and Motion to Dismiss Counts Three, Four, and Five" (ECF No. 35) (Defs' Mot.").

[2] Plaintiff's submission is labeled as an "Opening Brief in Support of Declaratory, Injunctive, and Other Relief and Opposition to Defendants' Motion for Judgement on the Administrative Record and Motion to Dismiss" (ECF No. 37) ("Plf's Op. Br.") and raises a distinct motion for (summary) judgment on *all* claims.  That filing thus extends beyond the scope of Defendants' opening motion, which sought judgment solely on the APA claim and otherwise sought dismissal, pursuant to Rule 12(b)(6), of Plaintiff's constitutional claims.  Accordingly, this submission constitutes Defendants' opposition to Plaintiff's distinct motion for judgment on all claims, including the constitutional claims.

request.  The Department explained to Plaintiff, in two letters and during discussions with Department personnel, that it denied Plaintiff's request for a passport listing Plaintiff's sex as "X" because the Department requires that United States passports list the passport holder's sex as either "M" for male or "F" for female.  As explained below, the Department's requirement furthers important Government interests and was a sound and appropriate basis for denying Plaintiff's request.

Plaintiff also argues that the Department acted arbitrarily and capriciously by failing to follow its own policies for processing passports for intersex applicants.  The Department's policy for processing passports for intersex applicants is included in the Administrative Record and recognizes that, for intersex applicants, birth documentation is often not updated to reflect the corrected gender.  The policy, therefore, allows intersex individuals to submit a statement from a licensed physician reflecting that the applicant is intersex and specifying the gender correction to either male or female.  The Department's policy for processing passports for intersex applicants, however, is fully consistent with the Department's requirement that U.S. passports list the passport holder's sex as either "M" or "F."  The Department properly applied its policy for processing passports for intersex applicants and, pursuant to that policy, denied Plaintiff's request for a passport listing Plaintiff's sex as "X."

Plaintiff also affirmatively seeks judgment on Plaintiff's constitutional claims on the grounds that the Department's requirement that United States passports indicate the passport holder's sex with either an "M" or an "F" is subject to a heightened level of scrutiny and cannot survive under that more exacting standard of review.  Again, Plaintiff's contention is meritless. In seeking dismissal under Rule 12, the Department showed that Plaintiff's constitutional claims are subject to rational basis review, and that the challenged policy is rational on its face.  Should

the Court accept Plaintiff's argument for a heightened level of scrutiny, however, Defendants have submitted with this brief a declaration from the Department of State, showing that the Department's passport policy furthers significant governmental interests and should, therefore, be upheld under any standard of review. *See* Declaration of Bennett S. Fellows ("Fellows Decl.").

First, the Department's passport requirement furthers the Government's interest in ensuring that the information in United States passports is accurate and verifiable. A U.S. passport is the world's premier identity credential, and every passport issued by the Department is based upon the submission of documentation supporting a finding of valid identity and citizenship. Fellows Decl., ¶11. A U.S. passport is a vital travel document for Americans traveling internationally and serves as proof of identity and citizenship domestically. *Id.* at ¶¶11-12. The Department of State depends on reliable forms of identification issued by local governments, such as birth certificates and driver's licenses, to verify the citizenship and identity of passport applicants and to prevent identity theft and passport fraud. *Id.* at ¶¶15-16. There are currently fifty-seven (57) jurisdictions in the United States that issue birth certificates and driver's licenses, and, to the best of the Department's knowledge, the predominant, if not exclusive, practice in those jurisdictions is to issue birth certificates and driver's licenses that list the individual's sex as either male or female. *Id.* at ¶15. In any event, allowing passports with sex markers other than "F" or "M" would compromise the Department's efforts to prevent identity theft and passport fraud by upending the Department's long-established system for validating the identity and citizenship of passport applicants and requiring the Department to rely on less reliable and less uniform identification documents.

Such a requirement could also have significant adverse consequences on even broader

governmental interests. The Department's policy of requiring United States passports to list the passport holder's sex as either "F" or "M" also furthers the Government's significant law enforcement interest in linking passport applicants and holders with relevant information from various law enforcement databases. When individuals apply for a passport or use a passport to cross the borders of the United States, the Department uses a computerized system to ensure document integrity, effective fraud protection, and cooperation with courts and law enforcement agencies. *Id.* at ¶16. Law enforcement information that is entered into the system identifies individuals as either male or female, and an individual's sex is one of the pieces of personally identifiable information that is used to match individuals with the data in the system. *Id.* Issuing passports with sex markers other than "F" or "M" could, therefore, risk compromising significant law enforcement interests by making it more difficult to connect passport applicants and those who use U.S. passports to cross the borders of the United States to critical law enforcement information.

Accordingly, as set forth further below, Defendants have shown that the Department's decision to deny Plaintiff's request for a passport listing Plaintiff's sex with an "X" was neither arbitrary nor capricious nor in excess of the Department's authority. They have also established that the Department's policy of requiring United States passports to list the sex of the passport holder with either an "M" or an "F" furthers significant Government interests and, therefore, passes muster under any level of constitutional scrutiny. Accordingly, the Court should deny Plaintiff's motion for judgment on all claims, grant judgment to Defendants on Plaintiff's APA claims, and dismiss or grant summary judgment to Defendants on Plaintiff's constitutional

claims.[3]

## ARGUMENT

**I.    The Department's Decision to Deny Plaintiff's Request for a Passport Listing Plaintiff's Sex with an "X" Did Not Violate the APA**

Plaintiff first argues that the Department's decision to deny Plaintiff a passport listing Plaintiff's sex with an "X" violated the APA because it was arbitrary and capricious and exceeded the Department's authority under the Passport Act. Neither of Plaintiff's APA arguments has merit.

### A.    The Department's Decision Was Neither Arbitrary Nor Capricious

Plaintiff first contends that, "[i]n denying Zzyym's application for a passport, the Department failed to set forth any grounds upon which it acted." "Plf's Op. Br. at 8. This contention is contradicted by the Administrative Record in this case. By letter to Plaintiff dated September 24, 2014, the Department clearly stated why it could not fulfill Plaintiff's request: "The Department of State currently requires the sex field on United States passports to be listed as 'M' or 'F.' Therefore, we are unable to fulfill your request to list your sex as 'X.'" Administrative Record ("AR") 00018. The Department also reiterated that it was denying Plaintiff's request because of the Department's requirements for U.S. passports in a letter dated December 29, 2014. AR 00036. In addition, Department staff discussed the Department's passports requirements with Plaintiff on December 19, 2014. *Id.* The Administrative Record shows that the Department explained to Plaintiff in two letters and during in-person discussions

---

[3] If the Court determines that Plaintiff's constitutional claims are subject to rational basis review, it should dismiss the claims under Rule 12(b)(6) for failure to state a claim, because the Department's policy of requiring United States passports to list the sex of the passport holder as "M" or "F" is rational on its face. *See* Defs' Mot. at 11-20. If the Court determines that Plaintiff's claims are subject to a heightened level of scrutiny, the Court may also treat Defendants' motion as a motion for summary judgment, *see* Fed.R.Civ.P. 12(d), and grant summary judgment to Defendants.

that it was denying Plaintiff's request for a passport listing Plaintiff's sex as "X" because Plaintiff's request was inconsistent with the Department's requirement that United States passports indicate the sex of the passport holder with either an "M" or an "F."

Plaintiff also contends that, in denying Plaintiff's request for a passport listing Plaintiff's sex as "X," the Department ignored its own policies for processing passports for intersex applicants. Plf's Op. Br. at 9. That contention is also meritless. The Department included in the Administrative Record the sections from its Foreign Affairs Manual ("FAM") governing the processing of passport applications for intersex applicants. AR 00026 (7 FAM 1350 Appendix M). The Department's policy recognizes that, for intersex applicants, "[b]irth documentation is often not updated to reflect corrected gender." *Id.* at subsection (b). The Department, therefore, allows intersex applicants to submit as proof of identification a statement from a licensed physician who has treated the applicant. *Id.* The statement must include, "language to reflect the intersex condition and specify the gender correction *to either male or female.*" *Id.* (emphasis added). If the applicant does not provide the necessary statements, the Department uses the applicant's birth documentation to determine the sex that will be listed on the applicant's passport. *Id.* at subsection (c).

Plaintiff claims to have taken steps to comply with the Department's policy for processing passports for intersex applicants by submitting the required medical certifications. Plf's Op. Br. at 10-11. But Plaintiff acknowledges that the Department's policy does not provide for passports listing the passport holder's sex as anything other than male or female. Plf's Op. Br. at 10 ("In this case, Zzyym took steps to comply with the Gender Policy, notwithstanding the discriminatory language restricting an applicant's options to male or female."). And the certifications submitted by Plaintiff do not meet the Department's

requirements because they do not specify a gender correction to either male or female.  *See* AR 00010, AR00031, and AR00033.

Plaintiff also suggests that, because Plaintiff submitted an amended Michigan birth certificate that lists Plaintiff sex as "unknown," under the Department's policy, the sex marker on Plaintiff's passport should also be "unknown."  *Id.* at 11.  As explained above, however, the Department's policy requires that United States passports list the sex of the passport holder as either "M" or "F."  In addition, Plaintiff concedes in the complaint that the sex field on Plaintiff's birth certificate was initially left blank, ECF No. 1 at ¶10, before being filled in with "Male," *id*. at ¶14.  Plaintiff further alleges that Plaintiff successfully amended Plaintiff's birth certificate in 2012 to list Plaintiff's sex as "Unknown."  *Id.* at ¶ 22.  The Department included in the Administrative Record its policy and procedures for "cases in which an applicant requests a gender on the passport application different from the one reflected on some or all of the submitted citizenship and/or identity evidence."  AR 00020 (7 FAM 1300 Appendix M, subsection (a)).  The Department's policy applies to Plaintiff because Plaintiff submitted as proof of identification a Colorado driver's license listing Plaintiff as female but requested a passport listing Plaintiff's sex as "X."  Under the Department's policy, an amended birth certificate alone is not acceptable evidence to issue a passport in a new gender.  AR 00024 (7 FAM 1320 Appendix M, subsections (c)(6)).[4]  The amended birth certificate submitted by Plaintiff is not, therefore, sufficient evidence for the Department to issue Plaintiff a passport in a new gender.  Despite Plaintiff's claims to the contrary, Plaintiff did not satisfy the Department's

---

[4] The Department explains in its declaration that amended birth certificates are not sufficient evidence for it to issue a passport in a new gender because the Department has limited knowledge of the documentation or degree of proof that various jurisdictions require in order to issue an amended birth certificate.  Fellows Decl., ¶19.

established, written policies for issuance of a passport in a new gender.  The Department correctly applied its relevant policies and the denial of Plaintiff's passport application was consistent with those policies.

Finally, Plaintiff suggests that the Department's decision was "arbitrary and capricious because [it] failed to give any consideration to the viability of a third sex marker on a U.S. passport."  Plf's Op. Br. at 14.  Plaintiff cites no authority, however, for the premise that the Department was obligated to consider making a significant policy change in response to a single passport application, let alone that it was "arbitrary and capricious" not to make such a policy change.  The case cited by plaintiff, *Motor Vehicle Manufacturers Association v. State Farm Mutual Auto. Insurance Company*, 463 U.S. 29 (1983), involved a challenge to a rulemaking action, in which the National Highway Traffic Safety Administration was expressly setting policy.  Here, the only issue before the Department was the adjudication of a passport application that did not satisfy the Department's existing policies.  Moreover, the Administrative Record shows that the Department did consider Plaintiff's request and reasonably concluded that it was inconsistent with the Department's established policies.  In its final decision letter, dated December 29, 2014, the Department identified the option that Plaintiff had requested – a passport listing Plaintiff's sex as "X" – and explained that it could not grant Plaintiff's request because Department policy requires the sex field on United States passports to be listed as "M" or "F."  AR00036.  Similarly, in the Department's letter to Plaintiff, dated September 24, 2014, the Department acknowledged Plaintiff's request that it issue a passport listing Plaintiff's sex as "X" but explained that it could not grant Plaintiff's request because it conflicted with the Department's requirements for U.S. passports.  AR00018.

Thus, the Department considered the alternative that Plaintiff proposed and

appropriately denied Plaintiff's request because it was inconsistent with established Department policy. The Department's decision was, therefore, neither arbitrary nor capricious and should be upheld under the APA's deferential standard of review. *See* Defs' Mot. at 6-7.

### B.    The Department Acted Within Its Authority under the Passport Act

As explained in Defendants' opening motion, the Passport Act of 1926 provides that, "[t]he Secretary of State may grant and issue passports … under such rules as the President shall designate and prescribe for and on behalf of the United States, … ."  22 U.S.C. § 211a; *see* Exec. Order 11295 (August 5, 1996); *see* Defs' Mot. at 10-11.  The Department has exercised its authority under the Passport Act to create a passport application form that, since 1976, has required applicants to indicate their sex with either an "M" or an "F."  Fellows Decl., ¶4.  The Department has also promulgated a regulation that requires applicants to fully complete the passport application form before a passport can be issued.  22 C.F.R. § 51.20(a).  The Department's denial of Plaintiff's passport application seeking a passport listing Plaintiff's sex as "X" was fully consistent with the Department's authority under the Passport Act to set the requirements for U.S. Passports.

Plaintiff argues that, "[w]hen it refused to issue Zzyym a passport, the Department exceeded its statutory authority under the Passport Act."  Plf's Op. Br. at 16.  In support of Plaintiff's argument, Plaintiff cites to the Supreme Court's decision in *Kent v. Dulles*, 357 U.S. 116 (1958).  *Id.*  But the Supreme Court's decision in *Kent* and its subsequent decision in *Haig v. Agee*, 453 U.S. 280 (1981), show that the Department's actions in this case were well within its authority.

In *Kent*, the Court examined whether the Secretary of State had the authority to deny a passport based on suspicions that the passport applicant was a communist.  357 U.S. at 118-19.

9

The Court observed that "the power of the Secretary of State over the issuance of passports is expressed in broad terms" and that the Department had a long history of exercising that power to deny passport applications based on grounds related to "citizenship or allegiance on the one hand or to criminal or unlawful conduct on the other." *Id.* at 127-128. The Court then explained that, because Congress chose not to address the Department's practices in subsequent legislation, it could be fairly argued that Congress had adopted the Department's practices. *Id.* at 128. With regard to communists, however, the Court observed that the Department's decisions were "scattered" and "not consistently of one pattern." *Id.* Because of the Department's lack of consistency, the Court rejected the argument that Congress had adopted the State Department's practice of denying passports to suspected communists. *Id.*

In *Haig v. Agee*, the Court was presented with the question of whether the Secretary of State had authority to revoke a passport on grounds that the passport holder's activities in foreign countries were causing or were likely to cause serious harm to the national security or foreign policy of the United States. 453 U.S. at 282. The Court observed that, although the Passport Act does not expressly authorize the Department of State to revoke passports or deny passport applications, "[i]t is beyond dispute that the Secretary has the power to deny a passport for reasons not specified in the statutes." *Id*. at 290. The Court then explained that, "[p]articularly in light of the broad rule-making authority granted in the [1926] Act, a consistent administrative construction of that statute must be followed by the courts unless there are compelling indications that it is wrong." *Id*. at 291 (citations omitted). The Court concluded that the policy embodied in the regulations at issue, authorizing the revocation of a passport if the Secretary of State determined that the passport holder's activities abroad were causing or were likely to cause serious harm to the national security or foreign policy of the United States,

10

was "sufficiently substantial and consistent to compel the conclusion that Congress has approved it." *Id.* at 306.

Unlike the instant case, both *Kent* and *Haig* involved the denial or revocation of a passport for essentially discretionary reasons. Neither involved the Department's unquestioned authority to prescribe generally applicable rules for the issuance of passports and to deny a passport where the passport application does not comply with those generally applicable rules. 22 U.S.C. § 211a; Exec. Order. 11295; and 22 C.F.R. § 51.20(a). Since 1976, the Department's passport applications have required applicants to select either "M" or "F" to indicate their sex. Fellows Decl. at ¶4. The Department's decision to deny Plaintiff's passport application that did not comply with that long-established rule was clearly within its authority under the Passport Act to issue passports only "under such rules" established by the Department. 22 U.S.C. § 211a; Exec. Order 11295. Moreover, to the extent the Passport Act does not expressly address whether the Department may require passports to indicate the passport holder's sex with an "M" or an "F," the Department's consistent administrative construction of the statute since 1976 supports its authority to set such a requirement. *See Agee*, 453 U.S. at 291. The Court should, therefore, enter judgement for Defendants on Plaintiff's APA claim that the Department exceeded its statutory authority.

## II.     The Department's Decision to Deny Plaintiff's Request for a Passport Listing Plaintiff's Sex as "X" Did Not Violate the Due Process or Equal Protection Clauses

In their motion to dismiss Plaintiff's constitutional claims pursuant to Rule 12(b)(6), Defendants showed that Plaintiff's Due Process and Equal Protection Clause clams are subject to rational basis review and that the Department had rational bases for requiring passports to indicate the passport holder's sex with either an "M" or an "F." Plaintiff contends that the Court should apply a heightened level of scrutiny to the Department's passport policy and

affirmatively seeks judgment as to these claims at this stage.  While Defendants contend that these claims are subject to rational basis review, they have submitted with this opposition to Plaintiff's demand for judgment a declaration from the Department of State showing that the Department's passport policy furthers significant governmental interests and should be upheld under any level of scrutiny.

A.    **Plaintiff's Due Process Claim is Subject to Rational Basis Review**

Plaintiff contends that the Department's passport policy should be subject to a heightened level of scrutiny because it infringes on Plaintiff's fundamental rights to international travel and individual dignity and autonomy.  Plf's Op. Br. at 22-23.  As Defendants have shown, however, the right to international travel is not a fundamental right. Defs' Mot. at 14.  In *Haig v. Agee, supra*, the Supreme Court distinguished between the fundamental right to interstate travel and the right to international travel, which is "'no more than an aspect of [] liberty'" that "'can be regulated within the bounds of due process.'"  *Id.* (quoting *Haig*, 453 U.S. at 307).  Plaintiff's contrary position is based on a lengthy quote from the Supreme Court's decision in *Kent v. Dulles*, 357 U.S. 116 (1958).  Plf's Op. Br. at 23.  The Supreme Court, however, has specifically noted that the rights to interstate travel and international travel were treated indiscriminately in *Kent* and that subsequent cases, including *Agee*, have rejected that approach.  *See Regan v. Wald*, 468 U.S. 222, 241 n.25 (1984).  Plaintiff also cites to *Zemel v. Rusk*, 381 U.S. 1 (1965) and *Aptheker v. Secretary of State*, 378 U.S. 500 (1964) in support of the contention that the right to international travel is a fundamental right. Pl's Op. Br. at 24.  But like *Kent*, *Zemel* and *Aptheker* were decided well before the Supreme Court decided *Haig* and stated definitively that the right to international travel is not a fundamental right.  *Hutchins v. Dist. of Columbia*, 188 F.3d 531, 537 (D.C. Cir. 1999)

(explaining that, "international travel is no more than an aspect of liberty that is subject to reasonable government regulation within the bounds of due process, whereas interstate travel is a fundamental right subject to a more exacting standard."); *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1439 (9th Cir. 1996) ("Given the lesser importance of ... freedom to travel abroad, the Government need only advance a rational, or at most an important, reason for imposing the ban.").

Moreover, as Defendants also explained, the Department did not deny Plaintiff the right to international travel. The Department offered to provide Plaintiff with a passport listing Plaintiff as female, consistent with the Colorado driver's license submitted with Plaintiff's passport application, or as male, provided that Plaintiff submitted the documentation required under the Department's policy to verify Plaintiff's identity.[5]  AR 00018.  Plaintiff ultimately rejected the Department's offer to provide Plaintiff with a valid passport that comports with the Department's requirements, and Plaintiff's application for a passport listing Plaintiff's sex as "X" was denied.

Plaintiff's claim that a heightened standard of scrutiny is required because the Department has infringed upon Plaintiff's right to individual dignity and autonomy is equally

---

[5] Plaintiff suggests that this offer was illusory, claiming that accepting a passport that identifies Plaintiff's sex as female would have exposed Plaintiff to criminal prosecution for dishonesty in obtaining a passport because Plaintiff is intersex. Plf's Op. Br. at 24.  Plaintiff's concern is misplaced.  The Government has not threatened to prosecute Plaintiff for accepting a limited choice provided by the Government, and Plaintiff cannot show that choosing between two available options presented by the Government, even where Plaintiff may feel that they are inadequate, would in any way be treated as a criminal act or even an intentionally false statement.  Fellows Decl., ¶22; Cf. "Frequently Asked Questions about the Visa Waiver Program (VWP) and the Electronic System for Travel Authorization (ESTA)," http://www.cbp.gov/travel/international-visitors/frequently-asked-questions-about-visa-waiver-program-vwp-and-electronic-system-travel (indicating that applicants for the Visa Waiver Program, administered by the Department of Homeland Security, who have a passports listing their sex as "X," should choose the option, male or female, that "they feel most comfortable with.") (Last visited on May 25, 2016).

flawed.  As Defendants explained previously, when analyzing substantive due process claims, the Supreme Court has required a "careful description of the asserted fundamental liberty interest," *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) and has counseled that, "[v]ague generalities … will not suffice," *Chavez v. Martinez*, 538 U.S. 760, 776 (2003).  Plaintiff's allegation that the Department has infringed upon Plaintiff's right to individual dignity and autonomy does not identify a fundamental right or interest subject to heightened scrutiny.  Indeed, the principal case that Plaintiff relies on, *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), shows why this is so.  In *Obergefell*, the Court stated that the fundamental liberties protected by the Due Process Clause "extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs."  *Obergefell*, 135 S. Ct. at 2597.  After emphasizing that not all rights related to individual dignity and autonomy rise to the level of fundamental liberties, the Court analyzed the claim in *Obergefell* based on the specific right asserted: the right to marry.  *Id.* at 2598; *see also Seegmiller v. LaVerkin City*, 528 F.3d 762, 771 (10th Cir. 2008) ("[A]s the Court made clear in *Glucksberg*, not all important, intimate, and personal decisions are protected by substantive due process.") (quotation omitted).  Because the specific right Plaintiff has asserted in this action – the right to a passport listing Plaintiff's sex as "X" – is not a fundamental right, Plaintiff's substantive due process claim is subject to rational basis review and should be upheld.

**B.     Plaintiff's Equal Protection Claim Should Be Dismissed Because Plaintiff Cannot Show Intentional Discrimination and the Challenged Action Has a Rational Basis**

Defendants have also previously explained that, in the Tenth Circuit, the first step to analyzing an equal protection claim is determining whether the challenged Government action intentionally discriminates between groups of people.  Defs' Mot. at 17 (citing *SECSYS, LLC v.*

*Vigil*, 666 F.3d 678, 685 (10th Cir. 2012) ("First, we ask whether the challenged state action intentionally discriminates between groups of persons."). A finding of intentional discrimination "requires that the decisionmaker selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of' the law's differential treatment of a particular class of persons." *Lewis v. Clark*, 577 F. App'x 786, 795 (10th Cir. 2014). Defendants then showed that Plaintiff's equal protection claim should be dismissed because the Department of State's policy of requiring United States passports to list the passport holder's sex as either "M" or "F" is generally applicable and is not the product of a discriminatory intent or practice. Defs' Mot. at 18.

Plaintiff does not directly respond to Defendants' argument that there is no evidence of discriminatory intent. Indeed, Plaintiff acknowledges that the Department's policy has been in place for an extended period of time and does not appear to have been created with an intent to discriminate against any particular group, including intersex persons: "The limitation of passports to binary sex markers may long have seemed natural and just… ." Plf's Op. Br. at 26. As explained further below, the requirement at issue furthers the Government's significant interests in ensuring that the information in United States passports is accurate and verifiable and that passports can be used to link passport applicants to relevant law enforcement information. There is no evidence that the Department's passport requirement were intended to discriminate against any group on any basis. Because "[p]roof of []discriminatory intent or purpose is required to show a violation of the Equal Protection Clause," *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977); *see Lewis v. City of Fort Collins*, 903 F.2d 752, 755 n.1 (10th Cir. 1990) (noting that "purposeful discrimination is an essential element of an equal protection violation."), and there is no evidence that the

Department's passport policy was intended to discriminate against any particular group, Plaintiff's equal protection claim should be dismissed.

In any event, if the question is reached, Plaintiff's equal protection claim is likewise subject to rational basis review. Contrary to Plaintiff's contention, the Department's passport policy does not discriminate on the basis of sex, nor on the basis of Plaintiff's status as intersex. Plaintiff acknowledges in the complaint that, "[i]f Plaintiff were intersex and also identified as either male or female," ECF No. 1 ¶ 81, as most intersex individuals do, ECF No. 1 at ¶13, "Plaintiff would qualify for and be issued a passport," *id.* ¶ 81. The Department's policy, therefore, impacts only those who decline to mark "M" or "F" on the Department's passport application form. As this group[6] is not a suspect class, Plaintiff's equal protection claim is subject to rational basis review. For the reasons already provided, the Department's policy easily satisfies the rational basis standard.

### C.    The Department's Passport Policy Should Be Upheld under Any Level of Scrutiny

Plaintiff has moved for judgment on Plaintiff's constitutional claims and has argued that those claims are subject to heightened scrutiny. Plf's Op. Br. at 18-22. In response to Plaintiff's motion, Defendants have submitted with this filing a declaration from the Department of State showing that the Department's passport policy should be upheld under any standard of review. The State Department's declaration establishes that its passport policy furthers significant governmental interests.

First, the Department's passport policy furthers the Government's interest in ensuring that the information in United States passports is accurate and verifiable. A United States

---

[6] The Department is not aware of any other instances in which an individual has applied for a passport with a sex marker other than "M" or "F." Fellows Decl., ¶21.

passport is the world's premier identity credential. Fellows Decl., ¶11. It is an essential travel document for American traveling abroad. *Id.* Because a United States passport is a uniquely reliable document, it also serves an important secondary purpose as proof of citizenship and identity for state and local governments that provide benefits and issue birth records, drivers' licenses and vehicle registrations and other institutions, such as schools, employers, and banks, that require identity and citizenship documentation. *Id.* at ¶12.

Every passport issued by the Department of State must be based on the submission of documentation supporting a finding of valid identity and citizenship. *Id.* at ¶11. Under the applicable regulation, "[t]he applicant has the burden of establishing his or her identity." 22 C.F.R. § 51.23(a). To fulfill its obligation to verify the identity and citizenship of passport applicants and to prevent identity theft and passport fraud, the Department depends upon reliable forms of identification issued by local governments, such as birth certificates and driver's license. Fellows Decl., ¶¶13-16. Fifty-seven (57) U.S. jurisdictions issue certificates of birth, including each of the fifty states, Guam, Puerto Rico, United States Virgin Islands, American Samoa, the Commonwealth of the Northern Mariana Islands, New York City, and the District of Columbia. *Id.* at ¶15. To the best of the State Department's knowledge, the predominant if not exclusive practice in those fifty-seven jurisdictions is to use only the sex markers "M" for male or "F" for female on official birth documentation.[7] *Id.* Similarly, it appears that none of the fifty-seven (57) jurisdictions that issue driver's licenses presently issues licenses with a sex designation other than "M" or "F." *Id.* Nor do any of the other U.S. federal agencies that issue

---

[7] Although some jurisdictions allow the sex field on birth certificates to be left blank or filled in with the word "unknown," these options are not used to indicate a sex other than male or female. Fellows Decl., ¶15.

citizenship or travel documents, including the U.S. Citizenship and Immigration Services in the Department of Homeland Security and the Department of Defense.[8]  *Id.*

The Department's policy of issuing passports that identify the passport holder's sex as either "M" or "F" is consistent with the types of documents and databases that the Department uses to verify the identity and citizenship of passport applicants.  *Id.* at 15.  Allowing passports that list the passport holder's sex with a marker not supported by the documents and databases on which the Department relies would, therefore, upend the Department's current system of validating the identity and citizenship of passport applications and compromise the Department's efforts to prevent identity theft and passport fraud by requiring the Department to depend on less reliable and less uniform identification documents.

Second, the Department's passport policy furthers the Government's significant interest in linking passport applicants and holders to relevant law enforcement information.  When individuals apply for a passport or use a United States passport to cross the borders of the United States, the Department uses a computerized system to ensure document integrity, effective fraud prevention, and cooperation with courts and law enforcement agencies.  *Id.* at ¶ 16.  An individual's sex is one of the items of personally identifiable information that is entered into the system by the Department and other federal and local agencies.  That personally identifiable information, including an individual's sex, is then used to identify individuals in the system and connect them to relevant law enforcement records.  *Id.*  To the best of the State Department's knowledge, "none of the law enforcement entities that provide data to the Department's system

---

[8] Of the hundreds of countries that issue passports, the State Department is aware of only a handful that issue passports indicating the passport holder's sex as "X."  Fellows Decl., ¶17.  The Department of State requires that U.S. visas for individuals from all countries, including those that issue passports identifying the passport holder's sex with an "X," identify the visa holder's sex with an "M" or an "F."  *Id.* at ¶8.

use an 'X' or any other indicator (including a blank) to signify an option for sex other than male or female." *Id.* Issuing passports that list the passport holder's sex with an "X" could, therefore, risk compromising significant law enforcement interests by making it more difficult to link passport applicants and those who use United States passports to cross America's borders with critical law enforcement information.

Because the Department's policy of requiring that United States passports list the passport holder's sex as either "M" or "F" furthers important Government interests, the Court should dismiss Plaintiff's constitutional challenges under any standard of review.

### III.    The Availability of Relief under the APA Precludes Mandamus Relief

Defendants explained in their dispositive motion that Plaintiff has failed to establish any of the three requirements for mandamus relief and argued specifically that Plaintiff has not shown that Plaintiff has no other adequate remedy. In Plaintiff's Opening Brief, Plaintiff acknowledges that Plaintiff's claim for mandamus relief "is pled in the alternative to the claims for relief under the APA." Plf's Op. Br. at 30. Because an available remedy under the APA precludes mandamus relief, *see, e.g.*, *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997) ("The availability of a remedy under the APA technically precludes [plaintiff's] alternative request for a writ of mandamus … ."), the Court should dismiss Plaintiff's mandamus claim.

### CONCLUSION

For the reasons set forth above, the Court should deny Plaintiff's motion for judgment on all of Plaintiff's claims, grant judgment to Defendants on Plaintiff's APA claims, and dismiss or enter summary judgment for Defendants on Plaintiff's constitutional claims.

Date: May 25, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Assistant Attorney General

JOHN F. WALSH
United States Attorney, District of Colorado

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

*/s/ Ryan B. Parker*
RYAN B. PARKER
Trial Attorney
United States Department of Justice, Civil Division
20
Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 514-4336
Fax: (202)616-8470
Email: ryan.parker@usdoj.gov

Attorneys for Defendants