**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:15-cv-02362-RBJ

DANA ALIX ZZYYM,

      Plaintiff,

vs.

JOHN F. KERRY, in his official capacity as Secretary of State; and
SHERMAN D. PORTELL, in his official capacity as the Director of the Colorado Passport
Agency for the United States Department of State,

      Defendants.

---

**PLAINTIFF ZZYYM'S REPLY BRIEF IN SUPPORT OF
DECLARATORY, INJUNCTIVE, AND OTHER RELIEF**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

I.   THE DEPARTMENT'S SUBMISSION OF THE FELLOWS
     DECLARATION VIOLATES PROCEDURES REQUIRED BY THE
     APA AND THE TENTH CIRCUIT .....................................................................2

     A.   The Fellows Declaration Is Improperly Before the Court and
          Should Be Disregarded .............................................................................2

     B.   Review of the Department's Decision Should Be Treated as an
          Appeal ........................................................................................................3

II.  THE DEPARTMENT'S ACTIONS VIOLATE THE APA .................................3

     A.   The Department's Decision to Deny Zzyym's Passport Application
          Is Arbitrary and Capricious......................................................................3

          1.   The Administrative Record Lacks Any Reasoned
               Explanation .................................................................................3

          2.   The Department Misstates and Misapplies Its Own Policy
               Pertaining to Intersex Applicants.................................................4

          3.   The Department Improperly Refused to Consider the
               Viability of a Third Gender Marker on a Passport .....................6

     B.   The Department Lacks the Authority to Deny a Passport Based on
          Personal Characteristics ............................................................................7

III. THE DEPARTMENT'S MALE-OR-FEMALE GENDER MARKER
     POLICY FOR PASSPORTS VIOLATES THE FIFTH AMENDMENT
     AS APPLIED TO ZZYYM ..................................................................................9

     A.   The Challenged Policy Is Subject to Heightened Scrutiny under
          Equal Protection Analysis Because It Facially Classifies Based on
          Gender........................................................................................................9

     B.   Decisions That Infringe Upon Zzyym's Fundamental Rights and
          Liberty Interests Require Application of Strict Scrutiny .......................10

          1.   The Department's Decision Denies Zzyym the Right to
               International Travel....................................................................10

          2.   Requiring Zzyym to Choose an Inaccurate Gender Marker
               Infringes Upon the Fundamental Right to Individual
               Dignity and Autonomy ..............................................................12

i

C.      The Department's Actions Cannot Survive Rational Basis Review,
        Let Alone Heightened Scrutiny. ..........................................................................12

CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Allentown Mack Sales & Serv., Inc. v. NLRB,*
    522 U.S. 359 (1998)..................................................................................................4

*Aptheker v. Secretary of State,*
    378 U.S. 500 (1964)............................................................................................10, 11

*Ctr. for Native Ecosystems v. Salazar,*
    711 F. Supp. 2d 1267 (D. Colo. 2010) .....................................................................7

*Dames & Moore v Regan,*
    453 U.S. 654 (1981)..................................................................................................7

*Eunique v. Powell,*
    302 F.3d 971 (9th Cir. 2002) ..................................................................................11

*Freedom to Travel Campaign v. Newcomb,*
    82 F.3d 1431 (9th Cir 1996) ...................................................................................11

*Haig v. Agee,*
    453 U.S. 280 (1981)............................................................................................8, 10

*Hutchins v. Dist. of Columbia,*
    188 F.3d 531 (D.C. Cir. 1999) ...............................................................................10

*Kent v. Dulles,*
    357 U.S. 116 (1958)..................................................................................................8

*Miss. Univ. for Women v. Hogan,*
    458 U.S. 718 (1982)..................................................................................................9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.,*
    463 U.S. 29 (1983)....................................................................................................6

*N. Arapaho Tribe v. Ashe,*
    92 F. Supp. 3d 1160, 1174 (D. Wyo. 2015)..............................................................3

*New Mexico ex rel. Richardson v. Bureau of Land Mgmt.,*
    565 F.3d 683 (10th Cir. 2009) ..................................................................................4

*Nguyen v. INS,*
    533 U.S. 53 (2001)..................................................................................................11

*NLRB v. Wyman-Gordon*,
    394 U.S. 759 (1969)..........................................................................................6

*Nunez-Pena v. INS*,
    956 F.2d 223 (10th Cir. 1992).........................................................................6

*Olenhouse v. Commodity Credit Corp.*,
    42 F.3d 1560 (10th Cir. 1994)...................................................................2, 3, 6

*Omar v. Kerry*,
    No. 15-cv-01760-JSC, 2016 WL 617449 (N.D. Cal. Feb. 16, 2016) ......................11

*SECSYS, LLC v. Vigil*,
    666 F.3d 678 (10th Cir. 2012)......................................................................9, 10

*Sorenson Commc'ns Inc. v. FCC*,
    567 F.3d 1215 (10th Cir 2009).........................................................................4

*United States v. Lilly*,
    810 F.3d 1205 (10th Cir. 2016)........................................................................12

*United States v. Virginia*,
    518 U.S. 515 (1996)..........................................................................................9

*United States v. Windsor*,
    133 S. Ct. 2675 (2013).....................................................................................10

*Vartelas v. Holder*,
    132 S. Ct. 1479 (2012).....................................................................................11

*Zemel v. Rusk*,
    381 U.S. 1 (1965).........................................................................................7, 8

STATE CASES

*In the Matter of the Sex Change of Jamie Shupe*,
    No. 16CV13991, General J. of Sex Change (Or. Cir. Ct. June 10, 2016).................9

FEDERAL STATUTES

5 U.S.C. § 551.........................................................................................................6

22 U.S.C. § 211a.....................................................................................................8

REGULATIONS

22 C.F.R. § 51.20(a)................................................................................................8

Patient Protection and Affordable Care Act, 81 Fed. Reg. 31,384 (May 18, 2016) ......................9

**OTHER AUTHORITIES**

7 FAM § 1320 .................................................................................................5, 13, 14

7 FAM § 1350 .........................................................................................................4

## INTRODUCTION

The U.S. Department of State (the "Department")[1] seeks to bar a U.S. citizen and Navy veteran from traveling internationally, not because of their conduct, but because of their gender. In its responsive papers,[2] the Department presents a generalized and unsubstantiated list of horribles that supposedly would occur if it were to issue an accurate passport to Plaintiff Dana Alix Zzyym ("Zzyym"), an intersex person who is neither male nor female. There is nothing in the Administrative Record that provides a reasoned basis for denying Zzyym a passport, and the Department's efforts at post-hoc rationalization are prohibited by the governing law—the Administrative Procedure Act ("APA"). Moreover, the Department's stated "policy" would yield absurd and discriminatory results. As the Department would have it, for Zzyym to obtain a valid passport—"the world's premiere identity credential" (Defs.' Reply 3)—the gender designation on that passport must be inaccurate. For the reasons set forth in Plaintiff's Opening Brief[3] and those further described below, the Department's actions are arbitrary and capricious, exceed statutory authority, and violate the equal protection and due process components of the Fifth Amendment to the U.S. Constitution. This Court should set aside and declare unlawful the Department's decision to deny Zzyym's passport application and should provide declaratory, injunctive, and other relief to afford Zzyym, and others like them, a fair opportunity to obtain a U.S. passport by means of a true and accurate application.

---

[1] Unless otherwise indicated, references to the Department indicate Defendant Kerry and Defendant Portell, in their official capacities on behalf of the U.S. Department of State.

[2] *See* Defs.' Reply in Supp. of Their Dispositive Mot. & Opp'n to Pl.'s Req. for J. [Dkt. 41] (hereinafter "Defs.' Reply").

[3] *See* Pl.'s Opening Br. in Supp. of Declaratory, Injunctive & Other Relief & Opp'n to Defs.' Mot. for J. on the Administrative R. & Mot. to Dismiss [Dkt. 37] (hereinafter "Pl.'s Op. Br.").

I.  **THE DEPARTMENT'S SUBMISSION OF THE FELLOWS DECLARATION VIOLATES PROCEDURES REQUIRED BY THE APA AND THE TENTH CIRCUIT**

A.  **The Fellows Declaration Is Improperly Before the Court and Should Be Disregarded**

As a preliminary matter, the Department's presentation of extra-record material—the Declaration of Bennett Fellows—is improper under the APA and Tenth Circuit jurisprudence, which prohibit reliance upon "arguments, documents and other evidence outside the administrative records." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579-80 (10th Cir. 1994); *see also* Administrative R. 0001 (Department official certifying "complete record" under penalty of perjury) [Dkt. 34] (hereinafter "AR"). The after-the-fact justifications set forth in the Fellows Declaration, offered nearly a year and a half after the agency action denying Zzyym a passport, are entirely outside of and unsupported by the certified administrative record. *See* Decl. of Bennett S. Fellows [Dkt. 41-1] (hereinafter "Fellows Decl."). Moreover, nothing in the certified record reflects that Fellows was a decisionmaker, was consulted, or otherwise was a part of the decisionmaking process when the Department denied Zzyym's passport application.[4] Nor is there anything in the Administrative Record to confirm that any of the factors outlined by Fellows were actually considered, or that they are even legitimate. For example, Fellows suggests that applicants must designate their gender as either "M" or "F" to allow for "effective fraud prevention, and cooperation with courts and law enforcement agencies." *See id.* ¶ 16. Yet

---

[4] The declaration is also problematic because Zzyym has not been afforded an opportunity to examine, challenge or conduct discovery related to Fellows' statements, many of which would be proven false. For example, undersigned counsel is indeed aware of another passport applicant who requested a gender marker other than "M" or "F" from the State Department (*compare with* Fellows Decl. ¶ 21) and who possesses a valid state driver's license with a gender marker other than "M" or "F" (*compare with id.* ¶ 15). To the extent Zzyym responds to assertions in the Fellows Declaration, Zzyym does not concede that the extra-record justifications and the declaration are appropriate for judicial review of agency action.

neither the record nor Fellows offer evidence to support that contention, much less any explanation of why or how an accurate third gender marker would promote fraud or otherwise compromise coordination between the Department and courts or law enforcement agencies. *See infra* Part III.C.

### B.    Review of the Department's Decision Should Be Treated as an Appeal

Additionally, Defendants' suggestion that "the Court may also treat Defendants' motion as a motion for summary judgment" is without merit. *See* Defs.' Reply 5 n.3. A motion for summary judgment is incompatible with standards for judicial review of agency action under the APA because it "invites (even requires) the reviewing court to rely on evidence outside the administrative record." *Olenhouse*, 42 F.3d at 1579-80; *see also N. Arapaho Tribe v. Ashe*, 92 F. Supp. 3d 1160, 1174 (D. Wyo. 2015) (acknowledging a court "must limit its constitutional review of Defendants' informal adjudication to the administrative record"). Thus, "[r]eview of agency action in the district courts must be processed *as appeals*." *Olenhouse*, 42 F.3d at 1580.

## II.    THE DEPARTMENT'S ACTIONS VIOLATE THE APA

### A.    The Department's Decision to Deny Zzyym's Passport Application Is Arbitrary and Capricious

#### 1.    *The Administrative Record Lacks Any Reasoned Explanation*

The Department fails to provide a reasoned basis for denying Zzyym's passport application. Because the arbitrary-and-capricious standard focuses on the rationality of the agency's decisionmaking, "the grounds upon which the agency acted must be clearly disclosed in, and sustained by, the record." *Olenhouse*, 42 F.3d at 1575. Thus, the Department "must make plain its course of inquiry, its analysis and its reasoning." *Id*. Yet, far from articulating salient facts, relevant factors considered, or a rationale for its conclusion, the Department merely repeats the challenged one-sentence policy: that the sex field on U.S. passports must "be listed as 'M' or

'F'." Defs.' Reply 5. Apart from its improper post-hoc declaration—which the Court should ignore—the Department has never even attempted to explain either its decision to deny Zzyym's passport application or the underlying male-or-female binary-only gender marker policy. *See Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) ("[T]he process by which [an agency] reaches that result must be logical and rational."). Lacking any contemporaneous explanation, the Department's refusal to issue a passport to Zzyym was arbitrary and capricious.

There is no rationale for the agency's decision in the administrative record, and this Court should not credit the Department's post hoc rationalizations. *Sorenson Commc'ns Inc. v. FCC*, 567 F.3d 1215, 1221 (10th Cir 2009) ("The court must rely upon the reasoning set forth in the administrative record and disregard *post hoc* rationalizations of counsel."); *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 704 (10th Cir. 2009) ("[W]e consider only the agency's reasoning at the time of decisionmaking, excluding post-hoc rationalization concocted by counsel in briefs or argument.").

## 2. *The Department Misstates and Misapplies Its Own Policy Pertaining to Intersex Applicants*

The Department relies heavily on the Fellows Declaration to explain that it adhered to an established policy in denying Zzyym's passport application. Even if the declaration were properly before this Court for consideration—which it is not—it misconstrues and attempts to modify the Department's policy after-the-fact.

The Department concedes that 7 FAM § 1350 Appendix M the Foreign Affairs Manual ("FAM") "govern[s] the processing of passport applications for intersex applicants," Defs.' Reply 5, but it now disputes that the policy requires that the Department use the current gender marker from Zzyym's certified birth certificate. *See* AR00005 (listing Zzyym's sex as "unknown"). As written, the catch-all provision at subsection (c) instructs the Department to use

4

the gender marker on an intersex applicant's birth certificate if a licensed physician does not specify either "male" or "female" in supporting documentation. AR00026; *see also* Defs.' Reply 6 ("If the applicant does not provide the necessary statements, the Department uses the applicant's birth documentation to determine the sex that will be listed on the applicant's passport."). Contrary to the plain language of that provision, the Department contends that "an amended birth certificate alone is not acceptable evidence to issue a passport in a new gender," Defs.' Reply 7, improperly injecting a new and ambiguous "acceptable evidence" requirement.[5]

The Department then claims that it "does not accept an *amended* birth certificate" to update a gender marker, citing 7 FAM § 1320(c)(6) App. M. Fellows Decl. ¶ 19 (emphasis added); Defs.' Reply 7 n.4. This statement is another post-hoc justification not otherwise articulated at the time of the Department's decision. *See* AR00036. Moreover, 7 FAM § 1320(c)(6) Appendix M, notably outside the passport processing section for intersex applicants, is applicable only to passport *renewals*, not first-time passport applicants. *See* AR00024. But most significantly, even if subsection (c) were to require processing officials to accept only an original birth certificate as evidence of gender, the sex field on Zzyym's original birth certificate was initially left blank, reflecting Zzyym's true and accurate intersex gender. *See* Compl. ¶ 10. The sex field on Zzymm's birth certificate was later filled in with "Male," and then again amended to replace "Male" with "unknown," effectively reverting back to the accurate original in that it indicates a gender other than "male" or "female." *See id.* ¶¶ 10, 14, 22. The Department

---

[5] Moreover, Zzyym did not submit their birth certificate alone; Zzyym also provided statements from licensed Veterans Administration physicians attesting that they were born intersex. *See* AR00031, AR00033. There is absolutely no assertion by the Department in the administrative record that Zzyym's proffered sworn statements from physicians were unacceptable or that they did not provide objective, medical bases for the Department to confirm Zzyym is intersex, and neither male nor female.

deviated from its own policy because the gender marker on Zzyym's birth documentation, either original or current, would require passport officials to utilize a gender marker other than "M" or "F." The Department's departure from its own policy without explanation renders its actions arbitrary and capricious.

### 3. *The Department Improperly Refused to Consider the Viability of a Third Gender Marker on a Passport*

The Department's unsupported contention that it did not need to consider *any* viable policy options because this matter arose in the context of agency adjudication fails as a matter of law. *See* Defs.' Reply 8. Reasoned decisionmaking requires that "an agency must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 48 (1983). It is well established that an agency must have "considered all relevant factors," and agency action, a statutory term which includes *both* rulemaking and adjudication, *see* 5 U.S.C. § 551 (definitions), will be set aside as arbitrary and capricious if it "entirely failed to consider an important aspect of the problem . . . ." *Olenhouse*, 42 F.3d at 1574. Tenth Circuit jurisprudence instructs that the same arbitrary-and-capricious standard applies in both contexts because "[a]djudicated cases may and do . . . serve as vehicles for the formulation of agency policies, which are applied and announced therein." *Nunez-Pena v. INS*, 956 F.2d 223, 225 (10th Cir. 1992) (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 765 (1969)).

The Department claims, in the alternative, that "the Administrative Record shows that the Department did consider the request and reasonably concluded that it was inconsistent with established policies." Defs.' Reply 8. As discussed above in Part II.A.1, an agency does not genuinely engage in reasoned decisionmaking by merely stating a one-sentence conclusion that it followed a policy that is subject to challenge. *See also* Compl. ¶ 50 (challenging the

Department's "decision to refuse the Plaintiff a passport *and* its male-or-female, binary-only gender marker policy") (emphasis added); *see also Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1273 (D. Colo. 2010) (noting petitioner may challenge a broad agency policy document in the context of final agency action). Moreover, the Department does not substantively address its failure to consider a third gender marker as a viable alternative. *See* Pl.'s Op. Br. 14-16. Nor does the Department acknowledge that Zzyym indeed completed the application form by writing "Intersex" for the sex field,[6] *id.* at 11-12, or that Zzyym had provided evidence of identity pursuant to the regulations and FAM, *id*. at 12-14. For all the reasons stated above and in Plaintiff's Opening Brief, the Department's denial of Zzyym's passport application is arbitrary and capricious.

### B. The Department Lacks the Authority to Deny a Passport Based on Personal Characteristics

The Department does not claim explicit authorization for its power to deny a passport to individuals like Zzyym; it only asserts implicit authorization. But implicit authorization requires "an administrative practice sufficiently substantial and consistent to warrant the conclusion that Congress had implicitly approved it." *Zemel v. Rusk*, 381 U.S. 1, 12 (1965). Indeed, a "long-continued practice, known to and acquiesced in by Congress, would raise a presumption that the [action] had been [taken] in pursuance of its consent . . . ." *Dames & Moore v Regan*, 453 U.S. 654, 686 (1981) (quotation omitted). Here, the Department's assertions that the Secretary's general authority—either to issue passports or, alternatively, to prescribe a generic passport

---

[6] Though not addressed in Defendants' reply brief, Fellows' extra-record statement that there are two checkboxes on the form (male and female) and that an applicant cannot write a word for the sex field misses the point. *See* Fellows Decl. ¶¶ 6-10. The challenged discriminatory male-or-female-only policy itself, as reflected by the forms, cannot be its own independent justification for denying Zzyym a passport.

application form—provides adequate notice to Congress of the power asserted by the Secretary to deny Zzyym a passport are unavailing. Defs.' Reply 11 (citing 22 U.S.C. § 211a, Exec. Order 11295, and 22 C.F.R. § 51.20(a)). These "generally applicable rules" (a phrase used by the Department) should cause this Court to have "serious doubts as to whether there [is] in reality any definite policy in which Congress could have acquiesced." *Haig v. Agee*, 453 U.S. 280, 303 (1981).

The Secretary has not previously openly asserted a power to deny a passport based solely on the applicant's personal characteristics. Unlike *Agee*, where the Court described three specific examples of the Secretary openly denying passports in situations involving the substantial likelihood of serious damage to national security or foreign policy of the United States, the Department here cites no instances where it has openly asserted, much less enforced, the purported power to deny a passport to an applicant who is neither male nor female. The passport application form itself, which includes binary-only gender options alongside dozens of other data points, cannot constitute a practice sufficiently substantial to put Congress on notice that the Secretary would deny a passport to Zzyym. *See Kent v. Dulles*, 357 U.S. 116, 129 (1958) ("We hesitate to find in this broad generalized power an authority to trench so heavily on the rights of the citizen."). The seemingly innocuous administrative form that has never before been challenged in this context (and is thus incapable of being portrayed as necessarily having drawn the attention of Congress) is insufficient to meet the test articulated in *Kent*, *Zemel*, and *Haig*. The Department has failed to establish a sufficiently substantial and consistent practice that compels a conclusion that Congress has knowingly authorized the Secretary to refuse to issue a passport to Zzyym (and others like them) based not on unlawful conduct or allegiance, but solely because of gender.

8

III.  **THE DEPARTMENT'S MALE-OR-FEMALE GENDER MARKER POLICY FOR PASSPORTS VIOLATES THE FIFTH AMENDMENT AS APPLIED TO ZZYYM**

A.  **The Challenged Policy Is Subject to Heightened Scrutiny under Equal Protection Analysis Because It Facially Classifies Based on Gender**

The Department's policy requiring a binary-only, male-or-female gender marker on a passport is intentional gender-based discrimination. "Intentional discrimination can take several forms. When a distinction between groups of persons appears on the face of a state law or action, an intent to discriminate is presumed and no further examination of legislative purpose is required." *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012); *see also, e.g.*, *United States v. Virginia*, 518 U.S. 515, 555 (1996). Here, examining the policy on its face, there can be no doubt that the challenged policy *expressly* discriminates among applicants on the basis of gender. The passport field challenged *is* a sex field,[7] and the Department has failed to address the various ways that Zzyym has demonstrated that the male-or-female-only gender marker policy is facially discriminatory. *See* Pl.'s Op. Br. 19-22. "Because the challenged policy expressly discriminates among applicants on the basis of gender, it is subject to scrutiny under the Equal Protection Clause . . . ." *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 725 (1982). Thus, the Department's attempt to avoid heightened scrutiny by claiming the policy is not a classification

---

[7] The federal government has already recognized that binary male-or-female-only sex designations and fields do not adequately serve all genders. For example, the official comment to the final rule regarding Section 1557 of the Affordable Care Act states, "OCR has made a slight change to the definition of 'gender identity' to insert the clause 'which may be male, female, neither, or a combination of male and female.' The insertion of this clause helps clarify that those individuals with non-binary gender identities are protected under the rule." Nondiscrimination under the Patient Protection and Affordable Care Act, 81 Fed. Reg. 31,384 (May 18, 2016) (to be codified at 45 C.F.R. pt. 92), *available at* https://www.federalregister.gov/articles/2016/05/18/ 2016-11458/nondiscrimination-in-health-programs-and-activities.  Other government entities have made similar determinations. *See, e.g.*, *In the Matter of the Sex Change of Jamie Shupe*, No. 16CV13991, General J. of Sex Change (Or. Cir. Ct. June 10, 2016), *available at* https://thelawworks.wordpress.com/2016/06/10/oregon-judge-grants-sex-change-to-non-binary/ ("The sex of Jamie Shupe is hereby changed from female to non-binary.").

of groups of people based on gender is unavailing. *See* Pl.'s Op. Br. 19-20 (citing cases rejecting the Department's argument and providing hypothetical).

Even assuming that the policy is generally applicable, "bitter experience teaches that even rules of general application *can* harbor lurking discriminatory purposes." *SECSYS, LLC*, 666 F.3d at 686 ("Even generally applicable laws initially enacted with entirely proper (nondiscriminatory) purposes can themselves later become tools of intentional discrimination in the course of their enforcement."). A court may find a statute unconstitutional due to impermissible motivation even though "until recent years, many citizens had not even considered the possibility . . . ." *United States v. Windsor*, 133 S. Ct. 2675, 2689 (2013).

### B. Decisions That Infringe Upon Zzyym's Fundamental Rights and Liberty Interests Require Application of Strict Scrutiny

#### 1. The Department's Decision Denies Zzyym the Right to International Travel

The Supreme Court's long history of applying strict scrutiny in cases involving international travel cannot be summarily dismissed. The Department's suggestion that *Haig* "stated definitively that the right to travel is not a fundamental right" is patently false. Defs.' Reply 12. In fact, *Haig* confirmed the strict scrutiny standard employed in *Aptheker v. Secretary of State*, 378 U.S. 500 (1964). *See* Pl.'s Op. Br. 25 (describing the Court's application of strict scrutiny in *Haig* with familiar fundamental rights language). Additionally, the Department's reliance upon dicta found in *Hutchins v. Dist. of Columbia*, where a fractured en banc court discussed the level of scrutiny applicable to intrastate—not international—travel, is misplaced. 188 F.3d 531 (D.C. Cir. 1999). Several judges in *Hutchins* declined to join the section cited by the Department that included a passing reference international travel, while others joined a concurring opinion observing that "the right to cross national borders" is "'fundamental' under established doctrine." *Id.* at 560 (Rogers, J., concurring in part and dissenting in part); *accord*

*Omar v. Kerry*, No. 15-cv-01760-JSC, 2016 WL 617449, at *8 (N.D. Cal. Feb. 16, 2016) ("The Court is thus persuaded that a citizen's right to [international] travel is a fundamental right and that revocation of a passport . . . significantly infringes upon that right.").

The Department's reliance on *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431 (9th Cir 1996) is similarly flawed, as the Ninth Circuit has never decided the level of scrutiny applicable to the right to international travel. *See, e.g.*, *Eunique v. Powell*, 302 F.3d 971 (9th Cir. 2002) (debating the levels of scrutiny for international travel). Nevertheless, recent cases by the Supreme Court reaffirm that the right to international travel "remains a firmly entrenched right of an American citizen." *Omar*, 2016 WL 617449, at *8 (citing *Vartelas v. Holder*, 132 S. Ct. 1479, 1488 (2012)) ("Loss of the ability to travel abroad is itself a harsh penalty . . . ."); *Nguyen v. INS*, 533 U.S. 53, 67 (2001) (describing the "absolute right [of a citizen] to enter [the United States'] borders")). Where, as here, an applicant is not involved in unlawful conduct, a court should apply strict scrutiny to evaluate whether the government may infringe on individual freedom so "deeply engrained" in our history. *Aptheker,* 378 U.S. at 521 (Douglas, J., concurring) ("We cannot exercise and enjoy citizenship in world perspective without the right to travel abroad[.]")

In the alternative, the Department suggests that it did not deny Zzyym the ability to travel because Zzyym should have chosen to be untruthful on the passport application by selecting either "M" or "F," notwithstanding the risk of criminal penalty. *See* Defs.' Reply 13. Astoundingly, the Department posits that it would be permissible for an individual to knowingly violate federal law for making a false statement on a passport application when "the government has not threatened to prosecute." *Id*. at 13 n.5. As evident in the administrative record, uncontested statements by Veterans Administration physicians under the penalty of perjury confirm that Zzyym is neither male nor female. AR00031, AR00033. Regardless of assurances

Zzyym might hypothetically obtain from a policy employee at the State Department, Fellows cannot bind U.S. prosecutors. *See United States v. Lilly*, 810 F.3d 1205, 1213-15 (10th Cir. 2016). Furthermore, Zzyym should not have to lie in order to receive a passport.

> ### 2.    *Requiring Zzyym to Choose an Inaccurate Gender Marker Infringes Upon the Fundamental Right to Individual Dignity and Autonomy*

The Department fails to do more than repeat its own incorrect, narrow formulation of the interest at stake in this matter. Zzyym does not assert a fundamental right to a passport displaying their sex as "X." *See* Pl.'s Op. Br. 22-23. Rather, like any other citizen seeking to travel internationally, Zzyym seeks an accurate passport. Requiring Zzyym to select an inaccurate marker would be a government mandate that Zzyym identify themselves incorrectly, and it impedes Zzyym's ability to live freely and openly as themself (as it would if, for example, a woman were required to carry a passport with a male gender marker). The Department's erasure of people who are neither male nor female deprives Zzyym of their fundamental liberty interest to individual dignity and autonomy. *See id.* at 25-27.

### C.    The Department's Actions Cannot Survive Rational Basis Review, Let Alone Heightened Scrutiny.

The Department proffers two post-hoc rationalizations which do not appear anywhere in the administrative record.[8] Specifically, the Department asserts an interest in (1) "ensuring the information is accurate and verifiable" and (2) "linking passport application holders to relevant law enforcement information." Defs.' Reply 16, 18. The decision to deny Zzyym an accurate passport bears all the hallmarks of discrimination and cannot survive even rational basis analysis.

---

[8] As explained above in Part I, the declaration proffered by the Department is outside the administrative record and may not be considered. Nevertheless, Zzyym will address such post-hoc justifications and extra-record material without waiving their objections.

First, there can be no rational connection between the Department's insistence that Zzyym obtain an *inaccurate* passport (with either a male or female gender marker) and the government's interest in maintaining the accuracy of the passport. For applicants seeking a different gender marker, the regulations and FAM set forth an existing protocol for maintaining integrity of the passport in a verifiable manner. *See* 22 C.F.R. § 51.23(b), 7 FAM § 1320(2)(c) App. M; AR00021; *see also* Pl.'s Op. Br. 13-14 (describing process set forth by Department to establish identity, including primary ID in old gender and third-party affidavits). The protocol applies to those people who need to establish identity, but have inconsistent gender markers across federal, state, or local identification documents. With this mechanism already in place to ensure that Zzyym is in fact Zzyym, there is no reason for the Department to "upend the current system" or "to depend on less reliable" identity documents. Defs.' Reply 18. If accuracy is indeed important to the Department, it defies logic that the Department would insist that Zzyym just "pick one"—especially because, as the Department acknowledges, intersex people exist. *See* 7 FAM 1350(a) App. M ("a person born . . . [who] does not fit typical definitions of male or female"). Moreover, as to foreign nationals who already bear the "X" gender marker on their passports (and are permitted to enter and exit this country), the government tells such individuals to "choose the option, male or female, that 'they feel most comfortable with.'" Defs.' Reply 13 n.5. Allowing an individual to freely choose either of the markers shows that the goal of maintaining accuracy and integrity is not a rational explanation for requiring Zzyym to be untruthful about their own gender.

Second, justifying the preclusion of a third gender marker on a U.S. passport based on an interest in linking passport applicants to relevant law enforcement databases does not pass constitutional muster. Gender-marker discrepancies already exist between law-enforcement

databases and passport applicants. The lack of uniformity is expressly noted by the Department at 7 FAM § 1320(a)(2) App. M, stating "state law and foreign laws vary as to whether a driver's license or other State government form of ID document may be issued reflecting a gender change." Thus, transgender people who apply for and receive passports with an accurate gender marker consistent with their gender identity, may (and often do) have an inaccurate *different* gender marker on their state ID. Therefore, depending on the law-enforcement database and whether a transgender applicant's other documents have also been corrected, a transgender person's gender marker in law enforcement databases could display either "M" or "F." The same would be true for Zzyym, who has held ID documents marked with male and female genders. Moreover, the "linking" concept asserted by the Department makes little sense when the Department tells Zzyym to "pick one," which may or may not correspond to the marker in underlying law enforcement databases. Given the common use of "wildcard" characters in computer data systems to ensure comprehensive searches are accomplished, the fact that the Department uses multiple items of personally identifiable information, and the existing protocols for when a foreign national with an "X" seeks to enter the country, the Department's justification of linking to law enforcement databases cannot justify the line drawn by the policy.

Although not addressed in briefing, Fellows suggests that "the Department's introduction of a third gender marker could lead to inconvenience and uncertainty if U.S. citizens face difficulty entering tourist and business destinations abroad in countries that do not recognize a third gender marker." *See* Fellows Decl. ¶ 17. It would be unprecedented to preclude Zzyym from traveling anywhere in the world, including countries that do recognize a third gender marker on passports, out of concern that Zzyym *might be* inconvenienced in certain countries. Such a purported justification would obviously be rejected if imposed on other Americans. By

way of illustration, LGBT people still face criminal prosecution or even death in many countries throughout the world. Yet it would be absurd and illegal for the Department to use this fact to preclude all LGBT citizens from any international travel. Rather, LGBT travelers are free to make their own choices about whether or not to travel to those locations, which may be based in part upon alerts issued by the Department.[9] The Department's assertion is not a reasoned basis to deny Zzyym an accurate passport.

## CONCLUSION

For all the reasons set forth in Plaintiff's Opening Brief and those state above, this Court should hold unlawful and set aside the Department's decision to deny Zzyym's passport application based on personal characteristics and declare that the Department violated the APA and infringed upon Zzyym's constitutional rights. This Court should further enjoin the Department from relying on its binary-only gender marker policy to withhold U.S. passports from Zzyym and others who are similarly situated.

As this action raises significant Constitutional issues, Plaintiff believes that oral argument would assist the Court in the resolution of this case. *See* Joint Case Management Plan For Pet. For Review of Agency Action 7.

---

[9] *See* LGBTI Travel Information, U.S. Dep't of State, Bureau of Consular Affairs, https://travel.state.gov/content/passports/en/go/lgbt.html (last visited June 15, 2016).

Respectfully submitted this 15th day of June, 2016.

_s/ Paul D. Castillo_____

Michael A. Ponto
Emily E. Chow
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: (612) 766-7000
Fax: (612) 766-1600
michael.ponto@faegrebd.com
emily.chow@faegrebd.com

Thomas G. Hackney
FAEGRE BAKER DANIELS LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203-4532
Phone: (303) 607-3500
Fax: (303) 607-3600
tom.hackney@faegrebd.com

Jessica Kunevicius
Kristin Petri
THE LAW OFFICE OF JESSICA KUNEVICIUS, LLC
695 South Colorado Blvd., Suite 480
Denver, CO 80246
Phone: (303) 459-2806
Fax: (303) 722-7281
jessica@denverimmigrationlaw.com
kristin@denverimmigrationlaw.com

Paul D. Castillo
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219-6722
Phone: (214) 219-8585
Fax: (214) 219-4455
pcastillo@lambdalegal.org

Hayley Gorenberg
M. Dru Levasseur
Demoya R. Gordon
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 1005
Phone: (212) 809-8585
Fax: (212) 809-0055
hgorenberg@lambdalegal.org
dlevasseur@lambdalegal.org
dgordon@lambdalegal.org

Camilla B. Taylor
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
105 West Adams Street, Suite 2600
Chicago, IL 60603-6256
Phone: (312) 663-4413
Fax: (312) 663-4307
ctaylor@lambdalegal.org

*Attorneys for Plaintiff Dana Alix Zzyym*

US.106792222.04

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June, 2016, I electronically filed the above and foregoing PLAINTIFF ZZYYM'S REPLY BRIEF IN SUPPORT OF DECLARATORY, INJUNCTIVE, AND OTHER RELIEF with the Court using the CM/ECF system and served the following via CM/ECF:

- Ryan Bradley Parker
  ryan.parker@usdoj.gov

*s/ Paul D. Castillo*
Paul D. Castillo