

**United States Department of State**

*Washington, D.C. 20520*

May 1, 2017

### Exhibit 18 – History of the Designation of Sex in U.S. Passports

***Origin and Development of Sex Designation on Passports***

In adherence to foreign passport requirements, the physical description of a passport bearer was introduced in U.S. passports issued abroad in the late eighteenth century. *See* The United States Passport: Past, Present, Future; U.S. Passport Office, Department of State (Washington, DC: GPO, 1976), at 207. By the early nineteenth century, all U.S. passports included in the body of the passport a description of the person of the bearer, including name, age, height, complexion, hair, eyes, distinguishing physical marks or features, forehead, nose, mouth, chin, and face. *Id.*, at 61, 207; The American Passport: Its History and a Digest of Laws, Rulings, and Regulations Governing its Issuance by the Department of State; Hunt, Gaillard (Washington, DC: GPO, 1898) at 46, 61, 78-79. In 1914, the Department introduced a requirement that a passport include a photograph of the bearer. *See* The United States Passport: Past, Present, Future; at 63, 207. However, the physical description of the bearer initially remained, to help officials establish that the photograph had not been altered or substituted. *See* The Passport in America: The History of a Document; Robertson, Craig (New York: Oxford Univ. Press, 2010), at 93. While the photograph requirement continued and has been standardized, the physical description elements were eventually removed from U.S. passports. Applicants are still required to provide height, hair color, and eye color in their passport applications.

Although the text of early U.S. passports indicated sex in the use of masculine and feminine pronouns and the word "wife," prior to 1977 U.S. passports did not include a specific designation of the applicant's sex. After the passport text was shortened and made uniform, the sex of an individual issued a U.S. passport became evident only from the individual's name or photograph. In 1971, the Department issued an instruction stating that a name change suggestive of a change of sex was allowable to the same extent as any other name change, but requiring that "photographs shall depict the sex of the applicant as indicated on the citizenship evidence," unless the applicant provided a physician's statement confirming that the applicant had undergone a medical change of sex (*i.e.*, surgery). *See* Passport Instruction 2510.9C, Appendix A, General Guideline No. 10, "Use of Names Indicating a Change of Sex" (May 4, 1971) (Exh. 19).

To address border security concerns which arose after the introduction of high-volume aircraft and the resulting increase in international air travel, a panel of passport experts was commissioned in 1968 under the auspices of the International Civil Aviation Organization (ICAO). The group consisted of representatives from Australia, Canada, France, Germany, India, Kenya, Sweden, and the United States. Between 1969 and 1973, the group agreed to suggest standards for passport data elements, both for existing, conventional travel documents and for the machine-readable passports then in development. In January 1972, the group agreed to suggest basic standard data elements for passports, including, for the first time, the bearer's sex. This data element was recommended because the experts recognized that, in light of the

increasing number of international air travelers, and the rise in the early 1970s of unisex attire and hairstyles, photographs had become a less reliable means for ascertaining a traveler's sex. In a 1974 report, an ICAO panel confirmed that a holder's sex should be included on passports because names did not always provide a ready indication, and appearances from the passport photograph could be misleading. *See* "Fourth Report of the Panel on Passport Cards," ICAO Air Transport Committee (Sept. 13, 1974) (Exh. 47), at ¶ 51.

In conformity with this nascent "international standard," in 1976 the Department added a field labeled "SEX (M-F)" to U.S. passport application forms. *See* Passport Application, Form DS-82 (1975 and 1976) (Exh. 20). During 1976 and 1977, the Department phased-in the collection of sex data on passport application forms used domestically and at embassies and consulates abroad. *See* "Citizenship and Passport Matters," STATE 267726 (Nov. 8, 1977) (Exh. 21); "Revision of Passport Application Form and Passport Amendment and Extension Form," STATE 305744 (Dec. 23, 1977) (Exh. 22). Since 1978, Department policy has required every passport applicant to indicate their sex as "M" for male or "F" for female in their application. Similarly, the Department requires applicants to provide evidence of identity and citizenship consistent with such designation, with an exception, until 2010, only for medical (*i.e.*, surgical) changes of sex. *See* Passport Instruction 2510.9C, Appendix A, General Guideline No. 10, "Use of Names Indicating a Change of Sex" (May 4, 1971) (Exh. 19).

A new passport book introduced in 1977 was the first to include the sex of the holder in the printed area. In 1981, when the Department became the first country to introduce machine-readable passports, the designation of sex was also included in the machine-readable zone as either an "F" for female or an "M" for male, in conformity with the technical specifications of ICAO. *See* ICAO Document 9303, "A Passport with Machine Readable Capability," 1st Edition (1980) (Exh. 48). At the time, there was no consideration given to permitting the use of a third sex marker, inasmuch as ICAO's specifications did not permit one.

### *Introduction of Policy on Reflecting Change of Sex in Passports*

In 1992, the Department issued new procedures for handling requests for passports to individuals who had undergone a change in sex. These procedures emphasized the need for complete and detailed documentation regarding the change, as well as the need for accurate identification photographs reflecting the applicant's current appearance. *See* Passport Bulletin 92-22, "Procedures for Handling Requests for a Change of Gender in Passports" (Oct. 1, 1992) (Exh. 23); "Change of Gender in Passports," STATE 090654 (Mar. 26, 1993) (Exh. 24). These procedures still required evidence of surgical reassignment for issuance of a full-validity passport in the new sex, but provided for issuance of a one-year, limited-validity passport to an individual who was "immediately *en route*" to reassignment surgery and who submitted sufficient evidence of their "past medical history relating to the gender disorder" and their upcoming surgery. *See* Passport Bulletin 92-22, "Procedures for Handling Requests for a Change of Gender in Passports" (Oct. 1, 1992) (Exh. 23). The Department also changed its policy regarding photographs: they were required to "agree with the submitted identification evidence" and to "reflect the applicant's current and true appearance," but were no longer required to conform to a preconceived "male" or "female" appearance. *Id.*

Zzyym v. Tillerson - AR 0088

## *2010 Revision of Policy on Changes of Sex*

On June 10, 2010, the Department published new policy guidance that eliminated the requirement of surgical reassignment for issuance of a passport in a new sex. *See* CA/OCS Action Memo for A/S Jacobs (May 14, 2010) (Exh. 25); Media Note (June 9, 2010) (Exh. 26); 7 FAM 1300 Appendix M, "Gender Change" (June 10, 2010) (Exh. 27). The new policy, published in the Department's Foreign Affairs Manual (FAM) at 7 FAM 1300 Appendix M, "Gender Change," provided for issuance of a full-validity passport in the new sex upon presentation of a signed certification from an attending medical physician that the applicant had had "appropriate clinical treatment for gender transition" (*i.e.*, transition to a new sex of male or female). In recognition that various treatment options were accepted by the medical community, including not only surgery, but also hormone therapy, psychotherapy, and combinations of these, and that the choice among these treatment options was properly a medical decision to be made between patient and physician, the new policy did not attempt to define "appropriate clinical treatment." The guidance also provided for issuance of a two-year, limited-validity passport in the new sex for applicants who are certified by a physician as being in early stages of gender transition, which can be replaced with a full-validity passport without further fee upon certification that the applicant has completed appropriate clinical treatment for transition. *See* 7 FAM 1320 Appendix M b(2)-b(4) (June 10, 2010) (Exh. 27). The Department's new policy was based on standards and recommendations of the World Professional Association for Transgender Health (WPATH), recognized as the authority in this field by the American Medical Association (AMA). *See* Media Note (June 9, 2010) (Exh. 26); 7 FAM 1310 Appendix M b (June 10, 2010) (Exh. 27).

Several months after the publication of this policy, the Department received a letter from several non-governmental organizations (NGOs) recommending certain changes and clarifications to the policy. *See* E-mail of Mara Keisling, Executive Director, National Center for Transgender Equality, on behalf of Council for Global Equality, National Center for Lesbian Rights, National Center for Transgender Equality, and National Gay & Lesbian Task Force, with Recommendations Regarding Gender- and Intersex-Related Revisions to FAM (Aug. 30, 2010) (Exh. 28). The Department accepted all but one of the NGOs' recommendations, and revised the guidance in December 2010: (i) to substitute the term "licensed physician" for the less-well-understood term "attending physician"; (ii) to allow any licensed physician to provide the required certification, eliminating language that had restricted this to certain medical specialists; (iii) to retitle the section, "Cases of Unspecified Gender," with the better-understood "Intersex Conditions," so as to facilitate its use by individuals to whom it applies; and (iv) to replace the text of that section with language provided by the NGOs, to clarify that the medical certification in such cases would reference "correction," rather than "transition." *See id.*; CA/OCS Action Memo for A/S Jacobs (Dec. 8, 2010) (Exh. 29); 7 FAM 1300 Appendix M, "Gender Change" (updated Jan. 20, 2011) (Exh. 30). The Department rejected the NGOs' recommendation that it expand the policy to accept certification from practitioners other than licensed physicians, such as nurse practitioners and chiropractors. *Id.*

Since 2010, the Department has made a handful of additional technical or procedural changes to this policy guidance. *See, e.g.*, Memorandum to Brenda S. Sprague, Deputy Assistant Secretary for Passport Services, from Harper Jean Tobin, Director of Policy, National Center for

3

Transgender Equality Action (Sept. 9, 2013) (Exh. 31); Letter to National Center for Transgender Equality from DAS Sprague (Sept. 27, 2013) (Exh. 32); CA/PPT/S Action Memo from CA/PPT/S to DAS Sprague, Passport Services, for response to National Center for Transgender Equality (Dec. 30, 2013) (Exh. 33); Passport Services Letter to National Center for Transgender Equality (Dec. 30, 2013) (Exh. 34); 7 FAM 1300 Appendix M, "Gender Change" (updated Dec. 12, 2014) (Exh. 35). The Department's guidance was last revised in 2016. *See* 7 FAM 1300 Appendix M, "Gender Change" (updated Mar. 31, 2016) (Exh. 36).

In a March 2016 Memo to the Field, CA/PPT/S reminded passport adjudicators that a court-ordered sex change is not sufficient evidence for issuance of a passport in the new sex, and directed them to require the applicant to also submit the medical certification specified in the policy guidance. *See* CA/PPT/S Memorandum, "Court-Ordered Gender Change Not Acceptable" (Mar. 1, 2016) (Exh. 37).

PASSPORT OFFICE

2510.9C
PT/L:JLR:PT/D:APH:aph
May 4, 1971

\* INSTRUCTION 2510.9C

To     : All Employees, Domestic Operations Division
         All Supervisors – Washington

From:  Frances G. Knight, Director

Subj:  Names to be Written in Passports

1. **Purpose.** This Instruction clarifies the policy and procedures for writing names in passports not only when the applicant claims the use of more than one name or a name which differs from that which is shown in the documents submitted, but also when the names which are shown in two places on the application and on the photographs are not in agreement.

2. **Background.** A large number of applicants have assumed new names without the benefit of legal action. The increasing use of names other than the legal name (name contained on citizenship evidence) and the exceptions which have arisen to using the legal name requires a restatement of the policies and procedures to be followed in determining the name to be written in the passport.

3. **Policy.** It is the general policy of the Passport Office to write only one full name of the passport bearer in a passport. The use of two or more full names should be avoided, if at all possible. The name which is written, however, should be the one which best identifies the passport bearer for all purposes. Normally, the name to be written in the passport shall be the name appearing on the evidence of citizenship submitted with the passport application. In the case of married women, the name shall be the woman's given name or names, middle name or maiden name, and husband's surname.

4. **Exceptions.** The following are exceptions to the policy stated in Section three of this Instruction:

    a. **Change of Name by Court Order.** When an applicant submits a court order which shows a judicial change of name from the one appearing on the evidence of citizenship, the name shall be written as shown in the court order.

    b. **Change of Name Without Court Order.**

        (1) **Use of Adoptive Names Only.** Passports shall be issued in the adoptive name only when the applicant claims that his name was changed

\* Entire Instruction Revised

Zzyym v. Tillerson - AR 0091

2510.9C
5/4/71                                    - 2 -

from that shown on his citizenship evidence or other supporting documents and submits the following:

      (a) _Affidavits_ executed by two or more persons attesting that both names refer to the applicant, that they have known the applicant by the adoptive name for over ten years, that the applicant uses the adoptive name exclusively for all purposes and is known by the adoptive name in his home community;

      (b) _In addition_, the affidavits must be supported by documentary evidence such as school records, military records, employment records, tax returns, or other public records. A passport issued more than ten years ago with a "known as" name is not sufficient documentary evidence unless it is accompanied by supporting documents which show exclusive use of the adoptive name.

      (c) _Identification_. The applicant must be able to submit in his adoptive name only acceptable documents of identity as shown in Instruction 3120.2B (Identification of Applicant).

    (2) _Use of "Known As" Names_. Any applicant requesting the issuance of a passport in a name other than the name appearing on the citizenship evidence or a name not supported by evidence meeting the criteria in Section 4b(1) above, may have that name included in the passport as a "known as" name along with the legal name, _provided_ the applicant submits documentary evidence that the "known as" name has been used for more than two years. Documentary evidence may be in the form of affidavits from two or more persons attesting that they have known the applicant by both names.

5. _Additional Evidence_. The evidence requirement set out in Section 4 of this Instruction is the minimum evidence required by the Passport Office. If the Agent executing the application or the Examiner adjudicating the application is not satisfied as to the bona fides of each particular case, he may require additional evidence.

6. _Agent/Examiner Responsibility_. Agents and Examiners are responsible for the proper selection and sequence of names to be written in the passport. The wishes of the applicant shall be considered in making the selection. The name on line one of the application should be _written in full_ and in normal sequence: first name, middle name, and surname. (See Attachments B and C for exceptions in writing Chinese and Spanish names.) Initials for the given name and surname may not be used unless the citizenship evidence _AND_ evidence of identity contain initials only. The Examiner shall verify that line one properly reflects the name which best identifies the applicant in accordance with the policy and procedures set forth in this Instruction and that the signature appearing on page two, as well as on the photographs, is not in conflict with line one. _NOTE_: The name which is shown on line one need not be identical to the signature appearing on page two and on the photographs, but the three _must_ be in agreement. For example, if Mary Louise Martin is shown on line one, the signature on the photograph and on page two is in agreement if it is shown as Mary L. Martin, M. L. Martin, Mary Martin, or Louise Martin. It is not in agreement if it is shown as Mary M. Martin, Margaret Martin, or Louise M. Martin. When the names are not in agreement, the Examiner shall determine which is the correct name to be written in the passport and shall change line one accordingly.

Zzyym v. Tillerson - AR 0092

2510.9C
5/4/71

7. <u>Procedures for Processing Names by Examiners</u>. After determining the proper name(s) to be written in the passport, the Examiner shall: (1) Line out extraneous information or punctuation (i.e., initials of religious orders, professional titles, nicknames, parentheses, "NMI", etc.); (2) Change Roman numeral designations to Arabic ordinals and circle (i.e., change II, III, etc. to 2nd, 3rd, etc. and circle); (3) Add or circle "Jr." or "Sr." when written as part of the name or signature; (4) Draw a vertical line between parts of multiple-part names to indicate they are to be separated when written (i.e., Le Roy, Mc Mahon, Van den Berg, del la Rosa, etc.); (5) Overscore hyphens or apostrophes when they constitute a necessary part of the name (i.e., Ann-Marie, Taylor-Smith, O'Boyle, etc.); (6) Add, or clarify the spelling of, any name to be written in the passport. When it is determined that two names are to be written in the passport, the Examiner shall write "K-A" before the second name, e.g. Stuart Jones K-A Lucas Levine.

8. <u>Clearance</u>. All names and aliases which are shown on the passport application and on the accompanying documents, <u>regardless of whether or not these names will appear in the passport</u>, shall be cleared through the computer. Minor variations in the given name such as transpositions need not be specifically cleared. However, all changes or variations in the surname <u>must</u> be cleared.

    a. <u>Automatic Name Search Variations</u>. The computer will search a name in the following manner:

        "1 John Andrew Doe/July 4, 1924"

        John Andrew Doe
        John Doe
        Andrew Doe
        J. A. Doe
        J. Doe
        A. Doe

    b. <u>Adjudicative Action</u>. The Examiner shall record in or near the evidence block all names shown on the accompanying documents which are in addition to those shown on line one and in Section B of the application. A green flag or completed DS-1373, "Passport Agent's Check List", shall alert Processing personnel to the need to clear additional names.

    c. <u>Inclusions</u>. The given name which is written in the passport is automatically cleared through the computer. The Examiner should request clearance of additional names when necessary. (See "clearance" under appropriate items in the attached Guidelines.)

9. <u>Amendment or Correction of Name in Passport</u>.

    a. <u>Amendment</u>. A request to show a legal or other change in name, or to include a person's name, shall be cleared through the computer.

Zzyym v. Tillerson - AR 0093

2510.9C
5/4/71                                      - 4 -

    b. Correction of Name. When a passport is returned because of an error in the name, the corrected name shall be cleared by the computer. Where applicable, the Examiner shall request verification of the name as it appeared on the original application.

10. Guidelines. The attachments provide guidelines to assist Examiners in following the policy of the Passport Office in using the correct names of the passport bearers.

    a. Attachment A: General Guidelines.

    b. Attachment B: Guidelines - Chinese Names

    c. Attachment C: Guidelines - Spanish Names

11. Directives Canceled. This Instruction cancels Instructions 2510.9B dated October 7, 1964 and 2500.6A dated November 24, 1969.

12. Effective Date. Immediately.

Attachments:
As stated

Attachment A
2510.9C
5/4/71

- 1 -

GENERAL GUIDELINES

1. <u>Minor Changes in Names on Application and on Citizenship Evidence</u>. When the name written on the application differs only slightly from the name shown on the citizenship evidence, the name as shown on the application shall be written in the passport. The Examiner shall note on the application near the evidence block, the name as shown on the evidence. Acceptable documents of identity shall be submitted to support the use of the name as shown on the application. Frequent examples are: (a) <u>Phonetic Changes</u>: An applicant may change the spelling of his name while retaining the basic phonetic sound, e.g. Jo Ann to Joanne; Smyth to Smith. (b) <u>Transpositions</u>: An applicant may rearrange the sequence of his given names shown on the citizenship evidence, e.g. John Joseph to Joseph John. (c) <u>Additional Given Name</u>: An applicant may adopt an additional given name while retaining the names shown on the citizenship evidence, e.g. John Johnson to John Robert Johnson. (d) <u>Dropping a Given Name</u>: An applicant may drop the use of a given name where more than one given name is shown on the citizenship evidence. Married women will frequently drop a first or middle name after assuming the husband's surname, e.g. Mary Jane Louise Smith to Mary Louise Smith; Sue Lynn Jones to Lynn Jones Henderson.

<u>CLEARANCE</u>: All names shown on the application and documents must be cleared. The Examiner need not request specific clearance for minor variations in the given name such as transpositions. All changes in the surname must be cleared.

2. <u>Given Name not Recorded or Name Recorded Incorrectly at Birth</u>. When an applicant's given name was not recorded at birth or was recorded incorrectly at birth, an affidavit executed by a blood relative familiar with the facts of the birth, may be submitted with the birth record to document the use of the given name. The affidavit should set forth the facts of the birth and explain the discrepancy between the name on the birth record and the name on the application. If it is not possible to secure an affidavit from a blood relative, the applicant should submit other supporting documentation in accordance with Instruction 3120.3A (Acceptable Evidence of Acquisition of U.S. Citizenship).

<u>CLEARANCE</u>: All names shown on the application and documents must be cleared.

3. <u>Change of Name During Minority</u>. When an applicant's given name was changed during childhood from that shown on the birth record, affidavits from two persons who can attest that both names refer to the applicant, and who state the basis of their knowledge regarding the applicant <u>and</u> the change of name, may be submitted to document the use of the given name. NOTE: Only one affidavit need be submitted if it is executed by a blood relative. In instances where affidavits are not obtainable and where the applicant has been known in the community by his adoptive name only, supporting documentation in accordance with

Zzyym v. Tillerson - AR 0095

Attachment A
2510.9C
5/4/71                                      - 2 -

Instruction 3120.3A (Acceptable Evidence of Acquisition of U.S. Citizenship) should be submitted.

CLEARANCE: All names shown on the application and documents must be cleared.

4. **Foreign Names.** Applications received from a family (usually Slavic) which show different spellings of the surname for the male (Rukowski) and female (Rukowska) members should be transcribed as signed by the applicant. Applicants with foreign names will often change (translate) their given name to the English equivalent without the benefit of a court order. Such translations are to be considered minor changes and may be documented by the submission of acceptable documents of identity in the English equivalent name. Example: Giuseppe to Joseph. The Examiner should be guided by the booklet entitled "Foreign Version of English Names" (M-131) which is published by the Immigration and Naturalization Service of the Department of Justice. The Examiner shall note in the evidence block the name as it appears on the citizenship evidence. An applicant whose foreign given name does not have an English equivalent and who has assumed an "English" name during minority may submit evidence as stated in Section 3 of these guidelines. Example: Appollonia to Arlene.

CLEARANCE: Foreign names and their English equivalents (Except minor variations in given names such as Maria to Mary, Rosa to Rose) and all variations in the spelling of surnames, that are shown on the application and documents must be cleared.

5. **Professional Names.** In many instances an individual will assume an adopted name for professional reasons but will retain his legal name for other purposes. The applicant may have his "known as" name included in his passport if he is able to submit evidence in accordance with Section 4b(2) of this Instruction. Frequent examples are: (a) Individual assumes a shortened version of his legal name: Alexander Goldman K-A Al Gold. (b) Individual adopts her maiden name as her professional name: Mary Jane Simpson K-A Mary Martin. (c) Individual adopts a completely different name as his professional name: George Alan Peterson K-A Aloysius P. Gartenbrau.

CLEARANCE: All names including "known as" names that are shown on the application and documents must be cleared.

6. **Religious Names.** If only the civil name appears on the application, that name only shall be written in the passport even though the photograph shows the applicant in religious attire. If the religious title "Sister", "Mother", "Reverend", "Brother", or "Father" precedes the full civil name on line one of the application, the Examiner shall line through the title to show the passport is to be written in the civil name only. When the civil and religious name or the religious name only is shown on line one, the passport shall be written in both the civil and religious names. Examples: if line one shows Sister Mary Eileen

Zzyym v. Tillerson - AR 0096