## 7 FAM 1380 APPENDIX M QUESTIONS

*(CT:CON-653; 03-31-2016)*

a. Passport agencies and centers must contact AskPPTAdjudication@state.gov for specific guidance.

b. U.S. embassies and consulates must contact Ask-OCS-L@state.gov for specific guidance.

## 7 FAM 1390 APPENDIX M UNASSIGNED

## 7 FAM 1300 APPENDIX M EXHIBIT 1
## MODEL LETTER FOR LICENSED PHYSICIAN CERTIFYING TO THE APPLICANT'S GENDER CHANGE/TRANSITION

*(CT:CON-653; 03-31-2016)*

**Licensed Physician's Letterhead**
*(Physician's Address and Telephone Number)*

I, (physician's full name), (physician's medical license or certificate number), (issuing U.S. State/Foreign Country of medical license/certificate), am the physician of (name of patient), with whom I have a doctor/patient relationship and whom I have treated (or with whom I have a doctor/patient relationship and whose medical history I have reviewed and evaluated).

(Name of patient) has had appropriate clinical treatment for gender change to the new gender (specify new gender male or female).

Or

(Name of patient) is in the process of gender transition to the new gender (specify new gender male or female). **(NOTE TO PHYSICIAN ONLY:** Use this sentence only when the patient has just begun or is in the early stages of his or her gender transition.)

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

Signature of Physician

Typed Name of Physician

Date

Zzyym v. Tillerson – AR 0352

**Appendix E** # Real ID and the State's Authority to Change the Gender Designation on a Driver's License or Identification Card

SDLAs in the United States often have questions about their legal authority to set an appropriate policy for changing gender designations. This became evident with the passage of the REAL ID Act and subsequent publication of implementing regulations (federal) published by the Department of Homeland Security (DHS) in 2008.

Jurisdictional concerns were addressed by DHS during the public comment period for the rule when DHS explicitly stated in response to comments from concerned states that, "DHS will leave the determination of gender up to the States since different States have different requirements concerning when, and under what circumstances, a transgendered [sic] individual should be identified as another gender." Additionally, in listing what needs to be on the face of the license, the regulations state that the "Gender (as determined by the State) must be displayed."

Thus, although the REAL ID Act requires states to continue listing "gender" on licenses, states are free to continue to set their own regulations and procedures in this area.

## (*FINAL RULE*)
### § 37.17 Requirements for the surface of the driver's license or identification card.

To be accepted by a Federal agency for official purposes, REAL ID driver's licenses and identification cards must include on the front of the card (unless otherwise specified below) the following information:

a. Full legal name. Except as permitted in § 37.11(c) (2), the name on the face of the license or card must be the same as the name on the source document presented by the applicant to establish identity. Where the individual has only one name, that name should be entered in the last name or family name field, and the first and middle name fields should be left blank. Place holders such as NFN, NMN, and NA should not be used.

b. Date of birth.

c. Gender, as determined by the State.

d. Unique Driver's license or identification card number. This cannot be the individual's SSN, and must be unique across driver's license or identification cards within the State.

e. Full facial digital photograph. A full facial photograph must be taken pursuant to the standards set forth below:

(1) States shall follow specifically ISO/IEC 19794-5:2005(E) Information technology—Biometric Data Interchange Formats—Part 5: Face Image Data. The Director of the Federal Register approves this incorporation by reference in accordance with 5 U.S.C. 552(a) and 1 CFR part 51. You may obtain a copy of these incorporated standards from http://www.ansi.org, or by contacting ANSI at ANSI, 25 West 43rd Street, 4th Floor, New York, New York 10036. You may inspect a copy of the incorporated standard at the Department of Homeland Security, 1621 Kent Street, 9th Floor, Rosslyn, VA (please call 703-235-0709 to make an appointment) or at the National Archives and Records

Zzyym v. Tillerson — AR 0353

Administration (NARA). For information on the availability of material at NARA, call 202-741-6030. These standards include:

(i) Lighting shall be equally distributed on the face.

(ii) The face from crown to the base of the chin, and from ear-to-ear, shall be clearly visible and free of shadows.

(iii) Veils, scarves or headdresses must not obscure any facial features and not generate shadow. The person may not wear eyewear that obstructs the iris or pupil of the eyes and must not take any action to obstruct a photograph of their facial features.

(iv) Where possible, there must be no dark shadows in the eye-sockets due to the brow. The iris and pupil of the eyes shall be clearly visible.

(v) Care shall be taken to avoid "hot spots" (bright areas of light shining on the face).

(2) Photographs may be in black and white or color.

## EXCERPTS FROM THE FINAL RULE

### IV. Discussion of Comments

1. Minimum Driver's License or Identification Card Data Element Requirements*

2. Gender

**Comment:** Two States raised issues about how gender is determined for transgender individuals and whether gender will be included as a verifiable identifier through EVVE.

**Response:** DHS will leave the determination of gender up to the States since different States have different requirements concerning when, and under what circumstances, a transgendered individual should be identified as another gender. Data fields in EVVE are outside the scope of this rulemaking.

---

\* Federal Register Volume 73, Number 19 (Tuesday, January 29, 2008)]
[Rules and Regulations]
[Pages 5272-5340]
From the Federal Register Online via the Government Printing Office
(www.gpo.gov)
[FR Doc No: 08-140]

Zzyym v. Tillerson - AR 0354

**Appendix F**  Canadian Passport Order SI/81-86:
Schedule Additional Information

Sex [*]

4  (1)  Where the sex indicated in an application for
a passport is not the same as that set out in
that applicant's birth certificate, the applicant
may be requested to provide an explanation.

(2)  Where an application for a passport indicates
that a change of sex of the applicant has
taken place, the applicant may be requested
to submit a certificate from a medical
practitioner to substantiate the statement.

## Identity Management:  Change of sex designation for reasons other than a clerical or administrative error [†]

Historical records, such as an immigration record of
landing or a Confirmation of Permanent Residence,
will not be amended unless a clerical or administrative
error was made by Immigration, Refugees and
Citizenship Canada (IRCC). In such instances, the
officer should follow the instructions in ***Change of
sex designation due to a clerical or administrative
error***.

For other records, below are the general documents
that can be submitted to support a request to change
the sex designation on IRCC documents.

In addition to the documentary evidence listed below,
the applicant must still provide any documents
requested as part of the application instruction guide
and document checklist to establish identity.

Additional documentation may be requested during
the processing of the application. If anything further is
required, the officer should contact the applicant.

### Acceptable documents

The following are the three options for documents that
can be submitted in order to request a change of sex
designation on IRCC documents.

### Documents issued by Canadian provinces or territories

- Legal document issued by provincial or territorial
vital statistics organizations indicating a change in
sex designation

- Court order

- Amended birth certificate indicating a change in sex
designation

If the applicant appears to be eligible for the listed
documents issued by Canadian provinces or territories
and has not provided adequate reasoning for why a
provincial or territorial document was not submitted
in their statutory declaration, the application should
be returned as incomplete and the applicant should be
advised to reapply with the required documentation.
See the section on the statutory declaration to request
a change of sex designation for acceptable reasons.

---

[*]  "Canadian Passport Order SI/81-86" (February 3, 2016), http://laws-
loisjusticegcca/PDF/SI-81-86pdf, http://laws-lois.justice.gc.ca, Schedule,
Section 8 Additional Information: Sex 4(1)(2)

[†]  **"Identity Management: Change of sex designation for reasons other than
a clerical or administrative error"** (March 23, 2016), *Government of Canada,
Citizenship and Immigration Canada, Communications Branch,*
http://www.cic.gc.ca/english/resources/tools/id/designation/request.asp

Zzyym v. Tillerson – AR 0355

### Proof of sex reassignment surgery

IRCC does not require proof of any sex reassignment surgery in order to amend the sex designation on documents. However, an applicant can, in order to support their request to change their sex designation, submit proof of sex reassignment surgery (partial or full) from a medical practitioner in good standing with the regulatory body under which they practise.

### Applicants unable to obtain documents issued by Canadian provinces or territories

If the applicant is unable to obtain or is ineligible for the provincial or territorial documents listed, they must submit the following two documents in English or French:

- a statutory declaration stating that the applicant's gender identity corresponds with the requested change in sex designation and that they are living full time in the gender corresponding to the sex designation requested to appear on the IRCC document, along with a reason why a provincial or territorial document was not issued; and

- a letter from an authorized physician or psychologist following the template provided by IRCC stating that they

  - are a practising member in good standing with the appropriate regulatory body,

  - have treated or evaluated the applicant, and

  - confirm that the applicant's gender identity does not correspond with the sex designation on their IRCC document.

## Additional requirements

### Complete statutory declaration

On the statutory declaration, applicants are required to provide reasons why they are not providing an amended birth certificate or legal order issued by a provincial or territorial vital statistics organization indicating a change in sex designation.

If the applicant has not provided a reason, the officer should return the entire application as incomplete.

### Witnesses

In Canada, a statutory declaration attesting to the applicant's gender identity must be sworn in the presence of one of the following:

- a notary public;
- a commissioner of taking oaths; or
- a commissioner of taking affidavits.

Outside Canada, it must be sworn in the presence of a notary public.

### Signature of a parent or legal guardian for minors

If a change of sex designation is being requested on an application for proof of citizenship, a grant of citizenship, permanent residency or a permanent resident card for an individual under 18 years of age, both the applicant and their parent or legal guardian will need to sign and provide proof of parentage or legal guardianship, as stipulated within the appropriate jurisdiction.

### Letter from a medical professional

The requirement that a medical professional in Canada be a practising member in good standing with the respective regulatory body should be verified, where possible, on provincial or territorial regulatory bodies' public websites.

Zzyym v. Tillerson - AR 0356

Ontario

- College of Physicians and Surgeons of Ontario
- College of Psychologists of Ontario

Quebec

- Collège des médecins du Québec
- Ordre des psychologues du Québec

Nova Scotia

- College of Physicians and Surgeons of Nova Scotia
- The Nova Scotia Board of Examiners in Psychology

Newfoundland and Labrador

- College of Physicians and Surgeons of Newfoundland and Labrador
- Newfoundland and Labrador Psychology Board

Prince Edward Island

- College of Physicians and Surgeons of Prince Edward Island
- PEI Psychologists Registration Board

New Brunswick

- College of Physicians and Surgeons of New Brunswick
- College of Psychologists of New Brunswick

Manitoba

- College of Physicians and Surgeons of Manitoba
- Psychological Association of Manitoba

Saskatchewan

- College of Physicians and Surgeons of Saskatchewan
- Saskatchewan College of Psychologists

Alberta

- College of Physicians and Surgeons of Alberta
- College of Alberta Psychologists

British Columbia

- College of Physicians and Surgeons of British Columbia
- College of Psychologists of British Columbia

Yukon

- Yukon Medical Council
- No association for psychologists

Northwest Territories

- The Northwest Territories does not have a college of physicians and surgeons. Practitioners within the territory must be eligible to practise in their own home province or territory and can therefore be verified on the appropriate provincial or territorial college's website.
- Registrar of Psychologists, Department of Health and Social Services
  8th Floor, Centre Square Tower
  Government of the Northwest Territories,
  Box 1320
  Yellowknife, Northwest Territories  X1A 2L9
  Telephone: 867-920-8058

Nunavut

- Nunavut does not have a college of physicians and surgeons. Practitioners within the territory must be eligible to practise in their own home province and can therefore be verified on the appropriate provincial or territorial college's website.
- Registrar, Professional Licensing, Nunavut Health and Social Services
  Government of Nunavut, Box 390
  Kugluktuk, Nunavut  X0B 0E0
  Telephone: 867-982-7668

### Further documentary evidence required by line of business

Applicants may be required to submit further documentary evidence, according to the line of business and where the documentation originated.

Zzyym v. Tillerson – AR 0357

## Where documentary evidence originates in Canada

### Citizenship and permanent residence

For the citizenship and permanent residence lines of business, if the documentary evidence provided by the applicant originates in Canada, the applicant must submit

- a document issued by a Canadian province or territory indicating the change of sex designation, or a statutory declaration and a letter from a medical professional if they are unable to obtain a document issued by a Canadian province or territory; and

- a signed copy of a *Request for permanent resident card indicating sex different from foreign travel document* if they are applying for changes to a permanent resident card but have not amended their foreign passport or travel document. It should be noted that this document need only be signed by the applicant and does not need to be co-signed by a witness.

See *Change of sex designation for reasons other than clerical or administrative error* for more information.

### Temporary residence

For the temporary residence line of business, the sex designation indicated on the IRCC document must reflect what is indicated on the foreign passport.

If an applicant with a valid temporary resident document (such as a work permit, study permit, temporary resident permit, temporary resident visa or visitor record) has their foreign passport amended to reflect a change in sex designation, they will need to apply for a new document, along with all relevant application-related supporting documents, including a linking document for a change of sex designation.

## Where documentary evidence originates outside Canada

### Citizenship

For the citizenship line of business, if the documentary evidence provided originates outside Canada, the applicant must submit

- a document indicating a change of sex designation, such as a legal order, court order or amended birth certificate, or a statutory declaration and accompanying letter from a medical professional; and

- photo identification issued by the national, state or provincial (or equivalent) authority where they reside that indicates the amended sex designation.

If the applicant is unable to obtain the supplementary photo identification in the requested sex designation, they must provide a reason (such as fear of persecution or inability to amend foreign documents prior to amending Canadian documents). If photo identification is not provided and the applicant fails to provide an adequate reason, the application must be returned as incomplete.

For applicants residing in Canada, supplementary photo identification can include the following documents issued by a Canadian province or territory:

- a driver's license;
- a health card;
- an age of majority card;
- a social services card; or
- a senior citizen identification card.

For applicants residing outside Canada, supplementary photo identification can include

- an amended foreign passport, for dual Canadian citizens; or

- a national or state identification card.

Zzyym v. Tillerson – AR 0358

**Note:** Any copy of a foreign passport or national authoritative document should show the document type and number, issuance date and expiry date and the applicant's full name, photo and date of birth.

## Permanent residence and temporary residence

For permanent residence and temporary residence, if the documentary evidence provided originates outside Canada, the applicant's foreign passport must first be amended to indicate the amended sex designation. The applicant must provide a linking document used as evidence of a change of sex designation that will be copied or scanned and kept in the applicant's file.

For permanent residence and temporary residence lines of business, if the foreign passport has been amended to indicate the requested sex designation, the applicant must submit

- a copy of their foreign passport or other national authoritative document amended to reflect the requested sex designation; **and**

- a document indicating a change of sex designation, such as a legal order, court order or amended birth certificate, or a statutory declaration and accompanying letter from a medical professional, with an official translation if not in English or French; **and**

- photo identification issued by the national, state or provincial (or equivalent) authority where they reside that indicates the amended sex designation.

For applicants residing in Canada, supplementary photo identification can include the following documents issued by a Canadian province or territory:

- a driver's license;
- a health card;
- an age of majority card;
- a social services card; or
- a senior citizen identification card.

For applicants residing outside Canada, supplementary photo identification can include the following documents (with an official translation):

- a national or state identification card; or

- a foreign passport (in addition to the primary one being used for the application), if the applicant is a dual citizen.

**Note:** Any copy of a foreign passport or national authoritative document should show the document type and number, issuance and expiry dates and the applicant's full name, photo and date of birth.

## Recording information regarding change of sex designation requests in GCMS

In all cases, a client note must be recorded to the applicant's unique client identifier (UCI) in GCMS, and the applicant must be notified of the decision to grant or deny the change. If the applicant's request to change the sex designation on their document is granted, the amended sex designation will be recorded in the appropriate field for sex designation (typically Sex or Gender). Once the amended sex designation is recorded, the officer should ensure that the previous sex designation is indicated as the former sex designation.

If the applicant's request to change the sex designation on their document is denied, the officer should ensure that notes on the applicant's record indicate that a request was made as well as the reasons for denying it.

**Date Modified:**  2016-03-23

Zzyym v. Tillerson – AR 0359

**safe drivers
safe vehicles
secure identities
saving lives!**



**American Association of Motor Vehicle Administrators**
4401 Wilson Boulevard. Suite 700
Arlington. Virginia 22203
703.522.4200 | aamva.org

Zzyym v. Tillerson – AR 0360

# SOCIAL SECURITY ADMINISTRATION
## Application for a Social Security Card

## Applying for a Social Security Card is free!

## USE THIS APPLICATION TO:

- Apply for an original Social Security card
- Apply for a replacement Social Security card
- Change or correct information on your Social Security number record

**IMPORTANT:** You MUST provide a properly completed application and the required evidence before we can process your application. We can only accept original documents or documents certified by the custodian of the original record. Notarized copies or photocopies which have not been certified by the custodian of the record are not acceptable. We will return any documents submitted with your application. For assistance call us at 1-800-772-1213 or visit our website at **www.socialsecurity.gov**.

## Original Social Security Card

To apply for an original card, you must provide at least two documents to prove age, identity, and U.S. citizenship or current lawful, work-authorized immigration status. If you are not a U.S. citizen and do not have DHS work authorization, you must prove that you have a valid non-work reason for requesting a card. See page 2 for an explanation of acceptable documents.

NOTE: If you are age 12 or older and have never received a Social Security number, you must apply in person.

## Replacement Social Security Card

To apply for a replacement card, you must provide one document to prove your identity. If you were born outside the U.S., you must also provide documents to prove your U.S. citizenship or current, lawful, work-authorized status. See page 2 for an explanation of acceptable documents.

## Changing Information on Your Social Security Record

To change the information on your Social Security number record (i.e., a name or citizenship change, or corrected date of birth) you must provide documents to prove your identity, support the requested change, and establish the reason for the change. For example, you may provide a birth certificate to show your correct date of birth. A document supporting a name change must be recent and identify you by both your old and new names. If the name change event occurred over two years ago or if the name change document does not have enough information to prove your identity, you must also provide documents to prove your identity in your prior name and/or in some cases your new legal name. If you were born outside the U.S. you must provide a document to prove your U.S. citizenship or current lawful, work-authorized status. See page 2 for an explanation of acceptable documents.

### LIMITS ON REPLACEMENT SOCIAL SECURITY CARDS

Public Law 108-458 limits the number of replacement Social Security cards you may receive to 3 per calendar year and 10 in a lifetime. Cards issued to reflect changes to your legal name or changes to a work authorization legend do not count toward these limits. We may also grant exceptions to these limits if you provide evidence from an official source to establish that a Social Security card is required.

### IF YOU HAVE ANY QUESTIONS

If you have any questions about this form or about the evidence documents you must provide, please visit our website at www.socialsecurity.gov for additional information as well as locations of our offices and Social Security Card Centers. You may also call Social Security at 1-800-772-1213. You can also find your nearest office or Card Center in your local phone book.

Zzyym v. Tillerson - AR 0361

## EVIDENCE DOCUMENTS

The following lists are examples of the types of documents you must provide with your application and are not all inclusive. Call us at 1-800-772-1213 if you cannot provide these documents.

**IMPORTANT** : If you are completing this application on behalf of someone else, you must provide evidence that shows your authority to sign the application as well as documents to prove your identity and the identity of the person for whom you are filing the application. We can only accept original documents or documents certified by the custodian of the original record. Notarized copies or photocopies which have not been certified by the custodian of the record are not acceptable.

# Evidence of Age

In general, you must provide your birth certificate. In some situations, we may accept another document that shows your age. Some of the other documents we may accept are:

- U.S. hospital record of your birth (created at the time of birth)
- Religious record established before age five showing your age or date of birth
- Passport
- Final Adoption Decree (the adoption decree must show that the birth information was taken from the original birth certificate)

# Evidence of Identity

You must provide current, unexpired evidence of identity in your legal name. Your legal name will be shown on the Social Security card. Generally, we prefer to see documents issued in the U.S. Documents you submit to establish identity must show your legal name AND provide biographical information (your date of birth, age, or parents' names) **and/or** physical information (photograph, or physical description - height, eye and hair color, etc.). If you send a photo identity document but do not appear in person, the document must show your biographical information (e.g., your date of birth, age, or parents' names). Generally, documents without an expiration date should have been issued within the past two years for adults and within the past four years for children.

As proof of your identity, you must provide a:

- U.S. driver's license; or
- U.S. State-issued non-driver identity card; or
- U.S. passport

If you do not have one of the documents above or cannot get a replacement within 10 work days, we may accept other documents that show your legal name and biographical information, such as a U.S. military identity card, Certificate of Naturalization, employee identity card, certified copy of medical record (clinic, doctor or hospital), health insurance card, Medicaid card, or school identity card/record. For young children, we may accept medical records (clinic, doctor, or hospital) maintained by the medical provider. We may also accept a final adoption decree, or a school identity card, or other school record maintained by the school.

If you are not a U.S. citizen, we must see your current U.S. immigration document(s) and your foreign passport with biographical information or photograph.

WE CANNOT ACCEPT A BIRTH CERTIFICATE, HOSPITAL SOUVENIR BIRTH CERTIFICATE, SOCIAL SECURITY CARD STUB OR A SOCIAL SECURITY RECORD as evidence of identity.

# Evidence of U.S. Citizenship

In general, you must provide your U.S. birth certificate or U.S. Passport. Other documents you may provide are a Consular Report of Birth, Certificate of Citizenship, or Certificate of Naturalization.

# Evidence of Immigration Status

You must provide a current unexpired document issued to you by the Department of Homeland Security (DHS) showing your immigration status, such as Form I-551, I-94, or I-766. If you are an international student or exchange visitor, you may need to provide additional documents, such as Form I-20, DS-2019, or a letter authorizing employment from your school and employer (F-1) or sponsor (J-1). We CANNOT accept a receipt showing you applied for the document. If you are not authorized to work in the U.S., we can issue you a Social Security card only if you need the number for a valid non-work reason. Your card will be marked to show you cannot work and if you do work, we will notify DHS. See page 3, item 5 for more information.

Zzyym v. Tillerson - AR 0362

# HOW TO COMPLETE THIS APPLICATION

**Complete and sign this application LEGIBLY using ONLY black or blue ink on the attached or downloaded form using only 8 ½" x 11" (or A4 8.25" x 11.7") paper.**

**GENERAL:** Items on the form are self-explanatory or are discussed below. The numbers match the numbered items on the form. If you are completing this form for someone else, please complete the items as they apply to that person.

4.   Show the month, day, and full (4 digit) year of birth; for example, "1998" for year of birth.

5.   If you check "Legal Alien Not Allowed to Work" or "Other," you must provide a document from a U.S. Federal, State, or local government agency that explains why you need a Social Security number and that you meet all the requirements for the government benefit. NOTE: Most agencies do not require that you have a Social Security number. Contact us to see if your reason qualifies for a Social Security number.

6., 7. Providing race and ethnicity information is voluntary and is requested for informational and statistical purposes only. Your choice whether to answer or not does not affect decisions we make on your application. If you do provide this information, we will treat it very carefully.

9.B., 10.B. If you are applying for an original Social Security card for a child under age 18, you MUST show the parents' Social Security numbers unless the parent was never assigned a Social Security number.  If the number is not known and you cannot obtain it, check the "unknown" box.

13. If the date of birth you show in item 4 is different from the date of birth currently shown on your Social Security record, show the date of birth currently shown on your record in item 13 and provide evidence to support the date of birth shown in item 4.

16. Show an address where you can receive your card 7 to 14 days from now.

17. WHO CAN SIGN THE APPLICATION? If you are age 18 or older and are physically and mentally capable of reading and completing the application, you must sign in item 17. If you are under age 18, you may either sign yourself, or a parent or legal guardian may sign for you. If you are over age 18 and cannot sign on your own behalf, a legal guardian, parent, or close relative may generally sign for you. If you cannot sign your name, you should sign with an "X" mark and have two people sign as witnesses in the space beside the mark. Please do not alter your signature by including additional information on the signature line as this may invalidate your application. Call us if you have questions about who may sign your application.

# HOW TO SUBMIT THIS APPLICATION

In most cases, you can take or mail this signed application with your documents to any Social Security office. Any documents you mail to us will be returned to you. Go to https://secure.ssa.gov/apps6z/FOLO/fo001.jsp to find the Social Security office or Social Security Card Center that serves your area.

Zzyym v. Tillerson – AR 0363

## PROTECT YOUR SOCIAL SECURITY NUMBER AND CARD

Protect your SSN card and number from loss and identity theft. DO NOT carry your SSN card with you. Keep it in a secure location and only take it with you when you must show the card; e.g., to obtain a new job, open a new bank account, or to obtain benefits from certain U.S. agencies. Use caution in giving out your Social Security number to others, particularly during phone, mail, email and Internet requests you did not initiate.

# PRIVACY ACT STATEMENT
## Collection and Use of Personal Information

Sections 205(c) and 702 of the Social Security Act, as amended, authorize us to collect this information. The information you provide will be used to assign you a Social Security number and issue a Social Security card.

The information you furnish on this form is voluntary. However, failure to provide the requested information may prevent us from issuing you a Social Security number and card.

We rarely use the information you supply for any purpose other than for issuing a Social Security number and card. However, we may use it for the administration and integrity of Social Security programs. We may also disclose information to another person or to another agency in accordance with approved routine uses, which include but are not limited to the following:

1. To enable a third party or an agency to assist Social Security in establishing rights to Social Security benefits and/or coverage;

2. To comply with Federal laws requiring the release of information from Social Security records (e.g., to the Government Accountability Office and Department of Veterans' Affairs);

3. To make determinations for eligibility in similar health and income maintenance programs at the Federal, State, and local level; and

4. To facilitate statistical research, audit or investigative activities necessary to assure the integrity of Social Security programs.

We may also use the information you provide in computer matching programs. Matching programs compare our records with records kept by other Federal, State, or local government agencies. Information from these matching programs can be used to establish or verify a person's eligibility for Federally-funded or administered benefit programs and for repayment of payments or delinquent debts under these programs.

Complete lists of routine uses for this information are available in System of Records Notice 60-0058 (Master Files of Social Security Number (SSN) Holders and SSN Applications). The Notice, additional information regarding this form, and information regarding our systems and programs, are available on-line at www.socialsecurity.gov or at any local Social Security office.

This information collection meets the requirements of 44 U.S.C. §3507, as amended by Section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 8.5 to 9.5 minutes to read the instructions, gather the facts, and answer the questions. You may send comments on our time estimate to: SSA, 6401 Security Blvd., Baltimore, MD 21235-6401. **Send only comments relating to our time estimate to this address, not the completed form.**

Zzyym v. Tillerson – AR 0364

# SOCIAL SECURITY ADMINISTRATION
## Application for a Social Security Card

Form Approved
OMB No. 0960-0066

| 1 | **NAME** TO BE SHOWN ON CARD | First | Full Middle Name | Last |
|---|---|---|---|---|
| | **FULL NAME AT BIRTH IF OTHER THAN ABOVE** | First | Full Middle Name | Last |
| | **OTHER NAMES USED** | | | |

**2** Social Security number previously assigned to the person listed in item 1 ☐☐☐ – ☐☐ – ☐☐☐☐

**3 PLACE OF BIRTH** (Do Not Abbreviate)    City    State or Foreign Country    Office Use Only / FCI

**4 DATE OF BIRTH** MM/DD/YYYY

**5 CITIZENSHIP** (Check One)
☐ U.S. Citizen
☐ Legal Alien Allowed To Work
☐ Legal Alien **Not** Allowed To Work (See Instructions On Page 3)
☐ Other (See Instructions On Page 3)

**6 ETHNICITY** Are You Hispanic or Latino? (Your Response is Voluntary)
☐ Yes    ☐ No

**7 RACE** Select One or More (Your Response is Voluntary)
☐ Native Hawaiian
☐ Alaska Native
☐ Asian
☐ American Indian
☐ Black/African American
☐ Other Pacific Islander
☐ White

**8 SEX**    ☐ Male    ☐ Female

**9**
A. **PARENT/ MOTHER'S NAME AT HER BIRTH**    First    Full Middle Name    Last
B. **PARENT/ MOTHER'S SOCIAL SECURITY NUMBER** (See instructions for 9 B on Page 3) ☐☐☐ – ☐☐ – ☐☐☐☐ ☐ Unknown

**10**
A. **PARENT/ FATHER'S NAME**    First    Full Middle Name    Last
B. **PARENT/ FATHER'S SOCIAL SECURITY NUMBER** (See instructions for 10B on Page 3) ☐☐☐ – ☐☐ – ☐☐☐☐ ☐ Unknown

**11** Has the person listed in item 1 or anyone acting on his/her behalf ever filed for or received a Social Security number card before?
☐ Yes (If "yes" answer questions 12-13)    ☐ No    ☐ Don't Know (If "don't know", skip to question 14.)

**12** Name shown on the most recent Social Security card issued for the person listed in item 1    First    Full Middle Name    Last

**13** Enter any different date of birth if used on an earlier application for a card    MM/DD/YYYY

**14 TODAY'S DATE** MM/DD/YYYY

**15 DAYTIME PHONE NUMBER**    Area Code    Number

**16 MAILING ADDRESS** (Do Not Abbreviate)
Street Address, Apt. No., PO Box, Rural Route No.
City    State/Foreign Country    ZIP Code

**17** I declare under penalty of perjury that I have examined all the information on this form, and on any accompanying statements or forms, and it is true and correct to the best of my knowledge.
**YOUR SIGNATURE**

**18 YOUR RELATIONSHIP TO THE PERSON IN ITEM 1 IS:**
☐ Self    ☐ Natural Or Adoptive Parent    ☐ Legal Guardian    ☐ Other    Specify

---

**DO NOT WRITE BELOW THIS LINE (FOR SSA USE ONLY)**

| NPN | | DOC | NTI | CAN | | ITV |
|---|---|---|---|---|---|---|
| PBC | EVI | EVA | EVC | PRA | NWR | DNR | UNIT |

EVIDENCE SUBMITTED

SIGNATURE AND TITLE OF EMPLOYEE(S) REVIEWING EVIDENCE AND/OR CONDUCTING INTERVIEW

DATE

DCL                    DATE

Form **SS-5** (08-2011) ef (08-2011)    Destroy Prior Editions    Page 5

Zzyym v. Tillerson – AR 0365

Social Security

---

## Program Operations Manual System (POMS)

---

TN 5 (06-13)

# RM 10212.200 Changing Numident Data for Reasons other than Name Change

## A. How we change Numident data

We only "correct" or "change" information that is on a prior Numident record when there is a documented keying error.

In cases of a keying error, you must review the prior Social Security number (SSN) application; however, do not presume there was a keying error. If you cannot review the prior application, obtain a new application with proper evidence. The individual must submit evidence showing the correct data or information (e.g., a BC to correct an individual's sex field information) with evidence established before the cycle date on the Numident entry where the keying error was made.

If an individual wishes to update information previously submitted to us, the individual must complete and submit an SSN replacement application with evidence supporting the update, and we will create a new record showing the new data and append it to the prior record(s) on the Numident.

**Keying Errors: See Details**

- For instructions on date of birth (DOB) changes on the Numident, see RM 10210.295.

- For instructions on correcting a coding error that resulted in an incorrect employment legend on the SSN card, see RM 10215.055.

## B. How do you create a new Numident entry to update data on the Numident

### 1. Request evidence

Each individual requesting an update of information on a current Numident record must submit:

- an SSN application for a replacement SSN or card;

- evidence of identity to establish that he or she is the person on the record to whom SSA assigned the SSN; and

- evidence to support the update per the chart in RM 10212.200B.2 in this section.

## 2. Obtain documentation

Use this table to determine the supporting documentation required for requested updates to the Numident and any additional actions needed.

**NOTE:** These procedures apply to updates only. In cases of keying errors, see the instructions in RM 10212.200A in this section.

| For this update | Obtain this supporting documentation and follow any additional instructions |
| --- | --- |
| Sex field | Accept any of the following:<br><br>- full-validity, 10-year U.S. passport with the new sex<br><br>**NOTE:** Do not accept passports with less than ten years of validity.;<br><br>- State-issued amended BC with the new sex;<br><br>- court order directing legal recognition of change of sex;<br><br>- medical certification of appropriate clinical treatment for gender transition in the form of an original signed statement from a licensed physician (i.e., a Doctor of Medicine (M.D.) or Doctor of Osteopathy (D.O.)). The statement must include the following:<br><br>    ○ physician's full name;<br><br>    ○ medical license or certificate number;<br><br>    ○ issuing state, country, or other jurisdiction of medical license or certificate;<br><br>    ○ address and telephone number of the physician;<br><br>    ○ language stating that the individual has had appropriate clinical treatment for gender transition to the new gender (male or female);<br><br>    ○ language stating the physician has either treated the individual in relation to the individual's change in gender or has reviewed and evaluated the medical history of the individual in relation to the individual's change in gender and that the physician has a doctor/patient relationship with the individual;<br><br>    ○ language stating "I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct." |

| | |
|---|---|
| | **NOTE:** See RM 10212.200C in this section for a sample letter from a licensed physician that includes all required information to certify to the individual's gender change. |
| | **IMPORTANT:** Surgery is no longer required to change the sex field on the Numident. However, if an individual presents an original or certified letter from a physician stating the individual has undergone sexual reassignment surgery, accept it as evidence to change the sex field when it meets the requirements in GN 00301.030 and contains sufficient biographical data (e.g., name, date of birth) to clearly identify the individual. |
| | **NOTE:** In some cases an individual's sex may impact eligibility for benefits dependent upon spousal relationships. To make title II entitlement or title XVI eligibility determinations dependent upon marriage, follow the instructions in GN 00305.005B. **Do not use sex field data on SSA records to make marital status determinations.** |
| Date of birth field | See Date of Birth Change on the Numident, in RM 10210.295. |
| Place of birth (PLB) field | • U.S. born: a BC<br>• foreign born: an acceptable document such as a BC or an acceptable proof of age document listed in kinds of documents that establish age for an SSN card in RM 10210.265, provided the document also list the individual's PLB. |

Zzyym v. Tillerson – AR 0368

| Citizenship field | Evidence of U.S. citizenship:<br><br>• U.S. public birth record showing birth in one of the 50 U.S. states, the District of Columbia, American Samoa, Puerto Rico, Guam, the Virgin Islands of the U.S. (on or after 01/17/1917), or the Northern Mariana Islands (on or after 11/04/1986 (NMI Local time),<br><br>• U.S. passport,<br><br>• Certificate of Naturalization,<br><br>• Certificate of Citizenship, or<br><br>• Other documents listed in RM 10210.505, RM 10210.510, RM 10210.520, and RM 10210.525.<br><br>Interviewers should request and obtain from the individual, the U.S. citizenship document with the highest evidence level available (i.e., the document exists or the individual can obtain the U.S. document within 10 working days) before accepting a document of a lower level. You may use primary, secondary, third-level, or fourth-level evidence to change the citizenship data on a Numident record.<br><br>**EXAMPLE:** If **primary evidence** of U.S. citizenship is not available (does not exist or the individual cannot obtain the primary evidence in 10 working days), then the interviewer may accept **secondary evidence** to change the citizenship data on the Numident record. |
| Parent's name field | • original or amended BC, or<br><br>• final adoption decree issue by the court or court determination of paternity |

## 3. Process the request

If you change the sex code on the Numident, and the individual is:

• receiving Social Security benefits,

• receiving Supplemental Security Income (SSI) payments, or

• a representative payee for his or her child,

**change** the sex immediately if it is different on the Master Benefit Record (MBR), the Supplemental Security Record (SSR), or in the Representative Payee System (RPS) to agree with the Numident. List all documents or evidence submitted to change the individual's sex code on the Social Security Number Application Process (SSNAP) Summary screen.

**NOTE:** For instructions on determining whether a valid marital relationship exists, see GN 00305.005B.

When changing a parent's name on a child's Numident record, ask the parent if he or she is a title II beneficiary, an SSI recipient, or a representative payee. If so, review the MBR, SSR, or RPS record and initiate or complete actions necessary to update the record (e.g., correcting a parent's name on the SSR record or ensuring that actions are taken to complete a new representative payee application).

In the "Remarks" block on the SSNAP Summary screen, list any evidence or documents the individual submitted to change the following fields on the Numident, if not previously captured in SSNAP:

- sex field, or
- PLB field, or
- parent's name field.

## 4. When to suppress an SSN card

Process the requested change but **suppress** the issuance of a replacement SSN card when the correction will not affect any data on the face of the SSN card (i.e., changes to the sex, DOB, PLB, or parent's name fields on the Numident) **and** the individual is still in possession of the SSN card showing the correct information.

## 5. When to send written notice

Send a written notice if you are unable to provide an individual with an original or replacement SSN or card. Follow the appropriate instructions in:

- RM 00299.020 Form SSA-L676 – Refusal to Process SSN Application, or
- RM 10205.090 Form SS-5 Received and Additional Documentation is Needed, or
- RM 10215.110 Policy on Providing Written Notice and Second Review When SSN or Card May Not Be Issued, or
- RM 10215.115 Procedures for Providing Written Notice to an SSN Applicant.

**See Details:**

- RM 10210.265 Kinds of Documents that Establish Age for an SSN Card
- RM 10210.295 Date of Birth Change on the Numident
- RM 10210.505 Primary Level Evidence of U.S. Citizenship
- RM 10210.510 Secondary Level Evidence of U.S. Citizenship for a U.S. Born Applicant
- RM 10210.520 Third Level Evidence of U.S. Citizenship for a U.S. Born Applicant
- RM 10210.525 Fourth Level Evidence of U.S. Citizenship for a U.S. Born Applicant

- RM 10215.055 Correct a Coding Error that Resulted in an Incorrect Employment Legend on the SSN Card

- RM 10220.210 Evidence Requirements for Documentation of Harassment, Abuse, or Life Endangerment (HALE)

- GN 00301.030 Acceptability of Documentary Evidence

- GN 00301.080 Certification by Custodian of the Record

- GN 00301.045 Validity of Documents

## C. Exhibit – Sample Letter from Licensed Physician Certifying to the Individual's Gender Change

**(Physician's Address and Telephone Number)**

I, (physician's full name), (physician's medical license or certificate number), (issuing U.S. State/Foreign Country of medical license/certificate), am the physician of (name of patient), with whom I have a doctor/patient relationship and whom I have treated (or with whom I have a doctor/patient relationship and whose medical history I have reviewed and evaluated).

(Name of patient) has had appropriate clinical treatment for gender transition to the new gender (specify new gender, male or female).

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

Signature of Physician

Typed Name of Physician

Date

To Link to this section - Use this URL:
http://policy.ssa.gov/poms.nsf/lnx/0110212200

RM 10212.200 - Changing Numident Data for Reasons other than Name Change -
09/30/2013
Batch run: 09/30/2013
Rev:09/30/2013

Zzyym v. Tillerson – AR 0371



**United States Department of State**

*Washington, D.C. 20520*

May 1, 2017

**Exhibit 46 – Use of a Third Sex Marker by Contracting States as Permitted by ICAO**

The International Civil Aviation Organization (ICAO) is a specialized agency of the United States created in 1947 by the Convention on International Civil Aviation (the "Chicago Convention"). ICAO was created for the purpose of reaching consensus on international civil aviation practices and policies in support of a safe, efficient, secure, economically sustainable, and environmentally responsible civil aviation sector. Under Article 37 of the Chicago Convention, Contracting States undertook to collaborate in securing the highest practicable degree of uniformity in those regulations, standards, procedure and organization required for efficient and orderly civil aviation operations. Under this and other mandates, ICAO has developed and maintained international standards in Annex 9 to the Chicago Convention, "Facilitation."

ICAO's work on machine readable travel documents (MRTDs) began in 1968 with the establishment of a panel of passport experts charged with developing recommendations for a standardized passport book or card that would be machine readable, in the interest of accelerating the clearance of passengers through passport controls. In November 1980, ICAO published its initial guidance and recommendations for machine-readable travel documents (MRTDs), "A Passport with Machine Readable Capability" (ICAO Document 9303, now known as the First Edition of ICAO Doc 9303) (Exh. 48), which became the basis for the introduction of such passports by Australia, Canada, and the United States. ICAO's production of standardized technical specifications for travel documents, and for the data contained in such documents, was aimed at building the level of confidence in the reliability of travel documents and in the effectiveness of procedures for inspection of air travelers. *See* ICAO Doc 9303, "Machine Readable Travel Documents," 7th Edition, Part 1, "Introduction" (2015) (Exh. 50), at 2 (§ 3.1).

The European Community adopted resolutions in 1981 and 1982 calling for its contracting states to follow the specifications of Doc 9303 in a uniform European passport by January 1, 1985. In 2005, the then-188 Member States of ICAO approved a "Standard" – Standard 3.10 – requiring all Member States to begin issuing only machine-readable passports in accordance with Doc 9303 no later than 2010. ICAO's most recent specifications for passports are published in the Seventh Edition of Doc 9303, published in 2015. *See id.*; ICAO Doc 9303, "Machine Readable Travel Documents," 7th Edition, Part 4, "Specifications for Machine Readable Passports (MRPs) and other TD3 Size MRTDs" (2015) (Exh. 51).

Doc 9303 specifies the size and format of MRTDs to be issued by ICAO Member States, as well as the arrangement and content of the data contained in such documents. ICAO's issuance of uniform standards assists ICAO Member States in issuing MRTDs that are compatible with the computerized systems used by other ICAO Member States. Since the First Edition of Doc 9303, ICAO has required detailed biodata such as the bearer's sex to be included on travel documents in order to reduce the risk of such documents being issued to the wrong identity or multiple documents being issued to one identity. *See* "A Review of the Requirement to Display the Holder's Gender on Travel Documents," ICAO Technical Advisory Group on

Machine Readable Travel Documents Information Paper TAG/MRTD/21-IP/4 (Nov. 20, 2012) (Exh. 52), at 6. ICAO also considered the requirement for a sex marker to be valuable in assisting border officials in verifying a traveler's identity by performing a quick visual check of the sex indicated on the passport compared to the traveler. *See id.*

Each edition of Doc 9303 has specified that MRTDs, including passports, include a data field identifying the sex of the holder in both the printed and machine-readable zones. In specifying the permissible characters to be used to designate a holder's sex in both zones, Doc 9303 initially recognized only two designations, one for the sex of female and one for the sex of male. By 1999, a third permissible sex designation, "unspecified," had been added to both zones, to accommodate a person who did not wish their sex to be identified or where a Member State did not want to show this data. *See* ICAO Doc 9303, "Machine Readable Travel Documents," Part 1 – Machine Readable Passports, 4th Edition (1999) (Exh. 49). In the printed zone, Doc 9303 now provides that sex is shown as a personal data element in Field 11 (Zone II), as a single initial commonly used by the issuing country and, if applicable, followed by an oblique (/) and the capital letter "F" for female, "M" for male, or "X" for unspecified. *See* ICAO Doc 9303, "Machine Readable Travel Documents," 7th Edition, Part 4, "Specifications for Machine Readable Passports (MRPs) and other TD3 Size MRTDs" (2015) (Exh. 51), at 6 (§ 3.2 Fig. 4), 7 (§ 3.2 Fig. 6), and 14 (§ 4.1.1.1). In the machine-readable zone, sex is indicated in position 21 in the lower machine-readable line by "F" for female, "M" for male, or "<" (referred to by ICAO as the "filler character") for "unspecified." *Id.* at 19 (§ 4.2.2.2).

In Doc 9303, ICAO encouraged international interoperability by adopting a technical specification permitting, but not requiring, the use of "X" as an allowable designation of a passport holder's sex, for cases in which the sex of the individual issued a travel document was unspecified. Most countries, including the United States, do not issue passports or visas with the "unspecified" designation. *See* "Gender and Sex Designations for Identification Purposes: A Discussion on Inclusive Documentation for a Less Assimilationist Society," 3 Wisc. J. Law, Gender & Society 131 (2015) (Exh. 53); "Third Gender: A Short History," *Foreign Policy* (June 30, 2014) (Exh. 54). A small number of countries, applying varying standards, permit their citizens to qualify for an "X" sex marker in their passport not to indicate that their sex is unspecified or undetermined, but instead to designate a sex other than male or female. Australia, Bangladesh, Denmark, Malta, and New Zealand fall into this category. Also, India and Nepal have issued passports using sex markers in the printed zone other than "F," "M," or "X" to indicate a sex other than male or female. To ensure machine-readability of such passports at foreign borders, in the machine-readable zone these countries use the filler character ("<") specified by ICAO for use when sex is unspecified or undetermined.

Because the U.S. does not issue visas or other travel documents with the "unspecified" designation, a holder of a foreign passport bearing an "X" in the printed zone and "<" in the machine-readable zone who wishes to travel to the United States is required to select a sex of "F" for female or "M" for male on their U.S. visa application submitted to the Department or, for nationals of visa waiver program countries who issue such passports, on their ESTA application submitted to U.S. Customs and Border Protection.

Zzyym v. Tillerson – AR 0373

AT-WP/1183
13/9/74

**INTERNATIONAL CIVIL AVIATION ORGANIZATION**

### 83RD SESSION OF THE COUNCIL

### AIR TRANSPORT COMMITTEE

Subject No. 15.4:  Facilitation

#### FOURTH REPORT OF THE PANEL ON PASSPORT CARDS

(Presented by the Acting Director, Air Transport Bureau)

References:  Report of the 8th FAL Division, Doc 9055-FAL/8 (1973)
Annex 9, Seventh Edition

#### Introduction

1.        It will be recalled that the Eighth Session of the FAL Division reviewed
the work of the Panel on Passport Cards and, as a result, adopted Recommendation No. B-5
(cf. page 3-17 of Doc 9055).  The Council subsequently approved this recommendation and
directed, inter alia, that the Panel should continue its work with the aim of concluding
it through a final meeting by mid-1974 and that the results of the Panel's study should
be published for the information of Contracting States (cf. "yellow-paged" Supplement 1
to the Division's Report).

2.        Accordingly, the Panel held its Fourth Meeting from 2-11 July 1974 at
ICAO Headquarters.  The Report of the meeting (ICAO/PPC - FOURTH REPORT) is attached
hereto for the Committee's consideration.  It consists of three parts:

> Part I    (pp. 3 to 5 of the Report) dealing with the organization of
> the meeting;

> Part II   (pp. 7 to 19) reflecting the discussions which took place on
> the various issues; and

> Part III  (pp. 21 to 62) containing a draft document for publication,
> after ATC consideration, as per Rec. No. B-5 of FAL/8 and
> Council's action thereon.

3.        The Panel's terms of reference as approved by the Air Transport Committee
during the 65th Session in 1968 are shown on pp. 25 and 26 of the attached Report.  A
Summary of the draft document in Part III appears on pp. 28 and 29.  It will be noted that
the Panel made five recommendations which have been included in the appropriate places in
Part III, dealing with (1) issuance and acceptance of Passport Cards, (2) standard format
and layout of the Passport Card, (3) data to be included in the magnetic tape, (4) certain
guidelines for producing the Passport Card and (5) certain properties of materials for use
in producing the Passport Card.

(66 pages)
E.F.S.

DISTR 23/9  /74

Zzyym v. Tillerson - AR 0374

AT-WP/1183                          - 2 -

4.          In addition to the summary on pp. 28 and 29, the following highlights are offered in an attempt to assist the Committee in its consideration of the Panel's Report.

<u>Definition of the Term Passport Card</u>

5.          During earlier stages of the Panel's work, it was recognized that the establishment of an appropriate document with electronically or mechanically readable inscriptions (apart from being visually readable), as called for by the terms of reference, could be accomplished only through the creation of a card-type passport. Since the state of technology at that time ruled out the possibility of incorporating machine-readable data in a conventional-type passport, the Panel concentrated its efforts on the design of a machine (and visually) readable Passport Card as reflected in its first three reports.

6.          More recently, however, technological developments made the insertion of machine-readable data in conventional-type passports possible, as reported in a comprehensive study presented by one of the Panel Members. This study which the Panel considered, resulted in a proposal for an improved passport of the same size as previously agreed upon for the Passport Card, the inner front cover containing the bearer's personal data in the standard layout as on the Card, pages for visas and entry/exit stamps and a machine-readable zone on the inside back cover.



7.          The five recommendations, referred to above, give States the option of issuing the new document in book form and/or in card form. At the same time, the Panel agreed to maintain the term Passport Card for the new document when issued in either form, implying that it considered the Passport Card, when issued by a State in book form, as a substantial improvement over the existing conventional passport and as a stepping stone toward eventual issuance by that State of the document in card form. An appropriate definition of the term Passport Card covering issuance in either form has therefore been developed and included in the Report as shown at the bottom of page 7 and on page 22.

8.          It should be emphasized here that the Panel viewed the technical advances referred to above as a major breakthrough in this sphere and was convinced that the options now afforded to States would have the effect of more rapid and widespread introduction of machine-readable passport documents with the numerous advantages this may have.

<u>Embossing of personal data on the Passport Card</u>

9.          Another decision the Panel took at its Fourth Meeting concerned the "embossed zone". The possible inclusion of embossed data on the Passport Card had been a controversial subject from the outset of the Panel's work. The merits and demerits of such a zone are discussed on pp. 11-13 of the Report and the Panel's decision to refrain from recommending the inclusion of embossed data on the Card came after long discussions on this subject. It might be added here that, with the state of today's technology, embossing could not be accomplished in the case where the new document was issued in book form and that new techniques would have to be awaited, had the Panel recommended otherwise.

Zzyym v. Tillerson - AR 0375

- 3 -                                                    AT-WP/1183

## The machine-readable zone of the Passport Card

10.          It is this area that provided the Panel with the most difficult choices to be made.  The different systems are outlined on pp. 13 to 16 of the Report and the Panel's preference for the magnetic track is recorded in paragraph 40.  The question of protecting the holder's privacy, i.e. enabling him to verify the information included in the magnetic zone, and excluding the possibility of recording unauthorized data in any unused space within that zone, was considered technically feasible.  However, for the reasons mentioned in para. 12 below, the most effective method of accomplishing this will need to be examined further by the Technical Advisers.

## Cost estimates

11.          Earlier cost estimates presented at previous Panel meetings were up-dated and included in Part III of the Report for the guidance of States which are planning to issue the Passport Card.  The conclusion which the Panel drew from those estimated figures was that the cost of producing the Passport Card is not significantly different from that of producing the conventional passport (cf. p. 49, para. 87).  As far as acceptance of the Passport Card for the purpose of temporary entry is concerned, the admitting State is not, of course, involved in any extra expenses whatsoever if it does not wish to use automatic readers (cf. p. 28, para. 15).

## Other Business

12.          It will be seen from the Report that there are some aspects of a technical nature which could not be resolved during the short period of the meeting and which need some further consideration.  They include, e.g. the development of an encoding system for the recording of magnetic data, referred to in para. 43, p. 16, of the Report, with the resultant completion of Appendix 'E' on p. 56, the exact length of the magnetic track(s), determination of the recording density of magnetically encoded data, and prevention of recording unauthorized data.  It is for this reason that the Panel has suggested, in para. 55 on p. 18, that continuing liaison be maintained between the Members' Technical Advisers under the co-ordination of the Panel Member of France to study those outstanding issues and advise ICAO of the results.

13.          Meanwhile, the Committee may wish to proceed with the consideration of the Panel's Fourth Report, with the understanding that the outstanding technical details be included at the appropriate places in the document to be published as soon as they have been worked out by the technical advisers and cleared, through correspondence, with all Panel Members.

14.          As far as the recommended action under clause 2 (ii) of Rec. No. B-5 of FAL/8 is concerned, i.e. the desirability of placing the matter under the auspices of some other appropriate international organization, the Council when approving this recommendation decided to consider this question "when the results have been published" (cf. Supplement 1 to Doc 9055-FAL/8 (1973)).  This point will therefore be brought to the Committee's attention at a later session.

Zzyym v. Tillerson - AR 0376

AT-WP/1183                              – 4 –


Action by the Air Transport Committee

15.          The Air Transport Committee is invited to:

   a)     note the Report of the Fourth Meeting of the Panel on Passport Cards, and

   b)     authorize the Secretary General, after receiving Panel Members' clearance
          of the outstanding technical specifications cited in para. 12 above, to
          publish Part III of the Panel's Fourth Report as an ICAO document in
          accordance with Council's action on clause 2 (i)  of Rec. No. B-5 of
          FAL/8.


                              – – – – – – –

Zzyym v. Tillerson – AR 0377

ICAO/PPC — FOURTH REPORT
11/7/74

## LETTER OF TRANSMITTAL

To:        The Chairman, Air Transport Committee

From:      The Chairman, Panel on Passport Cards

I have the honour to submit the Report of the Fourth Meeting of the ICAO
Panel on Passport Cards, which was held in Montreal from 2 to 11 July 1974.

C.F. Woodiss
Chairman

Montreal, 11 July 1974

(62 pages)

Zzyym v. Tillerson – AR 0378

Zzyym v. Tillerson - AR 0379

## PANEL ON PASSPORT CARDS

### REPORT OF THE FOURTH MEETING

(Montreal, 2-11 July 1974)

### PART I - ORGANIZATION OF THE MEETING

#### Duration

1.          The Fourth Meeting of the Panel on Passport Cards was opened by Mr. B.J. Elle, Acting Director of the Air Transport Bureau, at 1030 hours on 2 July 1974. The meeting adjourned on 11 July 1974.

#### Attendance

2.          The following Panel Members and Advisers were in attendance:

| Members | Advisers | Designated by |
|---|---|---|
| Mr. T.A. Smith | Mr. G.H. Sturgess | Australia |
| Mr. R.J. Sutherland | Mr. A.J. Findlay<br>Mr. W.C. Brown<br>Mr. C. Châtillon<br>Miss M. Greenwood<br>Mr. G. Hutton | Canada |
| Mr. J. Maily | Mr. A.P. Voegtlin | France |
| Mr. S. Singh | | India |
| Mr. J.K. Mutua | | Kenya |
| Mr. B. Rydén | Mr. K.-E. Svensson | Sweden |
| Mr. C.F. Woodiss | Mr. F.R. Hayhurst | United Kingdom |
| Miss Frances G. Knight | Mr. J.F. Brooks<br>Mr. F.T. Kubic | United States |

Dr. Hertel, nominated by the Federal Republic of Germany, and Mr. Reznichenko, nominated by the USSR, were unable to attend the meeting.

Zzyym v. Tillerson - AR 0380

ICAO/PPC — FOURTH REPORT                    — 4 —


The following Observers were in attendance:

**Observers**                    **Designated by**

Mr. J. Brière                     ICPO

Mr. C.W.R. Vallance               IATA

A complete list containing the names and addresses of all Panel Members and Observers is shown further below.

## Officers and Secretariat

3.          The Chairman of the meeting was Mr. C.F. Woodiss.

4.          Mr. H.A. Seidelmann, Technical Officer, Facilitation and Joint Financing Branch, acted as Secretary of the meeting.

## Languages

5.          The discussions were conducted in English and French and documentation was issued in those two languages.

## Agenda

6.          The Agenda of the meeting, as approved by the President of the Council, was as follows:

>      Agenda Item 1: General Observations concerning the Use of the Passport Card
>
>      Agenda Item 2: Format and Layout of the Passport Card
>
>      Agenda Item 3: Minimum Security Requirements for the Passport Card
>
>      Agenda Item 4: Procedures and Systems for Use in connexion with the Passport Card
>
>      Agenda Item 5: Estimated Cost Figures in connexion with the Production and Use of the Passport Card
>
>      Agenda Item 6: Any Other Business

## Documentation

7.          The following working papers were taken into consideration by the Panel in its discussions:

>      PPC/4—WP/1      PPC/4—WP/5      PPC/4—WP/9
>      PPC/4—WP/2      PPC/4—WP/6
>      PPC/4—WP/3      PPC/4—WP/7
>      PPC/4—WP/4      PPC/4—WP/8

Working Arrangements

8.              On several occasions the Panel established small Drafting Groups and
Technical Working Groups for the purpose of developing proposals for inclusion in the
appropriate sections of the Report.  Otherwise the Panel met as a single body.

List of Members and Observers on the Panel on Passport Cards

Mr. T.A. Smith
Chief Migration Officer
Passports and Visitors
Department of Immigration
Canberra, A.T.C.
AUSTRALIA

Mr. R.J. Sutherland
Chief Passport Officer
Department of External Affairs
48 Besserer Street
Ottawa, Ontario  K1A OG2
CANADA

Mr. C.F. Woodiss
Assistant Chief Inspector
Home Office
Immigration and Nationality Division
Lunar House
40 Wellesley Road
Croydon CR9 2BY, Surrey
ENGLAND

Mr. Jacques Maily
Administrateur Civil
Direction de la Réglementation
Ministère de l'Intérieur
75008 Paris
FRANCE

Dr. Joachim Hertel
Federal Ministry of the Interior
D53 Bonn
Rheindorfer St. 198
FEDERAL REPUBLIC OF GERMANY

Mr. S. Singh
First Secretary
High Commission of India
200 Maclaren Street
Ottawa, Ontario

Mr. J.K. Mutua
Deputy Principal Immigration Officer
P.O. Box 30191
Nairobi
KENYA

Mr. B. Rydén
National Swedish Police Board
St. Eriksgatan 20
Box 12256
S-10226 Stockholm
SWEDEN

Mr. N.G. Reznichenko
Ministry of Civil Aviation
(for USSR Commission for ICAO)
Leningradsky Prospect 37
Moscow A-167
UNION OF SOVIET SOCIALIST REPUBLICS

Miss Frances G. Knight
Director
U.S. Passport Office
Room 600, McPherson Building
1425 "K" Street, N.W.
Washington, D.C.  20524
USA

- - - - - - - - - - - - - - - - - - - - - -

Inspecteur J. Brière
Inspecteur
Gendarmerie Royale du Canada
B.P. 559
4225, boulevard Dorchester ouest
Westmount, Québec

Mr. C.W.R. Vallance
Director, Facilitation
International Air Transport Association
1155 Mansfield Street
Montreal, Quebec  H3B 4A4

- - - - - - -

Zzyym v. Tillerson - AR 0382

Zzyym v. Tillerson − AR 0383

## PART II - SUMMARY OF DISCUSSIONS

**Agenda Item 1:  General Observations concerning the Use of the Passport Card***

**Studies presented to the Meeting**

9.              The Panel had before it for its consideration comprehensive studies under-
taken by three Panel Members more recently:  The Panel Member of France, Mr. Maily, had
submitted material outlining the methods of production of the magnetic track passport
card, reflected in PPC/4-WP's/4, 5 and 7.  The Panel Member of the USA, Ms. Knight, had
presented a study on the subject of passport travel document which was reproduced in
PPC/4-WP/6 and the Panel Member of Germany, Dr. Hertel, had forwarded a study concerning
the use of electronically readable passport cards, excerpts of which were included in
PPC/4-WP/8.  In addition, the Panel Member of Sweden, Mr. Rydén, submitted a paper on the
subject of a new travel document for consideration by the Panel, i.e. PPC/4-WP/9.

10.             The meeting had also before it a paper (PPC/4-WP/2) in which the results
of the Panel's work to-date had been compiled, drafted by the Secretary in a form suitable
for later publication as an ICAO document as requested in Recommendation No. B-5 of the
8th FAL Division and now awaiting the Panel's approval.  The meeting agreed at the outset
to use this working paper as a basis for its discussions, to attach the approved text as
Part III to this Report and to consider the various points raised in the above-mentioned
studies as they arose in relation to PPC/4-WP/2.

11.             The meeting was also given a video demonstration, highlighting certain
aspects of the study carried out in the USA as reflected in PPC/4-WP/6, followed by a
question and answer period.  Basically the US study was aimed at an improved travel
document in book form incorporating machine readability.  Some of the features of this
document included a flexible vinyl cover; an insert containing personal information and
"stick-on" photograph in type and layout as agreed upon by the Panel at its Third Meeting,
security lamination covering the insert and stitched through the binding; visa pages with
entry/exit stamp grid (4 or 6 grid design) and magnetic recording zone on inside rear cover.

----

*The term Passport Card as used throughout this Report includes a passport in card
 format as well as an improved conventional passport, both possessing machine-readable
 characteristics.

Zzyym v. Tillerson - AR 0384

ICAO/PPC - FOURTH REPORT                      - 8 -

The study was based on extensive research undertaken over a two-year period and contained
a large amount of technical details concerning the production and use of the travel
document. In a question period which followed the demonstration, most of the queries
raised were in connexion with the machine-readable part.

12.          This presentation was followed by one of the Swedish Panel Member, who
introduced a passport card model containing an optical encoding referred to in his PPC/4-
WP/9 and demonstrated to the meeting the optical reading capability of this technique*.

13.          The Member expressed the belief, inter alia, that this technique presented
a substantially higher degree of security than the embossed characters if the Panel
decided to substitute the latter by the optical encoding, that the costs of reader
facilities for such a technique compared favourably with those for magnetic readers, that
the cardholder would be able to verify the coded information by way of a code key to be
issued to him and that no patents, royalties, etc. stood in the way of adopting this
system worldwide.

14.          A number of questions were raised and answered thereafter mainly in
connexion with costs of production of a card with optical code, optical reading equipment,
etc., but a decision concerning a possible recommendation for the use of that technique on
Passport Cards was postponed until such time that the meeting reached the point on its
agenda where it would discuss the machine readability of the Card.

Introductory Part and General Observations concerning the Use of the Passport Card

15.          In keeping with its terms of reference, the Panel carefully considered the
question of passport cards and came to the conclusion that a universal process of change
from the conventional passport to a simplified machine-readable Card would be through a
gradual process of evolution. The Panel was aware that some countries may be unable to
make this change for some time to come for reasons such as financial, security and
technological constraints.

16.          Faced with the task of devising a suitable machine-readable Card for
ultimate and universal adoption, the Panel devoted a great deal of time and effort in
that direction. Considering, however, that such a Card could not be introduced
universally in the near future, the Panel agreed that a viable interim measure might be
an improved conventional passport with machine-readable characteristics. This improved

---

*Known as OPR = Optical Pattern Reading system.

Zzyym v. Tillerson - AR 0385

conventional passport could include the format and information recommended for the Card as an integral part of the conventional passport. The Card could also be a separate document, being added to the conventional passport, for use at the same time as the passport for control purposes.

17.             Therefore, as indicated in the footnote on page 7, the term Passport Card as used throughout this Report includes a passport in card format as well as an improved conventional passport, both possessing machine-readable characteristics.

18.             On another point under this heading of general observations, the Panel noted that exit/entry stamps were frequently placed in passports without any chronological order, creating difficulties for immigration services, and felt that random placement of such stamps in passports could be avoided by utilizing a grid system as described in PPC/4-WP/6. The Panel also believed that in the case where stamping of passports on arrival and departure continues to be practiced, the State concerned should use exit/entry stamps of the smallest size possible, consistent with legibility. Stamps of different shapes for exit and entry would be desirable. In respect of visas, the Panel emphasized that they should be issued according to the specifications laid down in paras. 3.8.4 to 3.8.6 of Annex 9, 7th Edition and that it would be advantageous if the size of the visa could be kept to the minimum, again consistent with legibility.

19.             It was also suggested that all forms of travel documentation used for the crossing of international frontiers should be standarized in format and content similar to what is being recommended in this Report for the Passport Card.

20.             In proceeding with the consideration of PPC/4-WP/2 the Panel approved, with some amendments, the introductory part (cf. paras. 1 - 8 in Part III of this Report) and the section entitled "General observations concerning the use of the Passport Card" (cf. paras. 19 - 34 in Part III of this Report), including Recommendation No. 1.

## Agenda Item 2: Format and Layout of the Passport Card
### Dimensions of the Card, its Various Zones, etc.

21.             Some discussions ensued on the overall size of the Card which had been agreed upon at the Third Meeting as being 88 mm (3.5") by 125 mm (4.9"). Proposals had been made for changes in this size, one by ISO as documented in PPC/4-WP/3 (for a format