# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:15-cv-02362-RBJ

DANA ALIX ZZYYM,

    Plaintiff,

vs.

REX W. TILLERSON, in his official capacity as Secretary of State; and SHERMAN D. PORTELL, in his official capacity as the Director of the Colorado Passport Agency for the United States Department of State,

    Defendants.

---

**PLAINTIFF DANA ZZYYM'S OPENING BRIEF FOLLOWING THE DEPARTMENT'S RECONSIDERATION OF ITS GENDER POLICY**

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................................ 1

STANDARD OF REVIEW ............................................................................................. 4

ARGUMENT .................................................................................................................. 4

I.    THE BINARY-ONLY GENDER POLICY IS SUBJECT TO HEIGHTENED SCRUTINY BECAUSE IT DISCRIMINATES BASED ON GENDER .................................................................................................... 4

II.   THE DEPARTMENT'S ACTIONS INFRINGE UPON THE FUNDAMENTAL RIGHT TO INDIVIDUAL DIGNITY AND AUTONOMY ............................................................................................................ 7

III.  THE DEPARTMENT'S ACTIONS INFRINGE UPON THE FUNDAMENTAL RIGHT TO TRAVEL ................................................ 8

IV.  THE GENDER POLICY FAILS ANY LEVEL OF SCRUTINY ........................... 10

CONCLUSION ............................................................................................................. 16

i

## **TABLE OF AUTHORITIES**

**Federal Cases**

*Abbott v. Abbott*,
　560 U.S. 1 (2010) .................................................................................................................. 8

*Aptheker v. Secretary of State*,
　378 U.S. 500 (1964) ................................................................................................... 5, 10, 11

*Browder v. United States*,
　312 U.S. 335 (1941) ............................................................................................................ 11

*Califano v. Goldfarb*,
　430 U.S. 199 (1977) ............................................................................................................ 17

*City of Cleburne v. Cleburne Living Ctr., Inc.*,
　473 U.S. 432 (1985) ............................................................................................................ 12

*Custer Cnty. Action Ass'n v. Garvey*,
　256 F.3d 1024 (10th Cir. 2001) ............................................................................................ 4

*DeNieva v. Reyes*,
　966 F.2d 480 (9th Cir. 1992) .............................................................................................. 10

*Diaz v. Brewer*,
　656 F.3d 1008 (9th Cir. 2011) ...................................................................................... 17, 18

*Fabian v. Hosp. of Cent. Conn.*,
　172 F. Supp.3d 509 (D. Conn. 2016) .................................................................................... 7

*Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*,
　237 F. Supp. 3d 1126 (D. Colo. 2017) .................................................................................. 7

*Frontiero v. Richardson,*
　411 U.S. 677 (1973) ...................................................................................................... 17, 18

*Glenn v. Brumby*,
　663 F.3d 1312 (11th Cir.) ...................................................................................................... 7

*Haig v. Agee*,
　453 U.S. 280 (1981) ............................................................................................................ 10

*Heller v. Doe by Doe*,
　509 U.S. 312 (1993) ...................................................................................................... 11, 16

*J.E.B. v. Alabama ex rel. T.B.*,
　511 U.S. 127 (1994) .......................................................................................................... 5, 7

*Kent v. Dulles*,
　357 U.S. 116 (1958) ............................................................................................................ 10

*Kitchen v. Herbert*,
　961 F. Supp. 2d 1181(D. Utah 2013), *aff'd*, 755 F. 3d 1193 (10th Cir. 2014). ............ 5

*Lawrence v. Texas,*
　539 U.S. 558 (2003) .................................................................................................. 8, 9

*Lynd v. Rusk,*
　389 F.2d 940 (D.C. Cir. 1967) ....................................................................................... 11

*Lyng v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.,*
　485 U.S. 360 (1988) ...................................................................................................... 17

*Obergefell v. Hodges,*
　135 S. Ct. 2584 (2015) ................................................................................................ 6, 8

*Olenhouse v. Commodity Credit Corp.,*
　42 F.3d 1560 (10th Cir. 1994) .......................................................................................... 3

*Omar v. Kerry,*
　No. 15-CV-01760-JSC, 2016 WL 617449 (N.D. Cal. Feb. 16, 2016) ......................... 10

*Planned Parenthood of Se. Pa. v. Casey,*
　505 U.S. 833 (1992) ......................................................................................................... 8

*Plyler v. Doe,*
　457 U.S. 202 (1982) ................................................................................................ 17, 18

*Roberts v. U.S. Jaycees,*
　468 U.S. 609 (1984) ......................................................................................................... 8

*Schroer v. Billington,*
　424 F. Supp. 2d 203 (D.D.C. 2006) ................................................................................. 7

*Sessions v. Morales-Santana,*
　137 S. Ct. 1678 (2017) .................................................................................................. 6, 7

*United States v. Virginia,*
　518 U.S. 515 (1996) ......................................................................................................... 6

*United States v. Windsor,*
　133 S. Ct. 2675 (2013) ..................................................................................................... 5

*Zablocki v. Redhail,*
　434 U.S. 374 (1978) ......................................................................................................... 9

*Zemel v. Rusk,*
　381 U.S. 1 (1965) ........................................................................................................... 10

*Zzyym v. Kerry,*
　220 F.Supp. 1106 (D. Colo. 2016) ......................................................................... 1, 2, 3, 14

## **INTRODUCTION**

Plaintiff Dana Alix Zzyym ("Dana"), a U.S. citizen and Navy veteran who was born intersex, returns to this Court seeking relief after Defendants, Rex W. Tillerson as Secretary of State and Sherman D. Portell as Director of the Colorado Passport Agency (jointly, the "Department"),[1] doubled-down on its discriminatory, binary-only gender marker passport policy ("Gender Policy") and denied Dana a passport because Dana is neither male nor female. Nearly three years after the agency's first adjudication of Dana's passport application and this Court's mandate that the agency reconsider its policy, the Department continues to lock Dana within the confines of our nation's borders with no legal means to depart the United States. The Constitution prohibits the Department from discriminating against Dana based on sex and from infringing upon Dana's fundamental rights and liberty interests, namely the right to individual dignity and autonomy and the freedom to travel, all without adequate justification. For the reasons below and those asserted in prior briefing, this Court should hold unlawful and set aside the Department's decision to deny Dana a crucial identity and travel document, as constitutionally infirm.

## **STATEMENT OF FACTS AND PROCEDURAL HISTORY**[2]

Intersex people have existed throughout history. Yet around the globe, intersex

---

[1] Defendants are sued in their official capacities. Secretary Tillerson, who assumed office as Secretary of State on February 1, 2017, "is automatically substituted as a party" pursuant to Federal Rule of Civil Procedure 25(d).

[2] Although the Court is familiar with this case from its Order in *Zzyym v. Kerry*, 220 F.Supp. 1106 (D. Colo. 2016) ("*Zzyym I*") [AR 0055-0066], Dana sets forth a shortened version of the facts and incorporates by reference all facts and relevant background from prior briefing. *See Plaintiff Zzyym's Opening Brief* [Dkt. 37], pp. 1-6.

individuals "face violence, discrimination, stigma, harassment and persecution on account of their sex characteristics, which do not fit binary notions of typical male or female bodies." *In Recognition of Intersex Awareness Day*, Statement by John Kirby, Assistant Secretary, U.S. Department of State (Oct. 26, 2016).[3] Early in life, Dana, like many other intersex infants, "face[d] forced medical surgeries that [were] conducted at a young age without free and informed consent" and that "jeopardize[d] their physical integrity and ability to live free." *Id*. None of the surgeries altered, or even fully disguised, Dana's intersex traits. Administrative R. [Dkt. 64-01 through 64-44] [hereinafter "AR"], 0028, 0030. Eventually Dana, whose gender identity[4] is neither male nor female ("nonbinary"), became an advocate for intersex people through raising awareness and sharing their own personal story. AR 0022.

In anticipation of attending an intersex world conference in Mexico City, Dana submitted a passport application on September 2, 2014. AR 0007-0022. Dana did not select either "M" (male) or "F" (female) in the sex field on the application form, but instead wrote "Intersex" and explained, "I'm not male or female." AR 0007, 0009. In addition to other required items,[5] Dana submitted a certified birth certificate stating "[u]nknown" in the sex field, AR 0010, and two sworn statements from licensed physicians with the U.S. Department of Veterans Affairs ("VA") that verified Dana's sex as intersex. AR 0028, 0030. Dana requested a passport bearing "X" in the sex field

---

[3] Available at https://2009-2017.state.gov/r/pa/prs/ps/2016/10/263578.htm.

[4] Gender identity is the innate sense of being female, male both or neither. AR 0605; *see also* note 19, *infra*.

[5] "It is undisputed that in every other respect Dana is qualified to receive a passport." *Zzyym I*, 220 F.Supp. at 1108.

2

because that gender marker is authorized by the International Civil Aviation Organization (ICAO), a United Nations agency that sets forth passport specifications.[6] AR 0016, 0026-0027, 0539. The Department denied Dana's passport application on December 24, 2014, and denied reconsideration on April 10, 2015, claiming the Department "requires the sex field on United States Passport to be listed as 'M' or 'F.'" AR 0033, 0052.

On October 25, 2015, Dana commenced this action[7] against the Department asserting a violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), including, as relevant here, that the Department acted contrary to the equal protection and due process guarantees under the Fifth Amendment to the U.S. Constitution. [Dkt. 1]. On November 26, 2016, this Court issued an Order holding that Defendants' denial of Dana's passport application was arbitrary and capricious under the APA and that the administrative record did not demonstrate that the Defendants' "decisionmaking process that resulted in the [binary-only gender] policy in question was rational." *Zzyym I*, 220 F.Supp. at 1114. Accordingly, the Court remanded the matter to the Department for reconsideration and declined to reach the constitutional claims, indicating it would not do so "unless and until it needs to." *Id*.

On March 6, 2017, after the Intersex Campaign for Equality[8] asked Dana to

---

[6] Several countries already issue passports with gender markers other than "F" or "M," including Australia, Canada, Denmark, Germany, India, Malta, Nepal, New Zealand and Pakistan. *See* AR 0373.

[7] Review of agency action in the district courts are processed as appeals. *Olenhouse v. Commodity Credit Corp*., 42 F.3d 1560, 1580 (10th Cir. 1994).

[8] Dana is the current Associate Director of the Intersex Campaign for Equality (aka Organisation Intersex International United States of America, or OII-USA).

represent the organization at an intersex conference in Amsterdam, Dana requested the Department issue a full-validity or temporary passport bearing an X or other third-gender marking on the sex field. AR 0067-0069. The Department refused to issue Dana a temporary passport, but the agency said it would soon complete its judicially mandated review of the binary-only Gender Policy. AR. 0075-0076. On May 1, 2017, the Department denied Dana's passport application for a second time, AR 0079-0080, and set forth five justifications[9] it claimed supported the agency's decision to "maintain its existing" Gender Policy.[10] On July 6, 2017, Dana filed a Supplemental Complaint [Dkt. 61] to include the Department's unlawful actions related to its May 2017 denial of Dana's passport application in the action. Thus, Dana's constitutional claims are ripe for review.

## STANDARD OF REVIEW

Constitutional claims are questions of law entitled to *de novo* review. *Custer Cnty. Action Ass'n v. Garvey*, 256 F.3d 1024, 1030 (10th Cir. 2001).

## ARGUMENT

### I. THE BINARY-ONLY GENDER POLICY IS SUBJECT TO HEIGHTENED SCRUTINY BECAUSE IT DISCRIMINATES BASED ON GENDER

The policy is incompatible with the Fifth Amendment's mandate that government accord all persons "the equal protection of the laws." Denying a passport to applicants

---

[9] *Sex Designation Policy for U.S. Passports*, Memorandum from Barry J. Conway to Regional Directors *et al.* (May 1, 2017) ("Justifications Memo") [AR 0082-0086].

[10] The "Gender Change" section of the Foreign Affairs Manual ("FAM") at 7 FAM § 1300 Appendix M, *et. seq.*, "provides policy and procedures passport specialists must follow" regarding a gender marker on a U.S. passport where the Department extrapolates its binary-only Gender Policy. *See generally* AR0178-0187.

who, like Dana,[11] cannot truthfully attest to being either male or female is subject to heightened scrutiny that attends "all gender-based classifications." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 136 (1994). The intentional exclusion of passport applicants who are neither male nor female from accurate identification and a core travel document based on *their* sex relegates them to a stigmatized, second-class status and offends the equal protection guarantee, which "withdraws from the Government the power to degrade or demean" in the way this binary-only Gender Policy does. *See United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013).

Given the gender-biased disparity of the policy, the Department must meet "the more rigorous standard of demonstrating an 'exceedingly persuasive' justification[.]" *Kitchen v. Herbert*, 961 F. Supp. 2d 1181, 1206-07 (D. Utah 2013), *aff'd*, 755 F. 3d 1193 (10th Cir. 2014). The Department must demonstrate that its policy "serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *United States v. Virginia*, 518 U.S. 515, 533 (1996). "Moreover, the classification must substantially serve an important governmental interest *today*, for 'in interpreting the [e]qual [p]rotection guarantee, [the Supreme Court has] recognized that new insights and societal understandings can reveal unjustified inequality . . . that once passed unnoticed and unchallenged.'" *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1684 (2017) (citing *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015)) (emphasis in original).

---

[11] Dana, an intersex U.S. citizen, is similarly situated to other passport applicants who seek to travel abroad for job and business opportunities; for cultural, political and social activities; or for all the reasons any other person may have. *See Aptheker v. Secretary of State*, 378 U.S. 500, 519-20 (1964) (Douglas, J., concurring).

The Gender Policy requires the application of heightened scrutiny for at least three reasons. First, the policy facially classifies applicants based on gender. *See* AR 0080 ("[T]he Department recognizes and issues passports in two sexes, male and female."); AR 0082 ("The Department only issues passports with the sex designations 'M' (male) and 'F' (female).") The express text of the policy precludes Dana and others who are neither male nor female from ever obtaining the most widely recognized identity and travel document because "[e]very applicant for a passport must indicate their sex as either male or female[.]" *Id*. For this reason alone, the policy warrants heightened scrutiny.

Second, the policy requires applicants to conform to gender-based stereotypes and expectations. The Department's male-or-female only passport regime traces back to an era when our laws were laden with "overbroad generalizations" about gender, including the erroneous dichotomous sex classification. *See generally* AR 0087-0090. "[P]olicies that professedly are based on reasonable considerations in fact may be reflective of 'archaic and overbroad' generalizations about gender . . . ." J.E.B., 511 U.S. at 135. The false narrative that gender is binary has "a constraining impact, descriptive though [it] may be of the way many people still order their lives." *Morales-Santana*, 137 S. Ct. at 1693; *see also Schroer v. Billington*, 424 F. Supp. 2d 203, 211, 213 n.5 (D.D.C. 2006) (noting gender "is not a cut-and-dried matter of chromosomes," and "intersex individuals are real and cannot be ignored."). All persons, whether intersex or not, are protected from discrimination based upon gender-based assumptions, expectations, stereotypes or norms*. See, e.g., Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 237 F. Supp. 3d 1126, 1130 (D. Colo. 2017).

Third, discrimination based on one's intersex status constitutes a *per se* gender classification entitled to heightened scrutiny. An exclusion on the basis of being "intersex, or sexually indeterminate, constitutes discrimination on the basis of the properties or characteristics typically manifested in sum as male and female—and that discrimination is literally discrimination 'because of sex.'" *Fabian v. Hosp. of Cent. Conn.*, 172 F. Supp.3d 509, 527 (D. Conn. 2016). *Cf. Glenn v. Brumby*, 663 F.3d 1312 (11th Cir.) (holding discrimination based on transgender status constitutes *per se* sex discrimination).

II.   **THE DEPARTMENT'S ACTIONS INFRINGE UPON THE FUNDAMENTAL RIGHT TO INDIVIDUAL DIGNITY AND AUTONOMY**

The Fifth Amendment's Due Process Clause protects each person's fundamental liberty interest in individual dignity and autonomy from unwarranted government intrusion. Courts protect deeply intimate and personal matters, such as marriage, procreation, family life, bodily integrity, and self-definition. *See, e.g., Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 851 (1992); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619 (1984); cf. *Abbott v. Abbott*, 560 U.S. 1, 11 (2010). Living openly and authentically is core to each person's identity; central to a person's dignity, autonomy, and self-expression; and "shape[s] an individual's destiny." *Obergefell*, 135 S. Ct. at 2593, 2597. Each person must be able to make such decisions for themselves, as they are essential to "retain[ing] their dignity as free persons." *Lawrence v. Texas,* 539 U.S. 558, 567 (2003).

"The Constitution promises liberty to all within its reach, a liberty that includes certain specific rights that allow persons . . . to define and express their identity." *Obergefell*, 135 S. Ct. at 2593. The Department itself recognizes that a person's "gender is an

7

integral part of that person's identity." 7 FAM § 1310(c) App. M, AR 0178. Each person's ability to live and express oneself in accord with one's gender constitutes a core aspect of individual self-definition, dignity and autonomy. *Lawrence*, 539 U.S. at 562 ("Liberty presumes an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct."). It is hard to imagine a greater intrusion than government requiring a person to live, work, travel, express oneself, and define oneself with an incorrect gender. It would impinge impermissibly on autonomy and self-definition for government to require a woman to use an identity document incorrectly identifying her as male, or to mandate that a man similarly represent himself as a woman. No less is true for Dana and other Americans who are neither male nor female, who seek simply to answer honestly and with dignity the question, "Who are you?"

Dana and others who fall outside the binary seek to live authentically and openly in accord with their gender, but the Department has punished them for exercising this fundamental right, thus diminishing their personhood in a manner the due process guarantee condemns. *Id* at 575. The Gender Policy deprives Dana of a fundamental liberty interest to individual dignity and autonomy, absent any rational justification at all, let alone the compelling justification and narrow tailoring required, *see Zablocki v. Redhail*, 434 U.S. 374, 388 (1978), and Point IV., *infra*, and therefore violates the Due Process Clause.

### III.   THE DEPARTMENT'S ACTIONS INFRINGE UPON THE FUNDAMENTAL RIGHT TO TRAVEL

The right to international travel is "part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment." *Kent v. Dulles*, 357 U.S. 116, 125 (1958); *see also DeNieva v. Reyes*, 966 F.2d 480, 485 (9th Cir. 1992)

("[T]he Supreme Court has explicitly recognized the right to international travel since 1958."). Restrictions on international travel cannot be left to the whim of an agency, but rather must be justified by the "weightiest considerations of national security." *Zemel v. Rusk*, 381 U.S. 1, 16 (1965); *accord Haig v. Agee*, 453 U.S. 280, 307 (1981). Furthermore, "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *Aptheker*, 378 U.S. at 508 (striking down a law denying passports to members of a Communist organization). Government action interfering with international travel must be "narrowly drawn to prevent the supposed evil" and "precision must be the touchstone of legislation affecting basic freedoms." *Id*. at 514.

The right to international travel is "a firmly entrenched right of an American citizen." *Omar v. Kerry*, No. 15-CV-01760-JSC, 2016 WL 617449, at *8 (N.D. Cal. Feb. 16, 2016). Where, as here, a passport applicant is not involved in unlawful conduct and no national security interest has been asserted, strict scrutiny applies to determine whether government may infringe on an individual freedom so "deeply engrained" in our history. *Aptheker*, 378 U.S. at 521 (Douglas, J., concurring).

The policy directly intrudes upon Dana's fundamental right to international travel. Licensed VA physicians under the penalty of perjury confirm that Dana is neither male nor female. AR 0028, AR 0030. The Gender Policy gives Dana two choices: (1) misrepresent their sex on the passport application, exposing Dana to criminal penalty, *see, e.g., Browder v. United States*, 312 U.S. 335, 337-40 (1941) (upholding conviction for benign use of a passport secured by a false statement); or (2) refuse to misrepresent

their sex and be denied a passport, *see* AR 0080. Therefore, the Gender Policy prevents Dana from truthfully completing the passport application and thereby prevents Dana's international travel. *See Lynd v. Rusk*, 389 F.2d 940, 942 (D.C. Cir. 1967) ("[D]enial of a passport has the undoubted practical consequence of effectively limiting travel").

## IV. THE GENDER POLICY FAILS ANY LEVEL OF SCRUTINY

Although discrimination against people who fall outside the binary is subject to some form of heightened scrutiny, the Gender Policy cannot withstand any level of review. Even under rational basis review, justifications must have a "footing in the realities of the subject addressed," *Heller v. Doe by Doe*, 509 U.S. 312, 321 (1993), and the government "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational," *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 446 (1985). The Department's justifications defy any rational explanation.

### a. The Policy Is Not Rationally Related To Accuracy Or Reliability

There is no rational link between requiring a passport applicant to submit a materially false statement about the applicant's gender and the Department's interest in ensuring passport information "is accurate and verifiable"; in fact, such a requirement sounds in irrationality. AR 0083. Identity documents are, by their very nature, intended to accurately reflect a person's identity. The Department "relies primarily on third party documentation issued by state, municipal, and/or foreign country authorities" such as birth certificates and driver's licenses, to ensure the integrity of a passport applicant's gender. AR 0083, 0189; *see also* 22 C.F.R. § 51.23(b). Yet the policy also notes that

state laws "vary" and may not accurately reflect a person's gender on primary identification permitted for establishing "evidence of identity." 7 FAM § 1321(b) App. M, AP 0179.[12] The Department also seeks to exclude intersex and nonbinary people by contending that no U.S. jurisdiction has a policy for issuing IDs "bearing a sex other than male or female". AR 0083. This outdated assertion is no longer true. To date, both Oregon[13] and the District of Columbia[14] permit residents to obtain driver's licenses with an X gender marker, and other states may soon follow suit. *See, e.g.,* AR 0189 n. 1. Despite the change, the Department has not said how it will establish gender as it adjudicates passport applications with such markers on state-issued identification.

The Department further claims it does not rely on amended birth certificates or court orders as evidence of change of sex, due to varying state standards. AR 0083. Yet, the agency uses such documents to establish evidence of identity. *See, e.g.,* 7 FAM § 1370(b) App. M, AR 0185-86 (allowing "certified copy of the amended birth document"); 7 FAM § 1321(e) App. M, AR 0180 (permitting name change[15] "by court order"). Here, Dana does not suggest that the Department should dispense with procedures to verify

---

[12] A mismatch of a gender marker listed on a driver's license is no bar to transgender people from obtaining an accurate and verifiable passport. Point IV(b), *infra*. In such cases, a transgender person with a binary gender identity of either male or female need only supplement their application with "medical certification from a licensed physician." AR 0180-81.

[13] Oregon policy effective July 1, 2017. *See* O.A.R. 735-062-0013.

[14] D.C. policy effective June 27, 2017. *See Mayor Boser Announces Addition of Gender Neutral Identifier to Drivers Licenses and Identification Cards*, Executive Office of the Mayor, at https://mayor.dc.gov/release/mayor-bowser-announces-addition-gender-neutral-identifier-drivers-licenses-and.

[15] Notably, names can change more than once in a person's lifetime. Moreover, a person's name also can be changed on a passport "by customary usage". AR 0180 (citing 7 FAM § 1300 App. C).

11

identity and citizenship, but asserts that the agency must do so in an even-handed manner. Issuing Dana an accurate passport would further the very goals the Department seeks to achieve.

### b. The Department's Utility-In-Matching Justifications Are Irrational

The second and third justifications of "utility" are both irrational. The justifications are based on using computer systems to data-match for law enforcement purposes – one for the Department itself and one on behalf of other government agencies. AR 0084. The agency uses its "name check clearance system" to ensure proper denial of passports. *Id*. Not only is gender one of many "data points used" in verifying identity (e.g., name, date of birth, place of birth), but the Department again fails to explain how it would match gender to databases where the "particular datum is unknown or unrecorded" or how it would otherwise "sync a transgender individual's passport information" when records list that person's gender differently from the application. *Zzyym I*, 220 F.Supp.3d at 1113. Moreover, without any record evidence, the Department merely speculates that using a third gender marker "could introduce verification difficulties," may "complicate" data sharing, and "likely cause" operational issues for third party government bodies. AR 0084. These justifications are threadbare conjectures and simply an administrative convenience rationale, which does not pass constitutional muster. See Point IV(d), *infra*.

### c. The Department's So-Called "Lack of Medical Consensus" Justification For The Gender Policy Has No Footing In Reality

Although the Department "lacks the medical expertise," regularly relies upon a "signed certification of a licensed physician," and concedes that medical treatment with respect to one's gender identity is "individualized," the agency erroneously claims lack

of "medical consensus as to how to define a third sex" as the basis for its exclusionary policy. AR 0085-0086. As a preliminary matter, the justification is based upon the agency's faulty premise that an intersex person must "transition" between two genders. It has long been medically established that an intersex person is born with mixed or ambiguous markers of sex that do not fit typical binary notions of male or female bodies. AR 0605; 7 FAM § 1350(a) App. M, AR 0185; AR 0765. For an intersex person like Dana, transition is not appropriate based simply upon Dana's being neither male nor female at birth.[16]

Notably absent from the agency's Justifications Memo is the Department's abiding reliance upon and deference to the medical "standards and recommendations for the World Professional Association for Transgender Health (WPATH) [AR 0646-0763], recognized as the authority . . . by the American Medical Association (AMA)." 7 FAM § 1310(b) App. M, AR 178. Moreover, WPATH Standards of Care do in fact allow for treatment of gender dysphoria for transgender[17] and gender-nonconforming people who are neither male nor female, including intersex[18] and nonbinary people.[19] AR 0658

---

[16] As explained in prior briefing, doctors subjected Dana to irreversible, invasive, painful and medically unnecessary surgery as an infant without Dana's consent. Plaintiff's Opening Brief [Dkt. 37], at p. 3; *see also* AR 0028, 0030 (passport application materials by licensed VA physicians attesting that Dana is neither male nor female, but intersex).

[17] In a recent survey, 35% of transgender respondents indicated that their gender identity was nonbinary or genderqueer. Sandy James et al., *The Report of the 2015 U.S. Transgender Survey*, National Center for Transgender Equality (Dec. 2016), at http://www.transequality.org/sites/default/files/docs/usts/USTS%20Full%20Report%20-%20FINAL%201.6.17.pdf

[18] AR 0718-0721(noting an intersex person may or may not experience gender dysphoria, but practitioners use WPATH Standards of Care based upon individualized, appropriate clinical treatment to alleviate gender dysphoria).

[19] AR 0598 (recognizing "that there is a spectrum of gender identities, and that choices of identity limited to Male or Female may be inadequate to reflect all gender identities:

(recognizing the "considerable diversity in . . . gender identities" and noting some people do not "consider themselves to be either male or female" and "may describe their gender identity . . . [as a] unique experience that may transcend a male/female binary understanding of gender.) To the extent the Department seeks further medical support, three former U.S. surgeon generals and the AMA Board of Trustees opine that cosmetic "normalizing" genital surgery "meant to 'match' the binary sex category [intersex children] are assigned by adults entrusted with their care" is inappropriate and harmful.[20]

In addition, the Department's claim that it "does not issue passports based on an individual's gender identity," but instead based upon appropriate treatment[21] for gender dysphoria, is disingenuous. Treatment for gender dysphoria is administered to bring the body "into alignment with [one's] *gender identity*." AR 0085. (emphasis added). Thus the Department devolves again to the core offense at issue: it issues passports with a gender marker matching a person's gender identity—but only if the applicant has a binary gender identity. The purported justification of a so-called "lack of medical consensus" fails even the lowest level of review because it is arbitrary, irrational and

---

an option of X or Other . . . may be advisable."); AR 0085 (stating "the Department is aware that there are individuals whose gender identity is neither male nor female.")

[20] *Re-Thinking Genital Surgeries on Intersex Infants*, Elders, Satcher and Carmona (October 26, 2016), at http://www.palmcenter.org/wp-content/uploads/2017/06/Re-Thinking-Genital-Surgeries-1.pdf ("[A] consensus is emerging that concludes that children born with atypical genitalia should not have genitoplasty performed on them absent a need to ensure physical functioning."); *Supporting Autonomy for Patients with Differences of Sex Development (DSD) (Resolution 3-A-16)*, AMA Report of the Board of Trustees Report 7-I-16, at https://assets.ama-assn.org/sub/meeting/documents/i16-bot-07.pdf.

[21] "'Appropriate' treatment… is treatment that successfully accomplishes such alignment with respect *to the particular individual*." AR 0085 (emphasis added).

has no "footing in the realities of the subject addressed." *Heller*, 509 U.S. at 321.

### d. Mere Invocation Of Feasibility Cannot Save The Gender Policy

The Department's fifth basis for maintaining its binary-only Gender Policy is that "altering Department systems to permit the issuance of passports with a third sex option would be expensive and time-consuming." AR 0086. In essence, the Department argues that maintaining the Gender Policy is administratively convenient, and the agency could avoid the costs required to implement a third sex designation on the U.S. passport by excluding people like Dana from obtaining a passport. However, the discriminatory policy cannot survive constitutional challenge.

In *Frontiero v. Richardson*, the Supreme Court recognized that "although efficacious administration of governmental programs is not without some importance, the Constitution recognizes higher values than speed and efficiency." 411 U.S. 677, 690–91 (1973) (internal quotes omitted). Arguments based on "administrative convenience" and cost concerns routinely fail constitutional review, especially in cases like this, where heightened scrutiny applies. *See, e.g., Plyler v. Doe*, 457 U.S. 202, 227 (1982) (preservation of resources); *Califano v. Goldfarb*, 430 U.S. 199, 240 (1977) (administrative convenience). These arguments fail even under rational basis review. *See, e.g., Lyng v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 485 U.S. 360, 377 (1988) ("[S]omething more than an invocation of the public fisc is necessary to demonstrate the rationality of selecting [one group], rather than some other group…."); *Diaz v. Brewer*, 656 F.3d 1008, 1014 (9th Cir. 2011) (where interest in "cost savings and reducing administrative burdens" "depend[s] on distinguishing between [two similarly situated groups,]" it "cannot survive rational basis review").

15

Even if the Department could argue "administrative convenience" and "costs of compliance" were sufficient governmental interests to survive any level of scrutiny, it has not presented any factual evidence to establish such interests. The Department concedes that it "has *not undertaken* a level of effort (LOE) estimation on the time and cost to add a third sex designation option [on passports.]" *Id.* (emphasis added). Under any level of scrutiny, the Constitution does not sanction the Department's attempt at maintaining its Gender Policy without record evidence. *See Frontiero*, 411 U.S. at 690 ("'[A]dministrative convenience' is not a shibboleth, the mere recitation of which dictates constitutionality"); *Plyler*, 457 U.S. at 227–28 ("There is no evidence in the record suggesting . . . any significant burden on the State's economy."). These platitudes, without any record evidence to determine the time, cost, or coordination necessary to place a third gender marker on a passport, do not outweigh Dana's constitutional rights.

## CONCLUSION

For the foregoing reasons, Dana respectfully request this Court to set aside and declare as unconstitutional the agency's decision to deny Dana's passport application. Respectfully submitted this 10th day of October 2017.

|  |  |
|---|---|
| Michael A. Ponto<br>Emily E. Chow<br>FAEGRE BAKER DANIELS LLP<br>2200 Wells Fargo Center<br>90 South Seventh Street<br>Minneapolis, MN 55402-3901<br>Phone: (612) 766-7000<br>Fax: (612) 766-1600<br>michael.ponto@faegrebd.com<br>emily.chow@faegrebd.com | /s/ Paul D. Castillo<br>Paul D. Castillo<br>LAMBDA LEGAL DEFENSE AND<br>EDUCATION FUND, INC.<br>3500 Oak Lawn Avenue, Suite 500<br>Dallas, TX 75219-6722<br>Phone: (214) 219-8585<br>Fax: (214) 219-4455<br>pcastillo@lambdalegal.org<br><br>*Attorneys for Plaintiff Dana Alix Zzyym* |

Brian Lynch
FAEGRE BAKER DANIELS LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO 80203-4532
Phone: (303) 607-3500
Fax: (303) 607-3600
brian.lynch@faegrebd.com

Hayley Gorenberg
M. Dru Levasseur
Demoya R. Gordon
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 1005
Phone: (212) 809-8585
Fax: (212) 809-0055
hgorenberg@lambdalegal.org
dlevasseur@lambdalegal.org
dgordon@lambdalegal.org

Camilla B. Taylor
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
105 West Adams Street, Suite 2600
Chicago, IL 60603-6256
Phone: (312) 663-4413
Fax: (312) 663-4307
ctaylor@lambdalegal.org

*Attorneys for Plaintiff Dana Alix Zzyym*

## CERTIFICATE OF SERVICE

I certify that on this 10th day of October, 2017, I electronically filed PLAINTIFF DANA ZZYYM'S OPENING BRIEF FOLLOWING THE DEPARTMENT'S RECONSIDERATION OF ITS GENDER POLICY with the Court using the CM/ECF system, which automatically serves all attorneys of record pursuant to D.C.COLO.LCivR 5.1(d).

/s/ Paul D. Castillo
Paul D. Castillo