**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-02362-RBJ

DANA ALIX ZZYYM,

    Plaintiff,

v.

REX W. TILLERSON, in his official capacity as Secretary of State; and
SHERMAN D. PORTELL, in his official capacity as Director of the Colorado Passport Agency
of the United States Department of State,

    Defendants.

---

**DEFENDANTS' RESPONSE BRIEF**

---

TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

FACTUAL BACKGROUND... .......................................................................................................3

ARGUMENT ...................................................................................................................................6

  I. Defendants Have Not Violated Plaintiff's Substantive Due Process Rights. ..........................6

    A. The Right to International Travel Is Not Fundamental and Plaintiff Has Not

       Been Denied that Right. ....................................................................................................8

    B. There Is No Fundamental Right to a Passport Designating the Bearer's Sex as "X." .....10

  II. Defendants Have Not Violated Plaintiff's Equal Protection Rights. ....................................11

    A. Plaintiff Has Not Shown Intentional Discrimination. ......................................................11

    B. The Department's Policy Is Not Based on a Suspect Classification. ..............................13

  III. The Department's Passport Policy is Constitutional under Any Standard. .........................15

CONCLUSION ..............................................................................................................................19

## INTRODUCTION

Plaintiff Dana Zzyym has brought this action to challenge the Department of State's denial of Plaintiff's application for a U.S. passport designating Plaintiff's sex as "X," rather than "M" or "F." Plaintiff alleges that the Department's decision violates Plaintiff's substantive due process and equal protection rights under the Fifth Amendment to the Constitution. The Department denied Plaintiff's request because of its policy requiring that each passport designate the sex of the passport holder as either male or female and has submitted an extensive administrative record showing that it has carefully reevaluated its policy and determined to maintain it for important reasons. The Court should, therefore, affirm the Department's decision and enter judgment for Defendants.

Plaintiff's constitutional challenges fail for several reasons. Plaintiff's substantive due process claim falls short because the Department has not deprived Plaintiff of a fundamental right or interest. The right to international travel is not fundamental and, even if it were, the Department has not prohibited Plaintiff from receiving a passport that is consistent with the Colorado driver's license that Plaintiff submitted to the Department as proof of identity and which designates Plaintiff's sex as female. Plaintiff's alternative argument is similarly flawed. There is no fundamental right to be issued a passport that designates the bearer's sex with an "X," and Plaintiff's attempts to frame the right more broadly as a right to individual dignity and autonomy is foreclosed by binding Supreme Court case law. Because the Department has not infringed upon a fundamental right or interest, its actions are subject to rational basis review, a standard the challenged actions easily satisfy.

Plaintiffs' equal protection claim fails because Plaintiff has not shown intentional discrimination. The Department's policy does not discriminate against intersex individuals

because, as Plaintiff has acknowledged, most intersex individuals have identification documents designating their sex as either male or female and can, therefore, obtain a passport reflecting their documented sex.  It also does not discriminate on the basis of gender identity, because U.S. passports exclusively reflect the passport holder's sex, based upon verifiable forms of documentation, and do not purport to reflect the holder's gender identity.  There is no evidence that the Department intended to discriminate against any group in reaffirming its policy.  Even if the Department's policy distinguished between individuals based on their intersex status, which it does not, Plaintiff has not identified a single court that has recognized intersex individuals as a suspect classification for purposes of equal protection analysis.  The Department's decision is, therefore, subject to the deferential rational basis standard and should be affirmed.

Finally, the Department has provided important reasons for its policy of requiring each passport to designate the holder's sex as either "M" or "F" that meet any level of constitutional scrutiny.  The Department has submitted a nearly 1,200 page administrative record that shows that it carefully reevaluated its passport policy and decided to maintain it for five reasons.  First, when issuing passports, the Department relies on identification documents issued by fifty-seven jurisdictions, and at the time of its decision, not one of those jurisdictions issued birth certificates, identification cards, or driver's licenses bearing a sex other than male or female.  Second, the Department uses information from other Federal and local agencies to determine if an individual is eligible to receive a passport and, as far as the Department is aware, all of those agencies' records systems recognize only two sexes: male and female.  Third, the Department shares passport data with other federal and local agencies, including law enforcement agencies, and most, if not all, of those agencies have systems that recognize only two sexes.  Fourth, the

Department cannot issue an identity document based solely on an individual's self-described gender identity. As there is no medical consensus as to how to define a third sex, the Department lacks a sound basis for designating a passport holder's sex as "X." And fifth, the Department's systems do not permit passports to be issued without designating the bearer's sex with either an "M" or "F" and altering those systems and the other Government systems that are configured to process passport data would be expensive and time consuming. Because the reasons for the Department's policy pass constitutional muster under any standard, the Court should affirm the Department's denial of Plaintiff's request for a passport designating Plaintiff's sex as "X."

## FACTUAL BACKGROUND

On September 2, 2014, Plaintiff submitted a passport application to the Colorado Passport Agency of the Department of State (Agency) in Aurora, Colorado. Administrative Record (AR), 0007-0022.[1] Along with the name, date of birth, social security number, and other fields that must be completely filled out to apply for a U.S. passport, each application form includes a field titled "Sex," with boxes for "M" and "F" to be checked by the applicant. AR 0007. Rather than checking one of the boxes, Plaintiff wrote "Intersex" on the application form, *id.*, and submitted a letter that stated that Plaintiff is intersex and requested a passport designating Plaintiff's sex with an "X," AR 0009. As proof of identity, Plaintiff submitted a Colorado driver's license that designated Plaintiff's sex as "F" for female. AR 0012. In addition, Plaintiff submitted a letter from a doctor at the Department of Veterans Affairs stating that Plaintiff "was born with ambiguous genitalia which would classify her as intersex," AR

---

[1] The Administrative Record has been filed with the Court as ECF Nos. 66-1 – 66-44.

0015, and an amended Michigan birth certificate listing Plaintiff's sex as "UnKnown," AR 0010; *see* ECF No. 1 ¶¶14, 22.

The Agency responded to Plaintiff's passport application with a letter, dated September 24, 2014, requesting additional information. AR 0023-24. In the letter, the Agency explained that, because "[t]he Department of State currently requires the sex field on United States passports to be listed as 'M' or 'F,'" it was unable to fulfill Plaintiff's request for a passport listing Plaintiff's sex as "X." *Id.* The Agency offered, however, to adjudicate Plaintiff's application for a passport designating Plaintiff's sex as female, consistent with Plaintiff's Colorado driver's license, if Plaintiff so requested. *Id.* The Agency also provided Plaintiff with information about how Plaintiff could apply for a passport listing Plaintiff's sex as male. *Id.*

Plaintiff submitted a letter, dated December 18, 2014, responding to the Agency's request for additional information. AR 0026-27. In the letter, Plaintiff acknowledged submitting a driver's license that designated Plaintiff's sex as female. *Id.* Plaintiff claimed, however, to have submitted the necessary documentation to receive a passport reflecting a sex different than the one listed on Plaintiff's identification evidence. *Id.* The documentation Plaintiff submitted consisted of two letters from doctors at the Veterans Administration Medical Center, in Cheyenne, Wyoming. AR 0028, 0030. In one letter, Dr. Orcutt stated that Plaintiff "has had the appropriate clinical treatment for transition to intersex." AR 0028. In the other letter, Dr. Johnson stated that Plaintiff "was born intersex," "identifies as intersex," and "has had surgery for transition to female genitalia." AR 0030.

In a letter dated December 29, 2014, the Agency issued its final decision on Plaintiff's passport application. AR 0033. The Agency's decision letter explained that, because Plaintiff had responded to its September 24, 2014 letter by indicating both in writing and in person that

4

Plaintiff did not want a passport to be issued unless it designated Plaintiff's sex as "X," and because the Department required the sex field in passports to contain either "M" or "F," the Agency could not fulfill Plaintiff's request and was denying Plaintiff's application for a passport. *Id.*

On October 25, 2015, Plaintiff filed this action challenging the Department's refusal to provide Plaintiff with a passport designating Plaintiff's sex as "X." ECF No. 1. Plaintiff brought claims under both the Administrative Procedure Act (APA) and the Due Process and Equal Protection Clauses of the Constitution. *Id.* On November 26, 2016, the Court concluded that the administrative record submitted by the Department at that time was insufficient to show that the decisionmaking process that resulted in the Department's policy was rational. *Zzyym v. Kerry*, 220 F.Supp.3d 1106, 1114 (D. Colo. 2016). The Court stated that the Department could potentially make the necessary showing, but the administrative record it had submitted was not sufficiently convincing. *Id.* The Court also clarified that it was not reaching Plaintiff's constitutional claims, before remanding the case to the Department for reconsideration. *Id.*

On May 1, 2017, the Department of State issued a new decision again denying Plaintiff's application for a passport designating Plaintiff's sex as "X." AR 0079-0080. On that same day, the Department issued a memorandum explaining that it had reviewed its policy of requiring passports to designate the sex of the passport holder with an "M" or "F," and had determined to maintain the policy. AR 0082-0090. The Memorandum then set forth in detail the reasons for the Department's determination. *Id.* On September 11, 2017, the Department filed the Administrative Record for its decisions (1) to deny Plaintiff's request for a passport designating Plaintiff's sex with an "X" and (2) to maintain its policy requiring passports to designate each bearer's sex as either "M" or "F." ECF Nos. 66-1 – 66-44.

The Administrative Record certified and filed by the Department contains 1,191 pages of records and is divided into three parts.[2] Part 1 contains records related to Plaintiff's passport application dating from the submission of Plaintiff's application forms on September 2, 2014, through the Department's denial letter, issued on December 30, 2014. AR 0007-0034. Part 2 contains records related to Plaintiff's passport application dating from a February 26, 2015 letter from Plaintiff's counsel through the Department's May 1, 2017 denial of Plaintiff's remanded application. AR 0035-81. Part 3 begins with the Passport Directorate's May 1, 2017 Memorandum describing the Department's reconsideration of its policy requiring U.S. passports to designate the sex of the passport holder as either male or female and setting forth the reasons for the Department's determination to maintain that policy. AR 0082-86. Part 3 also contains four subparts with materials that the Department considered in reevaluating and determining to maintain its passport policy. AR 0087-1191.

## ARGUMENT

Plaintiff's Supplemental Complaint includes two counts– a substantive due process claim and an equal protection claim. ECF No. 61. As the Department has not violated Plaintiff's due process or equal protection rights, the Court should affirm the Department's decision to refuse Plaintiff's request for a passport indicating Plaintiff's sex with an "X."

### I.   Defendants Have Not Violated Plaintiff's Substantive Due Process Rights.

In the Supplemental Complaint, Plaintiff alleges that the Department has deprived Plaintiff of fundamental rights under the Due Process Clause of the Fifth Amendment. *Id.* at ¶¶31-40. "The Supreme Court has described two strands of the substantive due process doctrine." *Seegmiller v. Laverkin City*, 528 F.3d 762, 767 (10th Cir. 2008). One strand protects

---

[2] An itemized index of the Administrative Record is set out in ECF No. 64-1(AR 0002-0006).

primarily fundamental liberty and property interests, "while the other protects against the exercise of governmental power that shocks the conscience." *Id*. Plaintiff alleges only that the Department has violated the first strand, by infringing on Plaintiff's fundamental rights and liberty interests. ECF No. 61 ¶34.

A fundamental property or liberty interest is "one that is deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty." *See Seegmiller*, 528 F.3d at 767. If Government action infringes on a "fundamental" interest, the action is reviewed under strict scrutiny. *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1181 (10th Cir. 2009). "'[I]dentifying a new fundamental right subject to the protections of substantive due process is often an uphill battle, as the list of fundamental rights is short.'" *Seegmiller*, 528 F.3d at 770 (quoting *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007)). The Supreme Court has counseled restraint because recognizing such rights, "'to a great extent, places the matter outside the arena of public debate and legislative action' and risks transforming the Due Process Clause 'into the policy preferences of the Members of the Court.'" *Id.* at 770 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).

Courts in the Tenth Circuit analyze whether the claimed right is fundamental in two steps. First, the court must "carefully describe the asserted fundamental liberty interest." *Seegmiller*, 528 F.3d at 769 (quoting *Glucksberg*, 521 U.S. at 721). "[V]ague generalities … will not suffice." *Chavez v. Martinez*, 538 U.S. 760, 776 (2003). Second, the court must decide "whether the asserted liberty interest, once described, is 'objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Seegmiller*, 528 F.3d at 769 (quoting *Glucksberg*, 521 U.S. at 721).

Absent a fundamental right, an alleged infringement of an interest must be reviewed under the deferential rational basis test. *See id.* at 771-72. Under rational basis review, "[t]he burden is on the plaintiff to show the governmental act complained of does not further a legitimate state purpose by rational means." *Id.* at 772. When a Government action does not impinge upon a fundamental right, "[t]he arbitrariness of government action must be extreme for the action to violate substantive due process." *Schanzenbach v. Town of Opal, Wyo.*, 706 F.3d 1269, 1277 (10th Cir. 2013).

### A.  The Right to International Travel Is Not Fundamental and Plaintiff Has Not Been Denied that Right.

Plaintiff's first substantive due process argument is that the Department has infringed on Plaintiff's fundamental right to international travel. ECF No. 61 ¶35. The Supreme Court, however, has explained that, while the right to interstate travel is fundamental, the "right" to international travel is not:

> [T]his Court has often pointed out the crucial difference between the freedom to travel internationally and the right of interstate travel. The constitutional right of interstate travel is virtually unqualified. By contrast the "right" of international travel has been considered to be no more than an aspect of the "liberty" protected by the Due Process Clause of the Fifth Amendment. As such this "right," the Court has held, can be regulated within the bounds of due process.

*Haig v. Agee*, 453 U.S. 280, 307 (1981).

In its Opening Brief, Plaintiff relies on the Supreme Court's decision in *Kent v. Dulles*, 357 U.S. 116 (1958) to argue that an infringement of the right to international travel triggers heightened scrutiny. ECF No. 65 at 8-9. The Supreme Court, however, has specifically noted that, in *Kent*, the rights to interstate travel and international travel were treated indiscriminately, and that subsequent cases, including *Agee*, have rejected that position. *Regan v. Wald*, 468 U.S. 222, 241, n.25 (1984). Plaintiff also cites to *Zemel v. Rusk*, 381 U.S. 1 (1965) and *Aptheker v.*

8

*Secretary of State*, 378 U.S. 500 (1964), in support of the argument that the right to international travel is a fundamental right. ECF No. 65 at 9. Like *Kent*, however, *Zemel* and *Aptheker* were decided well before the Supreme Court decided *Agee* and stated definitively that international travel does not implicate a fundamental right. Plaintiff's claim that the Department has deprived Plaintiff of the right to international travel, therefore, should be reviewed under the deferential rational basis standard.

Moreover, the Department has not denied Plaintiff the right to international travel. As shown in the Administrative Record, the Department offered to provide Plaintiff with a passport that designated Plaintiff's sex as female, consistent with the Colorado driver's license that Plaintiff provided with Plaintiff's passport application, AR 0023-24, and maintains today, AR 0074. It is Plaintiff's choice not to request a passport that is consistent with that identification documentation – not the Department's passport policy – that has kept Plaintiff from receiving a passport that would presumably allow Plaintiff to travel internationally.[3] As the Department has not deprived Plaintiff of the right to international travel, and its passport policy is clearly rational, the Court should enter judgment for Defendants on Plaintiff's substantive due process claim.

---

[3] Plaintiff's argument that Plaintiff could be subject to criminal penalties for requesting a passport designating Plaintiff's sex as female is baseless. The case cited in support of Plaintiff's argument, *Browder v. United States*, 312 U.S. 335, 336 (1941), in which an individual was criminally prosecuted after applying for four different passports under four different names, is distinguishable. Here, a passport with an "F" designation would be consistent with (i) the Colorado driver's license Plaintiff provided as proof of identification, AR 0012, and (ii) Plaintiff's renewal of that driver's license, again designating Plaintiff's sex as female, in February 2015, AR 0074. Moreover, the Department did not require Plaintiff to misrepresent Plaintiff's sex in order to obtain a passport. Plaintiff was asked only to indicate whether she "wished to receive a passport listing [Plaintiff] as female as shown on [Plaintiff's] driver's license." AR 0023.

### B.     There Is No Fundamental Right to a Passport Designating the Bearer's Sex as "X."

Plaintiff's second substantive due process argument is that, by denying Plaintiff's request for a passport designating Plaintiff's sex with an "X," the Department has infringed on Plaintiff's "fundamental liberty to make personal choices central to individual liberty and autonomy." ECF No. 61 at 9.  Plaintiff relies primarily on the Supreme Court's decision in *Obergefell v. Hodges*, 135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015), in arguing that the Department has infringed upon the Plaintiff's "fundamental right to individual dignity and autonomy." ECF No. 65 at 7.  In *Obergefell*, the Supreme Court explained that the fundamental liberties protected by the Due Process Clause "extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs." *Obergefell,* 135 S. Ct. at 2597.  Notably, however, the Court stated that only "certain" decisions within this general category of choices rise to the level of fundamental liberties.  *Id.*; *see also Seegmiller*, 528 F.3d at 771 ("[A]s the Court made clear in *Glucksberg*, not all important, intimate, and personal decisions are protected by substantive due process.") (quotation omitted).  After speaking in general terms about individual dignity and autonomy, the Court analyzed the claim in *Obergefell* based on the specific right asserted: the right to marry. *Id.* at 2598.

Plaintiff here identifies no such specific right, but instead asserts broadly that the Department's policy deprives Plaintiff of "a fundamental liberty interest to individual dignity and autonomy." ECF No. 65 at 8.  This assertion, however, provides nothing more than the "[v]ague generalities" that the Supreme Court has expressly instructed "will not suffice" to define a right or interest asserted for purposes of substantive due process analysis. *Chavez*, 538 U.S. at 776.  The Tenth Circuit's two-step analysis requires a court to "carefully describe" the specific right that is being asserted. *See Seegmiller*, 528 F.3d at 769.  Here, Plaintiff is asserting

10

the right to be issued a U.S. passport designating Plaintiff's sex as "X." At step two, the court determines whether the asserted right is "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty." *Id.* As an initial matter, individuals do not have a right to have particular information printed in a U.S. Government issued passport, a document that "at all times remains the property of the United States and must be returned to the U.S. Government upon demand." 22 CFR § 51.7 (a). In any case, the "right" Plaintiff asserts – the right to a U.S. passport designating Plaintiff's sex as "X" – is neither deeply rooted in our nation's history and tradition nor implicit in the concept of ordered liberty. Plaintiff's substantive due process claim is, therefore, subject to rational basis review. As explained below, the Department's decision easily meets that standard.

## II.    Defendants Have Not Violated Plaintiff's Equal Protection Rights.

In the second count in Plaintiff's Supplemental Complaint, Plaintiff alleges that the Department's decision to deny Plaintiff a passport indicating Plaintiff's sex with an "X" violated Plaintiff's equal protection rights. ECF No. 61 ¶¶41-56. Courts in the Tenth Circuit analyze equal protection claims in two steps. *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012). "First, [they] ask whether the challenged state action intentionally discriminates between groups of persons." *Id.* (emphasis added). Second, if a court identifies an act of intentional discrimination against a particular group, it must then determine whether the discrimination can be "justified by reference to some upright government purpose." *Id.* Plaintiff's equal protection claims fails at both steps.

### A.    Plaintiff Has Not Shown Intentional Discrimination.

Plaintiff's equal protection challenge does not survive the first step. "Discriminatory intent … 'implies more than intent as volition or intent as awareness of consequences.'" *Id.* (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). "It requires that the

11

decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of the law's differential treatment of a particular class of persons." *Id.* Thus, a discriminatory effect "does not run afoul of the Constitution unless it is an intended consequence of state action." *Id.* "[F]or a constitutional violation to take place, an intent to discriminate must be present." *Id.*

In determining to maintain its passport policy, the Department did not intentionally discriminate against any particular group. Contrary to Plaintiff's arguments, the passport policy does not discriminate against intersex individuals. As Plaintiff acknowledges, most intersex individuals identify as either male or female, ECF No. 1 ¶13 ("As with any other person, an intersex person eventually may identify as female, male, or, less commonly but with some regularity, as both or neither."), and are, therefore, not affected by the Department's passport policy, *id.* at ¶81 ("If Plaintiff were intersex and also identified as either male or female, Plaintiff would qualify for and be issued a passport for international travel by the Department."). Nor does the Department's policy intentionally discriminate on the basis of gender identity. The Department issues passports that reflect an applicant's documented sex, which is the sex that is designated on identification documents that meet the Department's requirements, not an applicant's gender identity.

There is no evidence that the Department determined to maintain its passport policy with a discriminatory intent. Instead, as Department's Policy Memorandum explains, the Department determined to maintain its policy to ensure that the sex field, which is one of the fields use to establish a passport holder's identity, is verifiable, and that relevant passport-related data can thus be efficiently shared between the Department and other federal, state and local agencies. AR 0082-0090. Because the Department does not intentionally discriminate

12

against individuals whose gender identity differs from their documented sex, the Court should deny Plaintiff's equal protection claim.

### B. The Department's Policy Is Not Based on a Suspect Classification.

Even if the Court reaches the second step of the equal protection analysis, Plaintiff's equal protection claim still fails. The standard of review applicable to equal protection claims depends on the nature of the group that is being discriminated against and the rights that are allegedly being impinged. *See SECSYS, LLC*, 666 F.3d at 685. When the Government discriminates based on "suspect classifications," such as race or national origin, courts apply "strict scrutiny" and will sustain the Government action only if it is narrowly tailored to serve a compelling state interest. *Okla. Educ. Ass'n v. Alcoholic Beverage Laws Enf't Comm'n*, 889 F.2d 929, 932 (10th Cir. 1989). When the Government discriminates based on "quasi-suspect" classifications, such as gender, illegitimacy, and alienage, courts apply "intermediate" scrutiny and will uphold the government action only if it is substantially related to an important or substantial state interest. *Id*. Government actions that discriminate between groups on other bases are subject to rational basis review. *SECSYS, LLC*, 666 F.3d at 685. As explained above, under the rational basis standard, "[t]he burden is on the plaintiff to show the governmental act complained of does not further a legitimate state purpose by rational means." *Seegmiller*, 528 F.3d at 772.

In Plaintiff's Opening Brief, Plaintiff makes three arguments for heightened review. Each is misplaced. First, Plaintiff argues that the Department's policy discriminates based on gender identity. ECF No. 65 at 6. But the Department issues U.S. passports reflecting applicants' sex, as verified by the required documentation, not their gender identity. The Department does not ask passport applicants to provide their gender identity, *see* AR 0007, and "does not issue passports based on an individual's gender identity (*i.e.,* their perception, or

13

personal experience, of gender)," AR 0085. The Department's policy of issuing passports on the basis of applicants' documented sex applies uniformly to all applicants and does not, therefore, discriminate on the basis of gender identity. Nor is it a *per se* gender classification. ECF No. 65 at 7. Plaintiff is not excluded from being issued a passport. Rather, like all other applicants, Plaintiff may be issued a passport that reflects Plaintiff's documented sex, but not Plaintiff's gender identity.

Second, Plaintiff argues that the Department's policy requires applicants to conform to gender stereotypes. ECF No. 65 at 6. Plaintiff's argument again misconstrues the Department's policy. The Department issues passports based exclusively on applicants' documented sex, and neither U.S. passports nor passport application forms reference applicants' gender identity or presentation in any way. The Department's policy of issuing passports based on an applicant's documented sex thus does not require applicants to conform to gender-based stereotypes and expectations.

Finally, Plaintiff argues that the Department's policy discriminates on the basis of intersex status. ECF No. 65 at 7. As explained above, however, the Department's policy does not discriminate against intersex individuals, most of whom are documented as either male or female, ECF No. 1 ¶13, and are, therefore, not affected by the Department's passport policy, *id.* at ¶81. The policy affects only those individuals who choose not to identify as male or female on the Department's passport application form, a group that is clearly not a suspect class.

Regardless, Plaintiff concedes that the Supreme Court has not identified individuals who choose not to identify as either male or female or intersex individuals as a suspect class, ECF No. 61 ¶53 ("The United States Supreme Court has not yet determined the level of scrutiny applicable for laws that classify persons for adverse treatment based on their status as people

who cannot identify as male or female or their status as intersex with nonbinary gender."), and Plaintiff has not cited to a single case treating either group as a suspect class for purposes of analyzing an equal protection claim.[4] With regard to Plaintiff's equal protection claim, therefore, the Department's actions are subject to rational basis review, a standard they more than meet.

### III. The Department's Passport Policy is Constitutional under Any Standard.

On May 1, 2017, the Department issued a Memorandum explaining that it had reevaluated its policy of requiring passports to designate each passport holder's sex with an "M" or "F" and had determined to maintain that policy for five reasons. AR 0082-0090. The Memorandum then set forth each of the five reasons in detail. *Id.* Based on these reasons, the Department's policy passes constitutional muster under any standard.

First, the policy ensures that the information in passports is accurate and verifiable. AR 0083. When issuing passports, the Department relies on identification documents issued by U.S. jurisdictions. *Id.* There are fifty-seven (57) jurisdictions that issue identification documents and, at the time of its decision, the Department was not aware of a single one that issued birth certificates, identification cards, or driver's licenses bearing a sex other than male or female. *Id.*

Plaintiff argues that the Department's reasoning is outdated because two jurisdictions, Oregon and the District of Columbia, began issuing driver's licenses and identification cards with an "X" gender marker after the Department made its decision. ECF No. 65 at 11. This

---

[4] Plaintiff also attempts to trigger a heightened level of scrutiny by alleging that the Department's refusal to issue a passport listing Plaintiff's sex as "X" discriminates against Plaintiff with respect to the "fundamental right to travel" and "liberty interests in individual dignity and autonomy." ECF No. 61 ¶54. These allegations simply restates Plaintiff's due process claim, which fails for the reasons discussed above. *See supra* p. 6-11.

15

should have no impact at all on the Department's conclusion.[5]  The fact that two jurisdictions have begun issuing driver's licenses with an X gender marker does not diminish the fact that, as far as the Department is aware, no jurisdiction issues original birth certificates listing a sex other male or female, and fifty-five jurisdictions still do not issue driver's licenses or identification cards that designate the bearer's sex as "X."  Because the overwhelming majority of records that the Department relies on to issue passports still designate the bearer's sex as either male or female, the Department's policy helps to ensure that the information in passports is accurate and reliable.

Second, the Department's policy allows it to use data reliably from other Government agencies, including the Social Security Administration, Department of the Treasury, Department of Homeland Security, and state and local law enforcement agencies, to determine whether an individual is entitled to a passport.  AR 0084.  Sex is one of the primary data points the Department uses to reliably match applicants to data shared by other agencies, and, at the time of its decision, the Department was not aware of any agency that kept records recognizing more than two sexes.  *Id.*

Third, the Department's policy allows other federal and local agencies to use the Department's passport data effectively.  AR 0084-85.  For example, federal, state and local law enforcement agencies use passport data for a wide range of purposes, from identifying victims

---

[5] In an APA challenge such as this, "[j]udicial review of agency action is normally restricted to the administrative record." *Citizens for Alternatives to Radioactive Dumping v. U.S. Dep't of Energy*, 485 F.3d 1091, 1096 (10th Cir. 2007).  Extra-record evidence should be considered only in "extremely limited circumstances" that include (1) the agency's failure to consider relevant factors or the consideration of factors outside the record, (2) a strong showing of bad faith or improper behavior, or (3) specific circumstances involving scientific and technical evidence.  *Id.*  The changes to the law in Oregon and the District of Columbia were not before the Department when it made its decision and are not part of the administrative record in this case.

to locating persons of interest. *Id.* To the best of the Department's knowledge, all U.S. law enforcement records use only male and female to designate the sex of individuals in their records, and adding a new sex category would impair compatibility and could compromise law enforcement efforts.

In Plaintiff's Opening Brief, Plaintiff argues that because the Department and other federal and local agencies use multiple data points to match records, the Department's second and third reasons are "irrational." ECF No. 65 at 12. But Plaintiff's situation provides one example of how issuing a passport designating an individual's sex as "X" could make it more difficult for the Department to match and share data with a state agency. The records of the Colorado Division of Motor Vehicles designate Plaintiff's sex as female. AR 0074. If the Department were to issue Plaintiff a passport designating Plaintiff's sex as "X," the Department and State of Colorado could not use Plaintiff's sex as a data point to match relevant records. While the Department and Colorado may still be able to use other data points to match and share records, having records with inconsistent sex markers could make matching and sharing data more difficult. Accordingly, the Department appropriately concluded that its policy "facilitates data-matching of passport records." AR 0085. In addition, the policy prevents "operational complications" for other agencies that would likely be caused if the Department were to introduce a new gender marker. AR 0084.

Plaintiff also argues that the fact that the Department allows transgender individuals who present medical certifications to receive passports that list their sex differently than their evidence of identity and citizenship undercuts the Department's data-matching justifications. ECF No. 65 at 12. While sex transitions from male to female and vice versa do create a risk of data mismatch, they do not present the significant risk of data errors – of many varieties – that

would result from introducing an entirely new sex designation that may not even be recognized by many data sources.   The Department's practice with regard to sex transitions does not present the compatibility complications for data-sharing that would likely arise if the Department were to introduce a new, third sex marker.  *See* AR 0084.

Fourth, because there is no generally accepted medical consensus as to how to define a third sex, designating an individual's sex as "X" would not provide reliable identifying information.  AR 0085.  Although Plaintiff takes issue with this justification, ECF No. 65 at 11-15, Plaintiff's own complaints and passport application materials highlight the difficulties with recognizing a third sex marker.  In Plaintiff's initial Complaint, Plaintiff explained that, "'[i]ntersex' is an umbrella term used to describe a wide range of natural bodily variations." ECF No. 1 ¶11; *see also* AR 0783-0787; AR 0599-0604.  In addition, Plaintiff submitted with Plaintiff's passport application letters from three different doctors who had varying views regarding Plaintiff's status and treatment.  *See* AR 0015 (Plaintiff "was born with ambiguous genitalia which would classify her as intersex."); AR 0028 (Plaintiff "has had appropriate clinical treatment for transition to intersex."); AR 0030 (Plaintiff "identifies as intersex.  She has had surgery for transition to female genitalia.").  This is consistent with the Department's careful examination of the evidence supporting its conclusions that there is no general medical consensus as to how to define a third sex, and thus that it does not have the standards necessary to determine whether it would be accurate to indicate in a U.S. passport that an individual is a third sex.

Fifth, it would take considerable time and resources for the Department – and other agencies that rely on passport data, such as the Department of Homeland Security – to alter their systems to add a third sex designation.  AR 0086.  Plaintiff argues that cost and preservation of

18

resources alone are insufficient to justify a Government decision distinguishing between similarly situated groups of people, ECF No. 65 at 15, but this was not the sole reason for the decision here. Rather, the burden of altering Department systems was appropriately considered as a factor in the Department's determination to maintain its policy.

In sum, the Department's decision at issue here not only has a clear, reasoned basis, but is substantially related to important Government interests and, thus, satisfies not only rational basis review but, even if applicable, intermediate constitutional review as well.

## CONCLUSION

For the foregoing reasons, the Court should affirm the Department's decision and enter judgment for Defendants.

Dated: December 1, 2017                             Respectfully submitted,

CHAD A. READLER
Principle Deputy Assistant Attorney General
Civil Division

ROBERT C. TROYER
Acting United States Attorney
District of Colorado

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

*/s/ Ryan B. Parker*
RYAN B. PARKER
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
Telephone: (202) 514-4336
Email: ryan.parker@usdoj.gov

Attorneys for Defendants