## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:15-cv-02362-RBJ

DANA ALIX ZZYYM,

      Plaintiff,

vs.

REX W. TILLERSON, in his official capacity as Secretary of State; and
SHERMAN D. PORTELL, in his official capacity as the Director of the Colorado Passport
Agency for the United States Department of State,

      Defendants.

---

### PLAINTIFF DANA ZZYYM'S REPLY BRIEF FOLLOWING
### THE DEPARTMENT'S RECONSIDERATION OF ITS GENDER POLICY

### ORAL ARGUMENT REQUESTED

---

      The U.S. Department of State's ("Department")[1] veiled efforts to paper the

administrative record to support its binary-only gender policy ("Gender Policy") show no

adequate justification—under any standard of review—for denying Dana Zzyym an accurate

passport. As an intersex person who is neither male nor female, Dana should not have to lie

about their gender (and indeed is appropriately prohibited from doing so) to obtain "the world's

premier identity credential." [Dkt. 41 at 3]. For the reasons set forth in Plaintiff's Opening Brief

[Dkt. 65], and in prior briefing [Dkt. 37 and Dkt. 45], the Department's actions and its

---

[1] References to the Department are used throughout to designate Defendant Tillerson and
Defendant Portell, in their official capacities on behalf of the U.S. Department of State.

1

underlying binary-only Gender Policy violate the Fifth Amendment's equal protection and due

process protections.

## I.       The Gender Policy Is Unconstitutional Under Any Standard

Discrimination against people who fall outside the gender binary is properly subject to

heightened scrutiny, *infra* II and III, but the purported "five reasons" set forth by the Department

do not pass even the lowest form of constitutional review.  All but one of the five proffered

reasons were already rejected by this Court in *Zzyym v. Kerry*, 220 F. Supp. 1106 (D. Colo.

2016).  The Department notably avoids discussing key deficiencies in its purported justifications,

including 1) the agency's established reliance on WPATH Standards that, in fact, do recognize

identities of nonbinary individuals, 7 FAM § 1310(b) App. M, *see* Administrative R. [Dkt. 64-01

through 64-44] [hereinafter "AR"], 0178; 2) the faulty premise that a nonbinary intersex person

must "transition" between two genders, Dkt. 65 at 13; 3) the Department's issuance of passports

for transgender people consistent with their gender identity, *id*. at 14; 4) the processing of

passports for applicants who obtain an "X" gender maker on their driver's license in Oregon,

California, and the District of Columbia, *id.* at 11;[2] and 5) the ability of foreign nationals bearing

an "X" on their passport to enter the United States.

The Department further provides no rational explanation for disregarding Dana's sworn

physician statements from the Department of Veteran Affairs, all attesting that Dana is neither

---

[2] *See* AR 0189, n.1; Gender Recognition Act, 2017 Cal. Legis. Serv. Ch. 853 (enacting
California SB-179, referenced in AR 0189, n.1). Relatedly, Washington State passed a rule on
December 27, 2017, allowing individuals to amend their birth certificate to have a non-binary
sex designation (represented as an "X"), which will go into effect on January 27, 2018. *See*
Wash. Admin. Code § 246-490-075 (2017).

male nor female. Instead, the Department claims passports are issued "based *exclusively* on applicants' documented sex," Dkt. 68 at 14 (emphasis added), and "relies on identification documents issued by U.S. jurisdictions," such as birth certificates, identification cards, or drivers licenses, *id*. at 15. Yet the Gender Policy at 7 FAM § 1310(a) App. M belies this assertion, since the policy establishes a process passport specialists "must follow when an applicant indicates a gender on the 'sex' line on the passport application with information *different from* some or all of the submitted citizenship and/or identity evidence[.]" AR 178 (emphasis added). The Department's acknowledgment that an applicant's gender may differ from proffered identity documents shows that the incorrect "F" gender marker listed on Dana's Colorado driver's license is not a valid and reasoned basis for denying Dana a passport.[3]

## II.     The Gender Policy Warrants Heightened Scrutiny Because It Facially Classifies Based on Gender

The Department's Gender Policy is intentional gender-based discrimination. *United States v. Virginia*, 518 U.S. 515, 555 (1996); *see also* Dkt. 45 at 9-10. "Intentional discrimination can take several forms.  When a distinction between groups of persons appears on the face of a state law or action, an intent to discriminate is presumed and no further examination of legislative purpose is required."  *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012) (noting in the alternative that "[e]ven generally applicable laws initially enacted with entirely proper (nondiscriminatory)

---

[3] When the Department first adjudicated Dana's passport application in December 2014, the Gender Policy provided an applicant may provide evidence of identity with, *inter alia*, "[a]cceptable primary ID in the old gender." 7 FAM 1321(b)(3), AR 0170.  After Dana filed this lawsuit, the Department changed the language in March 2016 without explanation to "[a]cceptable primary ID in the birth gender if it readily identifies the applicant." AR 0179. Regardless, Dana provided sufficient proof of identity with multiple identity documents, including Dana's Veteran ID cards (federally issued identification with photograph). *See* 22 C.F.R. § 51.23(a); AR 0013-14.

US.115912009.01

purposes can themselves become tools of intentional discrimination in the course of their

enforcement."). Here, the Gender Policy facially classifies applicants based on gender, requires

applicants to conform to gender-based stereotypes and expectations (i.e., the inaccurate and

outdated binary model), and constitutes per se gender discrimination based upon Dana's status as

a nonbinary intersex person who is neither male nor female. [*See* Dkt. 65 at 4-7].

### III.     The Department Infringes Upon Dana's Substantive Due Process Rights

The Department's Gender Policy denies Dana the fundamental right to international travel.

The Department's suggestion that *Haig* "stated definitively that international travel does not

implicate a fundamental right" is patently false. [Dkt. 68 at 9]. Rather, international travel

"remains a firmly entrenched right of an American citizen."  *Omar v. Kerry*, 206 WL 617449, at

*8 (N.D. Cal. 2016) ("[A] citizen's right to [international] travel is a fundamental right and that

revocation of a passport… significantly infringes upon that right."). As discussed in prior

briefing, *Haig* confirmed the strict scrutiny standard employed in *Aptheker v. Secretary of State*,

378 U.S. 500 (1964). [*See* Dkt. 37 at 23-25; Dkt. 45 at 10-12].

The Gender Policy also infringes upon Dana's fundamental right to individual dignity and

autonomy. Dana does not seek to have "particular information printed in a U.S. Government

issued passport," Dkt. 68 at 11, but only accuracy in the Department's "world premier identity

document." Constitutionally protected liberty interests are those that implicate "individual

dignity and autonomy"—that is, decisions or actions that "shape an individual's

destiny." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2597, 2599 (2015). Dana's liberty interest in

living in accordance with their core identity is severely infringed by the Department's refusal to

recognize that identity, which prevents Dana (and other people who are neither male nor female)

from "the ability independently to define one's identity" that is "central to any concept of liberty." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619 (1984); *cf. Karnoski v. Trump*, No. C17-1297-MJP, 2017 WL 6311305, at *8 (W.D. Wash. Dec. 11, 2017) (policy precluding transgender people from openly serving in the military "interferes with Plaintiffs' ability to define and express their gender identity, and penalizes Plaintiffs for exercising their fundamental right to do so openly by depriving them of employment and career opportunities").

Respectfully submitted this 8th day of January, 2018.

|  | */s/ Brian L. Lynch* |
|---|---|
| Paul D. Castillo | Brian L. Lynch |
| LAMBDA LEGAL DEFENSE AND | FAEGRE BAKER DANIELS LLP |
| EDUCATION FUND, INC. | 3200 Wells Fargo Center |
| 3500 Oak Lawn Avenue, Suite 500 | 1700 Lincoln Street |
| Dallas, TX 75219-6722 | Denver, CO 80203-4532 |
| Phone: (214) 219-8585 | Phone: (303) 607-3500 |
| Fax: (214) 219-4455 | Fax: (303) 607-3600 |
| pcastillo@lambdalegal.org | brian.lynch@faegrebd.com |

*Attorneys for Plaintiff Dana Alix Zzyym*

## CERTIFICATE OF SERVICE

I certify that on this 8th day of January, 2018, I electronically filed PLAINTIFF DANA ZZYYM'S REPLY BRIEF FOLLOWING THE DEPARTMENT'S RECONSIDERATION OF ITS GENDER POLICY with the Court using the CM/ECF system, which automatically serves all attorneys of record pursuant to D.C.COLO.LCivR 5.1(d).

*/s/ Brian L. Lynch*
Brian L. Lynch

US.115912009.01