IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 15-CV-02362-RBJ

DANA ALIX ZZYYM,

     Plaintiff,

     vs.

MICHAEL R. POMPEO, in his official capacity as Secretary of State; and SHERMAN PORTELL, in his official capacity as Director of the Colorado Passport Agency of the United States Department of State,

     Defendants.

------------------------------------------------------------------

REPORTER'S TRANSCRIPT
Oral Argument

------------------------------------------------------------------

     Proceedings before the HONORABLE R. BROOKE JACKSON, Judge, United States District Court for the District of Colorado, commencing on the 29th day of May, 2018, in Courtroom A902, United States Courthouse, Denver, Colorado.

APPEARANCES

For the Plaintiff:
PAUL D. CASTILLO, Lambda Legal Defense & Education Fund, 3500 Oak Lawn Ave., Ste. 500, Dallas, TX 75219

ANN E. PROUTY and BRIAN L. LYNCH, Faegre Baker Daniels, LLP, 1700 Lincoln St., Ste. 3200, Denver, CO 80203

For the Defendants:
RYAN B. PARKER, U.S. Department of Justice, 20 Massachusetts Ave., N. W., Washington, DC 20044

    Sarah K. Mitchell, RPR, CRR, 901 19th Street, Room A252, Denver, CO 80294, 303-335-2108
Proceedings reported by mechanical stenography; transcription produced via computer.

15-CV-02362-RBJ          Oral Argument          05/29/2018    2

APPEARANCES CONTINUED:

For the Defendants:
ROBERT C. SATROM and MATTHEW S. HACKELL, U.S. Department of State, 600 19th St., NW, Washington, DC 20522


             *          *          *          *          *

    (The proceedings commenced at 9:01 a.m.)

          THE COURT:  15CV2362, Dana Alix Zzyym versus Michael Pompeo.

          Appearances.

          MR. CASTILLO:  Paul Castillo for plaintiff Dana Zzyym.

          MS. PROUTY:  Ann Prouty for plaintiff Dana Zzyym.

          MR. LYNCH:  Brian Lynch for plaintiff Dana Zzyym.

          THE COURT:  Thank you.

          MR. CASTILLO:  Your Honor, I also want to note that our client is also in the courtroom.

          THE COURT:  All right.  Thank you.

          MR. PARKER:  Your Honor, Ryan Parker for the Department of Justice here representing the defendants.

          THE COURT:  All right.

          MR. HACKELL:  Matthew Hackell from the U.S. Department of State.

          MR. SATROM:  Robert Satrom from the Department of State.

          THE COURT:  Thank you, gentlemen and lady.

                         Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    3

Plaintiff, proceed.

MR. CASTILLO:  Good morning, Your Honor.  May it please the Court.  Our client, Dana Zzyym, a U.S. citizen who is neither male nor female, returns to this Court seeking relief after the state department conducted its judicially-mandated review of its binary-only gender policy, which it relied upon to deny Dana's passport application for the second time.  In November 2016, this Court remanded the case --

THE COURT:  Are you reading this off a script?

MR. CASTILLO:  I'm sorry?

THE COURT:  Are you reading your argument off a script?

MR. CASTILLO:  I do have notations on the script, yes.

THE COURT:  Well, don't just read it.  Talk to me.

MR. CASTILLO:  Yes, Your Honor.  Once this Court has already remanded this action before the state department to reconsider its decisions, and in its reconsideration, it, again, reaffirmed its binary-only gender policy, which violates both the equal protection and the due process components of the Fifth Amendment to the United States Constitution.  In its review, it still provided five justifications, many of which were before this Court when we were here last time, and provided additional justifications

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    4

which do not meet even the lowest level scrutiny.

Looking at the justifications that they provided in the administrative record at pages 82 to 86, the state department articulated five specific reasons that they -- that they say meets at least rational basis review. However, if you look at the -- and examine the substance of those justifications, they do not articulate a satisfactory explanation for the actions, including failing to establish a rational connection between the facts found and the choices made.

THE COURT: Sounds like you're on their turf now. You're arguing against their justifications on a rational basis basis, but that's not the way you briefed it.

MR. CASTILLO: No, Your Honor. What we're saying is it doesn't establish a rational connection which is part of the arbitrary and capricious standard, but with respect to the constitutional review, the claims that we have put forth before this Court, first, that it's discrimination based on a gender classification requires an exceedingly persuasive justification. Moreover, the policy as applied to our client, infringes on the fundamental rights to liberty and the fundamental rights to international travel.

The justifications proffered in the justifications memo that the government set forth simply do not meet any level of scrutiny, although the government bears the burden to

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    5

establish that it meets at least high scrutiny under

discrimination based on sex or strict scrutiny because of

infringement of a fundamental right.

Taking the justifications that the government sets forth in turn, the government, again, sets forth that the justification for the gender change policy is that it requires an accurate and verifiable identity document.  However, there's no rational link by requiring Dana, our client, who is neither male nor female, to provide a materially false statement about their gender in order to secure a passport that will enable them to obtain international travel.

Since we've been --

THE COURT:  Why was she willing to do that for a driver's license then?

MR. CASTILLO:  I'm sorry?

THE COURT:  Why was Dana willing to do that for her driver's license?

MR. CASTILLO:  As the Court pointed out at the last hearing, simply because a state may be discriminating with regard to an underlying identity document does not make it any more justifiable under the Constitution.  And, in fact, although not in the record, Dana did dispute the fact that there was a gender marker event.

But the gender policy with regard to changing a gender marker for transgender people, the Foreign Affairs

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    6

Manual specifically states that state -- underlying state identity documents may vary with respect to the underlying gender marker, in which case, the agency submits -- accepts certification from physicians attesting to the fact of the person's gender.

Here, in the record --

THE COURT:  What do you mean states may vary?

MR. CASTILLO:  The fact that some states do enable individuals to change the gender marker with regard to birth certificates and driver's licenses and other states don't or have an incredibly high bar to be able to change that gender marker.

THE COURT:  What do you mean by gender marker?

MR. CASTILLO:  The gender marker here with regard to the field that is in the identity document, typically M for male, F for female, and in some cases, and recently noted by the Government, Oregon and California and the District of Columbia, as well as the state of Washington, have since the last hearing enacted procedures to be able to provide an X gender marker on the driver's license.

THE COURT:  So the form has -- what does the form say?

MR. CASTILLO:  The form states, for example, in Oregon the form does have an option for an X, so it's M, F, and X as options.  X being unspecified in the state of Oregon.

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    7

And any person may -- without any sort of physician statement in the state of Oregon may submit a request to change their gender marker to the unspecified X marker.

THE COURT:  And then can they get a passport?

MR. CASTILLO:  According to the state department -- you might ask them -- but they've indicated that there's no way for a person to obtain a gender marker with anything other than an M or F, and so --

THE COURT:  Even though the official form in Oregon says otherwise?

MR. CASTILLO:  That's right.  That's their contention, Your Honor.

THE COURT:  And in the brief it said Oregon and District of Columbia.  You've added two more now?

MR. CASTILLO:  That is correct.  The state of California and the state of Washington now allow those gender markers, and many other states are considering it.  The state of New York -- in New York City the birth certificate -- has issued a birth certificate, in fact, with a designation of intersex in the sex field.  So we're now having driver's licenses, birth certificates -- and just to be clear --

THE COURT:  Was it just driver's licenses in Oregon, for example, or is it any document?

MR. CASTILLO:  Identity documents, specifically driver's licenses and birth certificates.  But I will point

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    8

out for the state of California, although they've passed the law, they've enabled people to change their gender marker on their driver's license and state IDs, the driver's license provision goes into effect in January, so they've taken some time.

In addition to the states jurisdictions that have added, other countries as well, including our neighbor to the north of Canada have also implemented, just as -- I think it's now at least ten other countries who have implemented the X gender field since the X, as unspecified, conforms to the International Civil Aviation Organization, the United Nations agency that prescribes the fields for travel documents.

So with respect to the state department's justification, they were requiring our client to lie about who they are, but more importantly, the so-called lack of medical consensus is a red herring here, because I will first point out that the designation of X is not a new gender.  It does not require the state to determine, you know, whether physicians, you know, agree or disagree with the person's gender.  But rather, it's a gender-neutral option that gives people like Dana and other people who have genders other than M or F an accurate identity marker on their passport they can use for international travel.

THE COURT:  Why is that important in this case? She's got two doctors from the VA.

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    9

MR. CASTILLO:  That's right -- that's right, Your Honor, and that brings up a second point.  With respect to the underlying documents, with respect to the physician statements, they attest that Dana is neither female or male, that, you know, Dana is intersex.  And yet the state department says, you know, that they are not medical experts.  That in cases, for example, for transgender Americans they defer to physician statements.  And yet, they -- in the Foreign Affairs Manual they say we defer to the World Professional Health Organization -- Association of Transgender Health, which includes the medical standards of care for not only transgender people, but people who are gender nonconforming, such as our client, whether that be intersex or who have a nonbinary identity.

So the very entity that the state department defers to with respect to expertise in this field with respect to transgender people, because of the fact that the WPATH standards of care are supported by the American Medical Health Association, they then ignore that same entity with respect to our client, who is gender nonconforming.  It makes no sense. It is irrational.

THE COURT:  So, Mr. Castillo, there is male, there is female, transgender, intersex.  Is that it?  Does that cover everything?

MR. CASTILLO:  Well, I can't -- the people may

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    10

identify as other, having other gender identities.

THE COURT:  What other?  It's not a frivolous question.  The state department might wonder is there no end to this, and I'm asking is there an end to it?  Are there four different types --

MR. CASTILLO:  Well --

THE COURT:  -- of identification?

MR. CASTILLO:  And that's a good question, Your Honor.  And so just so there's a foundation here in the record, with respect to transgender individuals, transgender individuals is where their gender identity --

THE COURT:  Is male or female.

MR. CASTILLO:  Or it could be nonbinary as well for transgender individuals.  It's different than the sex that was assigned to them at birth.  And so as a result, they experience, in many cases, gender dysphoria to which they seek appropriate medical intervention and, you know, legal documentation changes to alleviate the distress with regard to the difference.

THE COURT:  What gender was assigned to Dana at her birth?  Or his birth?

MR. CASTILLO:  At birth the original birth certificate, the sex field was left blank.  At the age of approximately five years old, the parents and the doctors imposed irreversible unnecessary surgeries to make Dana

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018   11

conform and raise Dana as male, amended -- added the M document -- gender marker to Dana's passport, and then it wasn't until later that the -- Dana amended it again to -- it currently displays a field of unknown.  But at birth, it was left blank, Your Honor.

THE COURT:  Well, then why doesn't Dana fit within transgender?

MR. CASTILLO:  Well, Dana -- with regard to the universal, you know, definition of transgender, depending on the definition, it has been seen as an umbrella to include intersex people.  But Dana's gender identity as a person who is neither male or female is consistent with the fact that there's no gender marker at birth, and so where transgender people is different, you know, than the sex assigned to birth.  Dana was not assigned a sex at birth, so -- you know, in viewing it in terms of transgender individuals and differences between the original birth certificate, there was nothing in the birth certificate field.

THE COURT:  The state department does accommodate transgender people.

MR. CASTILLO:  They do, Your Honor.  They accommodate their gender identity solely with a physician's statement.

THE COURT:  But does the transgender person have to pick M or F?

MR. CASTILLO:  I believe the answer is yes as well,

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018   12

although many transgender people, like my client, do also have nonbinary identities as well.

THE COURT:  So the transgender person is born male, let's say, and then identifies as female.  May or may not have had any surgery.

MR. CASTILLO:  That's right, Your Honor.  And it's not required by the state department.

THE COURT:  So the birth certificate said male, but the person identifies as female, and applies for a passport, and checks female, but supplies a birth certificate that says male, but that's okay with the state department.

MR. CASTILLO:  As long as they meet all the rest of the criteria for securing a passport, yes, that's okay for the state department.

THE COURT:  Well, all the rest of the criteria are not at issue in this case.  Dana meets all those other criteria.

MR. CASTILLO:  That's correct, including the submission of the physician statement.

THE COURT:  So a person exactly like Dana, except, in the hypothetical, born male, checks female, gets a passport.  May still have male genitalia, but gets a passport as female, and that's fine with the state department.

MR. CASTILLO:  That is fine for the state department.

THE COURT:  So Dana's problem is that she's not

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    13

willing to check either box, and, therefore, it's a dead end for her.

MR. CASTILLO:  They have a nonbinary gender identity, yes, Your Honor.  And the state department, in fact, does concede that there are people who are -- who have nonbinary gender identities, who identify as male or female, yet though that class of people, just like Dana -- even though they were to provide physician's statements, you know, attesting to the fact -- just as transgender people do to their -- to the gender identity, they are not able to secure a marker.  But, again --

THE COURT:  But you say the state department recognizes that there are those people.

MR. CASTILLO:  That they do recognize there are those people.

THE COURT:  They're not denying the validity of being intersex.

MR. CASTILLO:  That is -- that is correct, or having a nonbinary gender identity.

THE COURT:  But they still won't give them a birth certificate -- or a passport.

MR. CASTILLO:  That's right, Your Honor.  They -- and let me clarify, Your Honor.  They will only give them a passport if the gender marker is male or female.

THE COURT:  Right.  And we've had this discussion

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    14

before.  If Dana would just check one of those two boxes, this dispute wouldn't exist, but because she's not willing to check a box -- and the reason is that she says it would be false.

MR. CASTILLO:  It is.

THE COURT:  That's why we're here.

MR. CASTILLO:  That is correct, Your Honor.

THE COURT:  I mean, she made the decision that driving a car in Colorado was a big enough deal that she would check the box, but the passport is different.

MR. CASTILLO:  No, Your Honor. Dana still contests and would, you know, perhaps at some point in the future challenge that fact.  The fact that we started with a federal -- the fact that the state is discriminating against our client does not mean that it then becomes okay for the federal government to discriminate.

THE COURT:  Right.  I don't disagree with you.  But the fact remains that for whatever reason she checked the box in that instance.

MR. CASTILLO:  And the particular instance, again, under protest, and, again, although it's not on the record, had secured and went through a process individually without representation of counsel to attempt to get them to have a gender marker that is consistent with her gender identity, and that is what we're seeking here today.

THE COURT:  So she's not willing to check the box

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    15

under protest.

MR. CASTILLO:  Well, it would be inconsistent with who they are.  It's not a matter of willingness.  It's a matter of being -- you know, the state government not representing who they are as a person, as an American citizen, and the fact that -- it would be analogous to a fact of the state department requiring some American to bear a gender marker that's not them.  For me, I have a passport with a male gender marker.  It would be like the Government says, no, you can't have a passport unless you bear -- even though my gender identity is male -- and bear a female gender marker on your passport.  It's inconsistent with their core, with their inner sense of who they are.

THE COURT:  And if sometime this afternoon your inner core told you you'd rather be a female, you could get your passport changed to that under their policy.

MR. CASTILLO:  Well, under the WPATH standards of care -- again, that prescribes the standard -- medical standards of care for transgender individuals -- it's not something that could be changed.  It's insistent, inconsistent, persistent expression of a person's inner core, and with -- the standards of care do allow for the individual to express themselves in facets of life and social behavior and in the legal documents in order to alleviate the distress, because of this insistent, persistent, and consistent

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    16

expression of their gender identity.

So with respect, Your Honor, it's not something that somebody decides from one day to the next with regard to -- without being seen in many cases by a doctor who confirms that.

THE COURT:  Right.  You said that earlier, and I should have added that.  If you change your mind this afternoon and went to a doctor and convinced a doctor that you really identified as female, you could do that, and you could get a new passport.

MR. CASTILLO:  If, in fact, the physician attests that a person's gender identity must -- is supportive of who they are as a person, because they -- you know, they exhibit some of the same distress as a result of, you know, bearing, for example, legal documents in a situation that's different from who they are, or in social situations, you know, not respecting the person's name or pronouns.  Those sorts of things cause significant distress to people who are transgender, and as a result, a medical physician can treat that.  And one of the treatment protocols is to provide the basis for individuals to be able to change identity documents that is consistent with who they are.

The case that we submitted by supplement, the *Arroyo* case, was a recent decision by the District Court of Puerto Rico that involved transgender people's attempt to change the

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    17

gender marker on the birth certificate.  Puerto Rico was one of the few remaining states -- I think there's three left -- that bar individuals from changing the birth certificate.  And the district court ruled that it was against fundamental liberty, due process, both informational privacy and decisional privacy, to bar transgender individuals from not only updating the birth certificate consistent with their gender identity, but also barring them from having any sort of footnote or evidence that it had changed from a prior gender identity, because of the fact that it would be consistent with an individual's lived experience, and it causes them great harm and distress as a result of the government prohibiting them.

In the same way, again, the Court -- although physicians in this record provided the documentation with regard to U.S. Department of Veteran Affairs physicians stating under penalty of perjury that Dana is intersex, identifies as intersex, again, with respect to a choice of a gender marker, the International Aviation -- the International Civil Aviation Organization provides a gender-neutral option.  And so it doesn't require the state department to make the determination whether or not Dana is intersex or an individual who is nonbinary.

It's just that we're not going to display it.  It's unspecified.  And many countries around the world have done

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    18

that, as we talked about before.  And it's just the Government's insistence that it is not going to defer to the medical professionals that it itself defers to with respect to transgender people, but accept people who are gender nonconforming, we're not going to defer to the WPATH standards of care.

All of these decisions with regard to the justifications don't even meet rational basis scrutiny, but with respect --

THE COURT:  Would they have to modify the form, the passport form?

MR. CASTILLO:  They may modify the form.

THE COURT:  Would they have to modify the form?

MR. CASTILLO:  Correct.  To allow, for example -- and I keep bringing up X not to say that that's their only choice, but because of the fact that it is an internationally-accepted gender marker by the international organization that includes gender markers for passports.  That is an easy option for them and does not require for them to conduct any medical evaluation whatsoever.  In fact, Canada --

THE COURT:  You're not answering my question.  The form says M, F, two little boxes.  I don't have my passport in front of me, but I assume that's what it is.

MR. CASTILLO:  Yes.

THE COURT:  Would they have to modify the passport

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    19

form and have a third choice?

MR. CASTILLO:  Yes, Your Honor, that's an option.

THE COURT:  So she can't just put an X -- and when I say she, I'm not identifying her as female.  It's just --

MR. CASTILLO:  I understand, Your Honor.

THE COURT:  Dana can't just put an X in between. There has to be a change of the form.

MR. CASTILLO:  Dana wrote intersex on top of the field and didn't check a form, and so that wasn't sufficient for the state department.  But, yeah, they -- that's an acceptable response with respect to if they decide to include the X gender marker as a gender-neutral option for people who don't identify as male or female.

THE COURT:  With the transgender people they don't have to change the form.

MR. CASTILLO:  That is correct, Your Honor.

THE COURT:  I've wondered how much the hassle and cost of changing the form is really driving that.

MR. CASTILLO:  Well, with respect to the justifications that were proffered, they admitted that they did not undertake any sort of level of effort estimation as to the cost or feasibility, but rather just come to some sort of, you know, conclusory statements that it may be more difficult, but there was no -- nothing in the administrative record with regard to the actual cost of, you know, printing new forms.

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    20

But even so, with respect to the rational basis level of review, cost and feasibility alone is still insufficient when you're targeting a class of individuals for disfavored treatment and you're talking about important rights such as the right to international travel and the right to define and express one's identity, much less gender discrimination.  So we're talking about nothing in the record with respect to cost.  Just supposition about that it may be inconvenient, and they have not provided the level of effort estimation.  But even if they were, that would not be sufficient under, you know, cases such as *Romer* and *Heller* to infringe on Dana's fundamental rights.

And we urge this Court to apply the high-level review.  It is discrimination based on sex.  The passport classifies that gender change policy literally because of sex, checking male or female, and it also discriminates on the basis of sex because it amounts to the Government imposing gender stereotypes that are overbroad and archaic stereotypes about the nature of sex as being binary.

Intersex people, as they well know and is included in their Foreign Affairs Manual, do not fit typical definitions of male or female.  Many Courts around the country say sex is not a cut-and-dry matter, but with respect to transgender Americans, they respect their sex based on the gender identity marker that their physicians have testified to.  And so it is

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    21

-- the Supreme Court in the last term has said the classification must serve an important interest today.  For interpreting the equal protection guarantee, the Supreme Court recognized that new insights and societal understandings can reveal unjustified equality that once passed unnoticed.  Thank you, Your Honor.

THE COURT:  Thank you, Mr. Castillo.

All right, Mr. Parker.

MR. PARKER:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. PARKER:  And may it please the Court.  I'd like to quickly address a couple of the arguments that Mr. Castillo has made.  To begin with, on May 1st, 2017, the Department of State issued a thorough and well-reasoned decision explaining why it requires passport applicants to check either male or female and to receive a passport that identifies their sex as either male or female.

This Court is sitting in this APA review as an appellate court reviewing the state department's decision, and conducting that review based on the administrative record that was before the agency.  Many of the arguments that Mr. Castillo made involve factual developments that have occurred since the state department made its decision on May 1st, 2017.  So I'd like to review with the Court the facts that existed at the time that the state department made --

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    22

THE COURT: Oh, you're telling me now, Mr. Parker, that if I send it back again they would change their mind this time because there are new developments?

MR. PARKER: Your Honor, I certainly am not telling the Court that.

THE COURT: I didn't think so. I sent it back with the hope that maybe they would take a good hard look at this, which you say they did, but now you say that there have been new developments, but I can't consider those.

MR. PARKER: Well, Your Honor, I think what I am trying to tell the Court is many of plaintiff's arguments involve new developments.

THE COURT: Well, then I'm asking you, Mr. Parker, given these new developments, if there are significant ones, would your client change its position based on these new developments? Because I'd love to have that happen.

MR. PARKER: Your Honor, the department is certainly monitoring developments in this area as they relate to its passport policy.

THE COURT: What you're doing is -- and it may be very intentionally so -- is forcing this Court to make a constitutional decision. And so when you get up and say, Well, there have been new developments but they don't count. You tell me that the new developments might count, and maybe we can do some business.

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    23

MR. PARKER:  Well --

THE COURT:  But if you can't tell me that, you're putting me up against a wall.  You've painted me into a corner, and you are just wanting a constitutional decision so you can take it up to the Tenth Circuit.  That, to me, seems silly.

MR. PARKER:  Your Honor, we certainly are not trying to put the Court in a difficult situation.  The decision that is before the Court was made in May, on May 1st, 2017, and the administrative record for that is also from that time.  And so I think the point that I was trying to make is that when the state department made its decision, as it noted in its decision document, there were 57 jurisdictions that issued identification documents; passports, birth certificates.  And as far as the state department was aware, not a single one of those jurisdictions issued identification documents that identified a sex other than male or female.

THE COURT:  Now there are four.  There are four states.  There's the Civil Aviation.  There's the country of Canada.  I mean, what does it take for the state department to finally say, well, maybe we better get with the program?

MR. PARKER:  Your Honor, I think that that's a policy matter that the state department continues to consider as it reviews the relevant factual developments that the Court has touched on here.

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    24

THE COURT:  If I give you 30 days, will they give me a different decision?  Or is it going to take another year?

MR. PARKER:  Your Honor, I certainly can't forecast for the Court what the department's position would be if this case were remanded, but I can say that the department has issued a thorough and well-reasoned decision that provides five different justifications for the department's decision.

THE COURT:  Right.  Let me ask you another question. This case was named Zzyym vs. Tillerson.  Now it's Zzyym vs. Pompeo.

MR. PARKER:  Correct, Your Honor.

THE COURT:  Have people at the Tillerson or Pompeo level even heard about this?  Have they weighed in on this? It strikes me as unlikely that someone like Rex Tillerson would think this is such a big deal to make a constitutional case out of, especially given what the state department recognizes for transgender people.  Or is this some lower level that's the one that's representing the state department?

MR. PARKER:  Your Honor, I can tell you when this case was remanded to the state department, the state department considered its policy very carefully at high levels in the department and came to its decision and wrote a thorough --

THE COURT:  So in other words, you can't answer my question.

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ        Oral Argument        05/29/2018    25

MR. PARKER:  Your Honor, I can't answer specifically whether Secretary Tillerson considered this policy.  But I can tell you that the state department had the appropriate officials look at this policy, that they amassed significant documents, they considered -- as the Court is aware, there's a 1,300-page administrative record of the documents that the agency considered, and it issued a thorough and well-reasoned decision.

THE COURT:  How can you justify treating transgender people as liberally as you do and then putting people like Dana in a different category?  How do you justify that?

MR. PARKER:  Your Honor, I think that there are some fundamental differences between the way that the state department treats transgender individuals with regard to passport applications and the situation of intersex individuals like Dana.

THE COURT:  Yeah, what are they?

MR. PARKER:  And I think -- and let me first begin with the fact that the state department relies on an individual's documented sex.  And so Dana submitted with their passport application --

THE COURT:  What are they relying on when somebody from Oregon applies?

MR. PARKER:  Well, Your Honor, the hypothetical you're positing is someone from Oregon would apply with a

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    26

driver's license with X on it --

THE COURT:  That's right.

MR. PARKER:  That situation is still, I think, being resolved by the state department.  But that's certainly not the situation --

THE COURT:  What do you mean it's being resolved by the state department?  He just told me that they base their decision on the documents that they get.

MR. PARKER:  So --

THE COURT:  I'm telling you they just got a document from somebody in Oregon who wants to go to Cancun.  What do they do?

MR. PARKER:  Your Honor, I think as Mr. Castillo pointed out, in the majority of states that offer an X, the X simply means unspecified, and the department is not aware of any jurisdiction that has been issuing -- excuse me -- birth certificates that identify an individual's sex as an X.  And so if an individual were to present a birth certificate that identified -- in our hypothetical -- an individual as male, and a driver's license that identified them as X, I assume they could receive a passport that identified them as male consistent with their documented sex.

In this case, Dana submitted, with their passport application --

THE COURT:  Their documented sex is X in Oregon --

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    27

MR. PARKER:  Well, Your Honor --

THE COURT:  -- California, DC, Washington.  Their documented sex is X.  What does the state department do with those people?  Or does the whole West Coast of the United States have to stay home?

MR. PARKER:  Your Honor, as Mr. Castillo pointed out in his argument, that X is not an indication of a new gender.  It is simply a marker, as he said, that is gender neutral.

THE COURT:  Okay.  If she writes on her -- Dana writes on her application unspecified, is that good enough?  Does she get a passport now?

MR. PARKER:  Your Honor, she could not receive a passport for unspecified.

THE COURT:  But the Oregon person could.  Now, how is that equal protection?

MR. PARKER:  Your Honor, I don't think it's clear that a person in Oregon could receive a passport with -- identifying the gender as X.  In fact, I think that it's clear at this point that the state department only issues passports with an M or F gender marker.

THE COURT:  So the Oregon person, the California person, the DC person, the state of Washington person who has an X is out of luck?

MR. PARKER:  No, Your Honor.  I'm not saying that.  I think that they -- that person could receive a passport either

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    28

in M or F depending on the documentation that they submit. What I am saying, though, is that person could not receive a passport with an X, and that's for the very reasons that the state department set forth in its decision document.

THE COURT:  Okay.  So what's the good reason for that?

MR. PARKER:  So, Your Honor, the state department uses passports in a number of different ways.  One, when an individual applies for a passport, they check that individual against a number of federal databases to determine whether they're eligible for a passport.

THE COURT:  You've conceded that Dana is eligible for everything except checking the box.  There's not a thing about Dana that's offensive to the state department, correct?

MR. PARKER:  That's correct, Your Honor.

THE COURT:  All right.  So they don't have to check anything for her.  She has to check something.  They don't have to.  She's passed all those other tests.

MR. PARKER:  Your Honor, but the state department doesn't issue passports on an ad hoc one-off basis.  The department is committed to being consistent in the way that they issue passports across all the passport offices.  And, in fact, in the state department decision document, they talk about how the computer system they've created for the issuance of passports only accepts an M or F.

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ        Oral Argument        05/29/2018   29

THE COURT: Okay. Now we're getting down to what appears to be the real reason. It's a computer system. It's the printer. It's the hassle and the cost of modifying to accommodate the Danas of the world. Isn't that really the reason?

MR. PARKER: Your Honor, I would say that's one of five reasons. I do think that that is a significant reason, but along with that --

THE COURT: The other reasons are legal reasons. It's, you know, you disagree about what constitutional test to apply and so forth. The on-the-ground everyday reason is the practical reason, isn't it?

MR. PARKER: Well, Your Honor, I would disagree with that statement, because I think that it is a practical reason that the state department has given that when an individual uses their passport, that individual is then -- that they use the passport information including the sex, to link that individual up with federal, state, and local law enforcement databases, and as far as the department is aware, those databases only identify sex as male or female.

And so one of the --

THE COURT: So what about the transgender person who comes in and gets a passport marked F. The state department wants to match that up with local databases, and lo and behold, what they find is all the local databases are saying

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    30

M.

MR. PARKER:  That's correct, Your Honor.

THE COURT:  What happens then?

MR. PARKER:  So in a situation like that, there are certainly multiple points of data that the department can use to match up an individual.  But there's a significant difference between someone moving between two possible options within a system and the idea of inserting a new variable into the system that doesn't exist currently in the state department system, it doesn't exist in other federal government agency systems, it doesn't exist in state systems, and it doesn't exist in local systems.

THE COURT:  There was a time when transgender didn't exist in their system too, wasn't there?  Probably some old codger like me, if I applied for a passport when I was -- or my parents did when I was five years old, transgender wasn't even a thought then.  Everything has a first time.

MR. PARKER:  Your Honor, I would agree with you that the state department's policy with regard to transgender individuals has evolved, but I think there is still a fundamental difference between allowing an individual to move from, for example, using the Court's hypothetical from earlier, male to female or female to male, within a system that uses those two variables and inserting a third variable.

THE COURT:  Right.  Because you can use the same

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    31

form.  It's sort of easy.

         MR. PARKER:  Well, I would say it's more than a form, Your Honor, because there's a system that allows for the state department to link documents with other federal agencies, state and local agencies, and so it's really a matter of compatibility.  It's the ability of the state department to link up their documents with other law enforcement and other documents within the federal government and beyond that is, I think, beyond checking a box on a form.  It has to do with the ability to use the data.  The bottom line with the passport is that it's a government document.  It's used for government purposes.  It's used to allow the government to determine whether to allow an individual to cross the borders of the United States.

         THE COURT:  Well, now, Dana was in the Navy.  These Navy doctors, these VA doctors have said she's intersex.  But the government was happy to have her in the Navy, right?

         MR. PARKER:  Certainly, Your Honor.

         THE COURT:  Were they -- did they send her overseas?

         MR. PARKER:  Your Honor, I'm not aware of that fact.

         THE COURT:  Well, she served honorably in the Navy, did she not?

         MR. PARKER:  I believe so, Your Honor.

         THE COURT:  So they're happy to have her service in the Navy, in the military, but she can't get a passport --

                    Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    32

MR. PARKER:  Your Honor --

THE COURT:  -- because she won't check a form.

MR. PARKER:  I think the department, and it's clear from the record, is also happy to issue plaintiff a passport that conforms with the documentary evidence that plaintiff submitted with plaintiff's passport application.

THE COURT:  No.  No, they won't.  Because she submitted these two doctors' affidavits, government doctors paid by the taxpayer just like I am and you are, government doctors who said she's intersex.  They won't accept that.

MR. PARKER:  Your Honor, plaintiff also submitted a driver's license from Colorado that identifies plaintiff as female, and the department --

THE COURT:  If she relinquishes her driver's license, will you then give her a passport?

MR. PARKER:  Your Honor, I think for the same reasons that are set forth in the department's decision letter, I believe the answer would be no.

THE COURT:  What if she decides to go to the state of Oregon and get a driver's license?  Now can she get a passport?

MR. PARKER:  Your Honor, plaintiff, I believe, could receive a passport, but not a passport that identifies plaintiff's sex as X.  The department has set forth clearly the very practical reasons -- and I would say that they're not

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ         Oral Argument          05/29/2018    33

legal reasons -- the practical reasons that it requires an M or an F on a passport.

THE COURT:  Okay.  Tell me what the practical reasons are.

MR. PARKER:  The practical -- there are -- I'll list them out, Your Honor.  The first is that still, and at the time the department made its decision, the majority -- I would say the time the department made its decision, all of the jurisdictions that issued identification documents issued them in M or F.

THE COURT:  Okay.  That's not a good reason anymore. What's the next reason?

MR. PARKER:  The next reason is that the state department when it issues a passport uses the passport application form and the information provided on that form to interface with other federal government agencies to determine whether an individual is eligible for a passport.  There are a host of reasons why an individual may not be eligible.

THE COURT:  Such as?

MR. PARKER:  Such as they have a warrant for their arrest or a foreign country is trying to ex --

THE COURT:  That isn't the case here.

MR. PARKER:  Certainly that isn't the case in this particular --

THE COURT:  But they were able to figure out that

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    34

wasn't the case despite her intersex status.

MR. PARKER: Your Honor, the state department's decision is not directed only at the plaintiff here. It's a decision for the department as a whole regarding its male/female policy. And so the department's justification that it works with other agencies like the law enforcement agencies, Treasury, Social Security Administration, it works with all these agencies to see if an individual is eligible for a passport, and as far as --

THE COURT: Social Security Administration, they can check the social security number. Local law enforcement, they can check address, name, criminal history.

MR. PARKER: So --

THE COURT: Gender is only one of -- as you've even said in your brief -- and, frankly, your brief is quite candid, and I applaud you that for -- there are multiple identifiers for a person. I identify as male, but believe me, there are a lot of other identifiers, if you want to look into my background.

MR. PARKER: Your Honor is absolutely correct that --

THE COURT: My name is sort of female. That throws a lot of people off.

MR. PARKER: Your Honor is absolutely correct that there are multiple pieces of data that the federal government and local and state governments use to identify individuals

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    35

and to link up records, including name, social security number, birth date, place of birth. There are a host of different fields that can be used. But the way that a match occurs is that they try to match as many fields as possible. And so the more fields that the government has available, the stronger the matches can be, and the more matches can be created.

Now, it can be that sometimes there are certain fields that don't match. For example, with the example that Your Honor gave, if the name didn't match in one of your records, that would leave it to the other fields. But if your birth place and your social security number and your sex match, the agencies may still be able to make a match, because they have the other fields of data.

The same thing occurs with sex. The department obviously doesn't match individuals based solely on their sex, but it does use that data point to help to either strengthen the match or to make the match, and it's important because sometimes they don't have information like place of birth, or a name is spelled differently, or people use different names, or they don't have the social security number. Each piece of data that the department uses plays a role in allowing it to match.

THE COURT: Okay. Let me throw out an idea here. You want to match the states, and a year ago the states didn't

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    36

have what the four have now.  What would you think of the idea of the federal government being the leader, not the states?  The federal government could set an example.  But what is going to happen, the state department is going to wait until how many states, a dozen, 15, 20?  When is there enough that the feds will say, Well, I guess we need to change our policy to match?

MR. PARKER:  Your Honor, I'm not sure -- well, let me say this.  I think the state department is committed to being a leader and an example for our country, but I think that these practical concerns are important to the department.  They go really to the heart of what a passport is used for, and even if states are to change their driver's license identifications to allow people to mark unspecified, that doesn't alleviate the practical concerns that the state department has identified here.

And as I said, I think the Department is monitoring these developments as they relate to this policy, but these practical concerns are real.  That as the department -- when an individual comes to the border, and as they try to link that person up with the other records that are necessary to allow -- to decide whether, one, to issue them a passport or, two, to allow them to cross our borders, they really do need to be able to link up with these other agencies.

THE COURT:  Well, no one is accusing the state

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    37

department of bad faith. I certainly am not. Stubbornness, maybe. But bad faith, no. There are people at the state department, good people, that feel they have good and sufficient reasons for this. And maybe in May of 2017, without four states leading the way, it was a little too much to handle. But like I said at the beginning, what that does is puts the Court in the position of having to make a constitutional decision. That's what Courts are for.

MR. PARKER: And, Your Honor, if it would be helpful, I'm happy to address the constitutional issues, but I guess the department's position here is that the decision that it's made and the justifications that are provided and the practical considerations that we've discussed today clearly meet really any level of constitutional scrutiny. The government's argument is that this should be subject to rational basis --

THE COURT: You say clearly. Is it really that clear? Is it that obvious that Mr. Castillo is full of beans?

MR. PARKER: Well, Your Honor, I have a great deal of respect for Mr. Castillo, and I've enjoyed working with him on this case immensely, but I do disagree with his arguments. I think the state department has come to a decision that is based on practical considerations, and that when the Court looks at the equal protection claim here, the Tenth Circuit has adopted a two-step approach, and the first step is to

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    38

determine whether there is intentional discrimination, whether the discrimination at issue is an intended consequence of the policy.

THE COURT:  Well, it's intentional.  You very intentionally are excluding people who won't check M or F. That's not an accident.

MR. PARKER:  Your Honor, I think the intended consequence of the policy here is that the passport be a document that can be used to link up and access other records. I don't think there's anything in the record that would support an argument that the state department made this decision for the sole purpose of discriminating against intersex individuals, or even as a -- I don't believe that the record supports that had any kind of purpose.

I think the purpose of this policy really is that it was driven by practical considerations that are set forth, and so I don't think that there is intentional discrimination against individuals here.

THE COURT:  Well, there may not be intentional discrimination.  Those are fighting words.  But it's very intentional that Dana is being discriminated against.  Again, I'm not saying in bad faith.  But there's no accident to it. The state department knows exactly what it's doing, and it knows what the consequence is for someone like Dana who is intersex and stubborn enough that she won't check a box.

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    39

MR. PARKER:  Your Honor, I guess I wouldn't say that that's an intended consequence.  That would be the difference, is that the state department didn't make this decision thinking we're going to treat individuals like Dana differently and that's the reason we're making this decision. I think the state department looked at the practical implications of adding an X to a passport and saw that it would really hinder the use of passports and their purpose at the border and when they're issued.

THE COURT:  Well, but the state of Oregon and the state of California aren't that concerned about it, the state of Washington.  The District of Columbia, the center of our government, they aren't that concerned about it.  In fact, the District of Columbia is a federal enclave.

MR. PARKER:  I would submit, though, that states have much different considerations than the state department for the use of identity documents.  Driver's licenses, for example, are certainly used for much different purposes than passports, and that there's a difference between the way that the state department uses these documents and the way the states use these documents .

And I would agree that the states have looked at this issue.  They've considered the facts, the factors that are relevant to them and the way that they use driver's licenses. But I don't think that that means that the same factors apply

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018   40

or weigh in the same way that the state department looked at those documents.

And so I think that when the Court examines the state department's decision document, its memo, it's clear that there's not intentional discrimination against intersex individuals.  That it really -- this policy is driven by a need to be able to use passports for their purpose, and because of that, that really is the end of the equal protection analysis.  If there is not intentional discrimination, there's not a violation of the equal protection clause, and the Tenth Circuit has been very clear that that finding of intentional discrimination is really the preliminary step in equal protection analysis.

THE COURT:  So that brings me back to the transgender people.  Why don't these same practical problems exist there?  I mean, surely you've thought about that.  You knew that would be a question.  If it's really important to match, a transgender person doesn't match, right?

MR. PARKER:  Well, Your Honor, I think --

THE COURT:  Maybe some do and some don't.  But once you've become a transgender person, and a doctor attests to that, your client, the state department, is fine with -- if they check female.  Even though all the documents, all of the Bruce Jenner documents through the Olympic years and beyond were male.  He was one of the more visible males in the world

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    41

at one point.  Now she's female, and that's okay.  There's no match, but they get around it because there are other markers.

MR. PARKER:  So, Your Honor, I think Your Honor is correct, that when a transgender individual submits a note from a doctor saying that the individual has gone through the clinically-appropriate process for transitioning their gender from male to female or from female to male, the state department will issue a passport in the new gender.

THE COURT:  And I say good for the state department. That's an enlightened view, it seems to me, but it doesn't match anymore.

MR. PARKER:  And Your Honor is exactly correct, that for a period of time, that individual may not match on the sex field.  Now, the other --

THE COURT:  Well, Bruce Jenner is not going to match for the rest of time unless he goes back and has all those -- gives back his medal and all the rest of it.

MR. PARKER:  Well, Your Honor, I think that Ms. Jenner could receive potentially a driver's license in California that identifies her as female, and could go through steps to change other documentation.  But I think the point here is that, yes, at a point in time there's not a match in the sex field that the state department uses, and that was, I would imagine, a significant factor that the state department considered.

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ         Oral Argument         05/29/2018    42

THE COURT:  That's a hard one to distinguish, isn't it?

MR. PARKER:  Well, it was only one factor.  So, Your Honor, the mismatch is one factor here.  You know, there's the mismatch factor, but there's also the idea -- and the department tried to explain this in the briefing -- that there is a fundamental difference between allowing someone to move from one variable to another that's in a system and inserting a third variable into what has been a binary system, and I think that is -- is fundamentally different.

THE COURT:  Let me ask you a slightly different question, because as Mr. Castillo pointed out, the state department recognizes the existence of intersex people.  They recognize that people can be like Dana.  And I haven't heard the state department argue in this case, two years ago or now, that she's just a liar.  She believes that she is neither male nor female, but to get a passport she would have to do something fundamentally false for her.  How is -- how do you justify making her do that?

MR. PARKER:  Your Honor, the passport form and the passport itself is not a matter of self-expression.  What the department is asking for is for the applicant's documented sex.  And so in this instance, the state department offered to provide plaintiff with a passport consistent with the Colorado driver's license that plaintiff submitted as proof of

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    43

identification.

THE COURT:  Right.  But the government's own doctors have documented her as intersex.  Why won't the state department accept that?  Is their own doctor -- the government's own VA doctor -- two of them -- less reliable than the state of Colorado driver's license bureau?

MR. PARKER:  Your Honor, I think that it's important to remember that there are a number of factors that the department considered here, and one is, as was touched on by Mr. Castillo, the fact that for transgender individuals, there is an established pathway for transitioning from female to male, but as plaintiff acknowledged in plaintiff's complaint, the term intersex is an umbrella term that encompasses a wide variety of different conditions.

And you could have a situation where a plaintiff identifies as intersex or gender queer, or there are a whole bunch of different terminologies that are used, and it's really unclear whether -- how one would identify this term intersex.  In fact, plaintiff's own doctors -- and, in fact, there are three doctors that submitted notes -- each identified plaintiff's situation differently.

One said that plaintiff was born intersex.  Another said that plaintiff had transitioned to intersex.  Another said that plaintiff had had surgery to transition them physically to female.  And so even within the notes provided

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018    44

by the plaintiff's doctor it's unclear --

THE COURT:  The latter thing isn't inconsistent with the first two.  The latter thing is just a fact, right?  A lot of these people, their parents are concerned, freaked out, whatever, and they decide before the child is old enough to know better to try to surgically make the person one or the other.  That's just a fact.  That happened to her.

MR. PARKER:  Certainly, Your Honor.  And I think the state department's point here is simply that the -- a doctor's note saying that an individual has transitioned is transgender.  I think there's a general understanding of what that means.  I think a doctor's note saying that someone is intersex or gender neutral, it's actually not quite clear what that means or what it means to transition, and this is a different situation.  That it's a situation that is not as well understood, certainly, as transgender individuals, and that that's certainly a factor as the department looks at how it would accept documentation.

But I think that when you step back and look at the department's decision document, it sets out these practical concerns.  That it has to be able to link these passports, that it has computer systems that it has set up that are used across the world to issue passports and to check passports.  It has other agencies that rely on passports and that link to them, both federal, state, and local.  And that all of these

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ          Oral Argument          05/29/2018   45

practical considerations, when taken in conjunction with this uncertainty about what it means -- would mean to be marked as either -- neither male or female -- when combined, certainly support the department's decision.

And the department did not say that this was an easy decision.  I think the department has a great deal of respect for the plaintiff here, and as shown in the department's policy towards intersex individuals and its acknowledgment that some individuals don't identify as male or female, has a great deal of respect for intersex individuals.

But the practical realities for the department is that the passport has to be used for the purposes that it is issued.  To allow the department to determine, one, whether individuals should be issued a passport; and, two, whether they should be allowed to come into the country.  And the insertion of a third variable into that process would significantly undermine the way that the department uses a passport.  And I think that while the passport -- the state department is very sympathetic to the plaintiff here, and to others in that situation, the practical ramifications of adding a third variable are such that it is unable to change its policy at this time.

And I think the department is certainly aware of changing facts and is monitoring those facts as they're relevant, but as it stands, at this point, based on the

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ           Oral Argument           05/29/2018    46

identification that was before the department, it's made a decision that it needs to maintain this male/female binary for very practical reasons, and that those reasons withstand any level of constitutional scrutiny.

If Your Honor doesn't have any further questions, I'll sit down.

THE COURT:  I guess I haven't been too shy about asking questions.

MR. PARKER:  I'm happy to answer any additional questions.

THE COURT:  I know.  Thank you.

MR. PARKER:  Thank you.

THE COURT:  Mr. Castillo, anything further from you?

MR. CASTILLO:  Briefly, Your Honor.  I just want to make a few points because we've been talking about the practical justifications that the state department has set forth.  But the justifications in and of themselves have no footings in reality when you compare it to the policy with respect to transgender individuals.  When you compare it to what was in the administrative record was already the state department's awareness -- the administrative record at 189 -- they footnoted the fact they had awareness that Oregon and District of -- that there are other jurisdictions considering this policy.

THE COURT:  Well, do you think that the Court can

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ        Oral Argument        05/29/2018    47

consider these four states now?  They weren't in front of the state department at the time.

MR. CASTILLO:  With respect to the constitutional standard of review, and the fact that the Supreme Court just last year said that they must provide an interest today with respect to, you know, changing times, I think that the Court may consider it.  But, you know, it's not necessary because of the fact they had a demonstrated awareness that at least two jurisdictions were in the process, which leads me to the other practical consideration of introduction of a third variable that Mr. Parker had said.

With respect to matching data systems with respect to the states, those states are now going -- if they didn't already -- have data systems that have the third X variable in those states, which have to talk to and communicate with and share information.  But as Your Honor pointed out, there are many points of data from social security numbers, which are requested on the application, to name, date of birth, place of birth.

And they even have a regular process that they use on an individual basis with any person who they believe they don't have enough information with respect to identity, they can seek additional primary and secondary documents, and in some cases, they may not even be documents in addition to identification documents under the regulation, which are

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ            Oral Argument            05/29/2018    48

merely a federal or state ID with a photograph.  That's what the regulation requires with respect to demonstrating a person's identity.

But they also have secondary documents, and even the attestation of an individual person as additional reasons for support.  So they have a way if they feel that there's not enough data points that have been matched.  But we believe that, you know, the record here, the record reflecting that the Department of Veterans Affairs physicians have attested to the fact that Dana is neither male or female.

THE COURT:  Right.  When is the last time the state department changed the form?

MR. CASTILLO:  I don't know, Your Honor.  That's a question for Mr. Parker.

THE COURT:  Oh, I thought maybe you knew that.

MR. CASTILLO:  Well, I know they've changed the Foreign Affairs Manual several times over with respect to the gender change policy.  They, in fact -- the prior version during the course of this litigation accepted primary documents in the old -- what they say in the old gender.  Now they've since changed that since the litigation has commenced to say in the original gender.  So this is sort of a moving target here with respect to excluding our client when they are simply seeking to travel internationally.

And so from a practical standpoint, our client has

Sarah K. Mitchell, RPR, CRR

15-CV-02362-RBJ           Oral Argument           05/29/2018    49

been, you know, with this litigation for three and a half years, has already missed opportunities to travel to Mexico City with work, to Amsterdam with work.  Next year there's another world intersex convention with work.  But you need not business opportunities to travel.  A person, an American citizen has the freedom of movement to move in and out of our borders, and it just makes no sense that we would allow foreign nationals with an X marker on their passport to enter and exit our country, but we don't let American citizens who have served our country honorably do the same.  Thank you, Your Honor.

THE COURT:  All right.  Thank you.  All right.  Have you both been heard?  Thank you.

MR. CASTILLO:  Thank you.

THE COURT:  We'll take it under advisement.  Thank you for your arguments.  Well done.

MR. PARKER:  Thank you, Your Honor.

THE COURTROOM DEPUTY:  All rise.  Court is in recess.

(The proceedings were concluded at 10:10 a.m.)

Sarah K. Mitchell, RPR, CRR

REPORTER'S CERTIFICATE


        I, SARAH K. MITCHELL, Official Court Reporter for the United States District Court for the District of Colorado, a Registered Professional Reporter and Certified Realtime Reporter, do hereby certify that I reported by machine shorthand the proceedings contained herein at the time and place aforementioned and that the foregoing pages constitute a full, true and correct transcript.

        Dated this 28th day of June, 2018.




                    /s/ Sarah K. Mitchell

                    SARAH K. MITCHELL
                    Official Court Reporter
                    Registered Professional Reporter
                    Certified Realtime Reporter


Sarah K. Mitchell, RPR, CRR