IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 15-cv-02362-RBJ

DANA ALIX ZZYYM,

      Plaintiff,

v.

MICHAEL R. POMPEO, in his official capacity as the Secretary of State; and
SHERMAN PORTELL, in his official capacity as the Director of the Colorado Passport Agency
for the United States Department of State,

      Defendants.

---

## ORDER

---

      This matter is before the Court on the U.S. Department of State's motion seeking judgment on the administrative record on plaintiff Dana Zzyym's Administrative Procedure Act ("APA") claims and dismissal of the claims contained within the remainder of Dana's Complaint.  ECF No. 35.  The case was administratively closed in November 2016 after I found that the administrative record did not show that the Department's decision-making process resulting in the gender policy was rational.  ECF Nos. 55–56.  I remanded the case to the Department for reconsideration of its policy.  ECF No. 55.  After reconsideration, the Department reaffirmed the gender policy in May 2017, and in June 2017 I reopened the case. The parties filed supplemental briefing with regard to the Department's motion seeking judgment on the administrative record and to dismiss.  ECF Nos. 58, 65, 68.

      After considering the briefings, oral argument, and relevant law, the Court determines that (1) the Department's gender policy is arbitrary and capricious under the APA, and (2) the

denial of Dana's passport application is in excess of the Department's statutory authority (Counts I and II). Because the APA grants Dana relief, the Court need not resolve the motion to dismiss on the constitutional claims or Dana's claim under the mandamus act (Counts III, IV, V).

## I. BACKGROUND

Dana Alix Zzyym is an intersex individual.[1] ECF No. 1 at ¶1 (Complaint). In September 2014 Dana submitted an application for a United States passport. *Id.* at ¶34. Instead of checking the box labeled "M" for male or "F" for female on the application form, Dana instead wrote "intersex" below the "sex" category. ECF No. 34 at 2 (Administrative Record). By separate letter Dana informed the passport authorities that Dana was neither male nor female. *Id.* at 4. The letter requested "X" as an acceptable marker in the sex field to conform to International Civil Aviation Organization ("ICAO") standards for machine-readable travel documents. ECF No. 1 at ¶35.

It is undisputed that in every other respect Dana is qualified to receive a passport. However, the application was denied (and has since been denied a second time). ECF No. 34 at 18; Administrative R. [Dkt. 64-01 through 64-44] [hereinafter "R."], 79–80. Dana sued, contending that the State Department's denials of Dana's application and its underlying binary-only gender policy violate the APA, 5 U.S.C. § 706, as well as Dana's due process and equal protection rights under the Fifth Amendment of the U.S. Constitution. *See generally* ECF Nos. 1, 61 (Supplemental Complaint).

---

[1]  Plaintiff explains: "'Intersex' is an umbrella term used to describe a wide range of natural bodily variations. Intersex people are born with sex characteristics that do not fit typical binary notions of bodies designated 'male' or 'female.' In some cases, intersex traits are visible at birth, while in others they are not apparent until puberty. Some variations may not be visibly apparent at all." Complaint, ECF No. 1, at ¶11.

<u>Procedural History</u>

The Department issued its initial denial of Dana's passport application on September 24, 2014, explaining that "[t]he Department of State currently requires the sex field on United States passports to be listed as 'M' or 'F[,]'" and that the Department would be "unable to fulfill your request to list your sex as 'X.'"  ECF No. 34 at 18.  The Department nevertheless stated that it would issue Dana a passport listing gender as "female," which was the sex listed on the driver's license plaintiff submitted to prove Dana's identity during the application process.  *Id.* Alternatively, the Department explained that it could issue Dana a "male" passport if Dana provided "a signed original statement on office letterhead from [Dana's] attending medical physician" in which the doctor attested to Dana's "new gender."  *Id.* at 19 (referencing 7 FAM 1300 App. M "Gender Change").

Dana chose neither.  Instead, Dana submitted a letter to the Department on December 18, 2014 appealing the Department's decision.  *Id.* at 29–30.  Dana included with that appeal two sworn documents by physicians from the United States Department of Veterans Affairs Medical Center in Cheyenne, Wyoming (Dana served in the Navy) that verified Dana's sex as "intersex."[2]  *Id.* at 31–32.  Dana also met with people at the Colorado Passport Agency (part of the State Department) and informed them that Dana "did not wish a passport to be issued . . . unless it could be issued showing the sex as 'X.'"  *Id.*

The Department nevertheless denied Dana's appeal on December 29, 2014, informing Dana that the Department could not accommodate the request for the same reasons it stated in its initial denial letter.  *Id.*; ECF No. 1 at ¶38.  The Department explained that Dana could still obtain a passport by reapplying and providing all required information on the passport

---

[2] Dana also included a birth certificate that had been amended in 2012 to list Dana's sex as "unknown." ECF No. 34 at 5; ECF No. 1 at ¶10.

application form—that is, checking either the box "M" for male or "F" for female.  ECF No. 34 at 36.  On February 26, 2015 Dana requested that the Department once again reconsider its decision or conduct a review hearing under 22 C.F.R. § 51.70(a).  ECF No. 1 at ¶39.  The Department denied both requests on April 10, 2015.  *Id.* at ¶40.

Dana subsequently brought suit against the Secretary of State, who is currently Michael Pompeo,[3] and Sherman Portell, the Director of the Colorado Passport Agency, in their official capacities on October 25, 2015.  *Id.*  The Complaint asserted (1) that the Department's conduct was in violation of the APA because it was "arbitrary and capricious;" (2) that the conduct also violated the APA because it exceeded the Department's Congressionally delegated authority; (3) that such action deprived plaintiff of due process in violation of the Fifth Amendment; (4) that it similarly deprived plaintiff of equal protection in violation of the Fifth Amendment; and (5) that the Court should issue a writ of mandamus to compel the Department to issue a passport accurately reflecting plaintiff as intersex.  *Id.* at ¶¶48–95.

Several months later on March 18, 2016 defendants filed a motion seeking judgment on the administrative record on plaintiff's APA claims and dismissal of the claims contained within the remainder of plaintiff's Complaint.  ECF No. 35.  The Court held oral argument on that motion on July 20, 2016.  ECF No. 51 (Transcript).  On November 26, 2016, I ruled that the agency's decision-making process was not rational based upon the evidence in the record and remanded the case to the Department for reevaluation of its gender policy.  *Zzyym v. Kerry*, 220 F. Supp. 3d 1106, 1114 (D. Colo. 2016).

In March 2017, while the Department was reevaluating the policy, Dana requested that the Department issue a full-validity or temporary passport bearing an "X" or other third-gender

---

[3] Since the date this case was filed, the Secretary of State has changed three times and therefore so has the named defendant in this case.

marking in the sex field in order for Dana to attend an international conference.  R. 67–69.  The

Department refused to issue the temporary passport but noted that it would soon complete its

review of the policy.  R. 75–76.  On May 1, 2017 the Department denied Dana's passport

application for a second time and issued a memorandum in which it explained its decision to

maintain the gender policy.  R. 79–80, 82–90.

This case was reopened at Dana's unopposed request, and as such the Department's

motion seeking judgment on the administrative record on plaintiff's APA claims and dismissal of

the claims contained within the remainder of Dana's Complaint is ripe once more.  ECF No. 35.

On July 6, 2017 Dana filed a supplemental complaint to reflect the May 2017 denial of Dana's

passport application.  ECF No. 61.  As reflected in the supplemental complaint, Dana seeks

"injunctive relief and a judicial declaration that the State Department has exceeded its authority

under the Administrative Procedure Act ("APA"), 5 U.S.C. §706(2) and has violated the Fifth

Amendment to the U.S. Constitution through agency actions which occurred after October 25,

2015."  ECF No. 61 at 2.

In October 2017 Dana filed a brief regarding the Department's May 2017 decision to

maintain the policy.  ECF No. 65.  The Department submitted the complete Administrative

Record, ECF No. 64, and filed a response to Dana's brief.  ECF No. 68.  On June 29, 2018 the

Court heard oral argument regarding these briefs and the Department's decision to maintain the

policy.  ECF No. 85.  The case has now been fully briefed and is ripe for review.

## II. STANDARD OF REVIEW

### A.  Motion for Judgment on the Administrative Record.

Under the APA, a court must "hold unlawful and set aside agency action, findings, and

conclusions" that it finds to be, among other things: (1) "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law;" or (2) "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]"  5 U.S.C. § 706(2)(A), (C).  I discuss each standard below.

### 1. **"Arbitrary or Capricious" Standard.**

Typically, "[a]n agency's action is entitled to a presumption of validity, and the burden is upon the petitioner to establish the action is arbitrary or capricious." *Sorenson Commc'ns, Inc. v. F.C.C.*, 567 F.3d 1215, 1221 (10th Cir. 2009).  Once agency action is challenged as arbitrary or capricious, a district court reviews that action under the APA as if it were an appellate court.[4] *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994).  As part of the appeal, the court "ascertain[s] whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made." *Id.* at 1574 (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983)).  That is, the court "must determine whether the agency considered all relevant factors and whether there has been a clear error of judgment." *Id.*

A court will set aside agency action "if the agency relied on factors which Congress has not intended for it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* (citing *State Farm*, 463 U.S. at 43) (internal quotation marks omitted).  Furthermore, "[b]ecause the arbitrary and capricious standard focuses on the rationality of an agency's decisionmaking process rather than on the rationality of the actual decision, it is well-

---

[4] As defendant explains, although in the District of Colorado a plaintiff or petitioner typically files the opening brief when "appealing" a government agency's decision under the APA, the parties have agreed "with the Court's approval, that defendants would file the first dispositive motion in this case," and that their motion would address the APA claims.  ECF No. 35 at 6 n.1.

established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Id.* at 1575 (citing *State Farm*, 463 U.S. at 50) (internal quotation marks and brackets omitted).

**2. "Excess of Authority" Standard.**

Plaintiff also challenges the Department's conduct under the APA as being in excess of its Congressionally delegated authority. "Determination of whether the agency acted within the scope of its authority requires a delineation of the scope of the agency's authority and discretion, and consideration of whether on the facts, the agency's action can reasonably be said to be within that range." *Olenhouse*, 42 F.3d at 1574 (citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415–16 (1971)).

### III. ANALYSIS

Plaintiff seeks a passport marked "X" to comport with plaintiff's intersex identity. Citing its binary-only gender policy, the Department has refused. [5] Plaintiff contends that the government's unwillingness to adapt to the needs of intersex individuals is arbitrary, capricious, and not the result of rational decision making. Further, plaintiff contends that in contrast to policies it has implemented for others such as transgender individuals, the refusal to issue passports that reflect the gender of intersex people is of constitutional significance. Because the APA disposes of the claims, I will not address the constitutional issues (Counts III and IV).

**A. APA Claims (Counts I and II).**

---

[5] I noted in my last order, and will note again here that the term "policy" is a bit of a misnomer. The policy which the Department claims requires it to issue passports only marked "M" for male or "F" for female is really a collection of rules pertaining to gender contained within the Foreign Affairs Manual. *See* ECF No. 34 at 20-27 (citing 7 FAM 1310 Appendix M, 7 FAM 1320 Appendix M, 7 FAM 1330 Appendix M, 7 FAM 1340 Appendix M, 7 FAM 1350 Appendix M, 7 FAM 1360 Appendix M, 7 FAM 1370 Appendix M, 7 FAM 1380 Appendix M, 7 FAM 1390 Appendix M). These rules do not explicitly state that the Department cannot issue a passport containing an alternative gender marking, and also do not contemplate the existence of a gender other than male or female. Rather, they simply explain how the Department deals with different issues related to gender on passport applications.

1.  __The Policy is Arbitrary and Capricious, 5 U.S.C. § 706(2)(A)).__

The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if it is not the product of reasoned decision making. This means, among other things, that an agency must provide an adequate evidentiary basis for its action and consider all important aspects of the problem before it.

As background: prior to 1976, passports issued by the Department did not include gender. ECF No. 51 at 18. However, the Department changed course and added a male and female checkbox. The applicant is required to choose one or the other. *Id*. In my order dated November 22, 2016 I found that the administrative record did not show that the Department's decision-making process that resulted in the gender policy was rational. ECF No. 55. The reasons provided by the Department for the policy failed to show a reasoned decision-making process and instead seemed to be ad hoc rationalizations for the binary nature of the gender field. I remanded the case to the Department for reconsideration which, in effect, gave the Department an additional chance to bolster the record and show that the policy making underlying the gender policy was not arbitrary and capricious. The Department did indeed reconsider the policy, and it submitted an eight-page memorandum explaining its rationale and pointing to the evidence it relied upon in making its decision to deny Dana's application once more. R. 82–90.

Now, for me to find that the Department's policy making was not arbitrary and capricious, the May 2017 memorandum must display something more than what was before me in November 2016 that explains how and why the policy was created. In the Department's memorandum, the Department first notes that it is aware that some countries and the

International Civil Aviation Organization (the UN agency that sets forth passport specifications)

provide for the issuance of travel documents bearing an "X" in addition to "M" or "F".  R. 82.

The Department then provides five reasons for the gender policy:

1. **Sex Data Point Ensures Accuracy and Verifiability of Passport Holder's Identity**: The policy is necessary to ensure that the information contained in US passports is accurate and verifiable, thus ensuring the integrity of the US passport as proof of identity and citizenship.  Because the Department relies on third-party documentation issued by state, municipal, and/or foreign authorities who largely do not allow gender identifiers other than male or female to determine an applicant's identity, the Department would have a more difficult job verifying the identity of a passport holder if a gender aside from male or female was used.

2. **Sex Data Point is Used to Determine Applicant's Eligibility to Receive Passport**: The policy is necessary because the sex of a passport applicant (male or female) is a vital data point in determining whether someone is entitled to a passport.  In order to determine whether an applicant is eligible to receive a passport, the Department must data-match with other law enforcement systems.  Because "all such agencies recognize only two sexes," the Department's continued use of a binary option for the sex data point is the most reliable means to determine eligibility.

3. **Consistency of Sex Data Point Ensures Easy Verification of Passport Holder's Identity in Domestic Contexts**: The policy is necessary to ensure that a passport can be used as a reliable proof of identity within the United States.  The introduction of a "new, third sex option in US passport applications and Passport data systems could introduce verification difficulties in name checks and complicate automated data sharing among these other agencies."  The Department believes that this would "cause operational complications."

4. **There is No Generally Accepted Medical Consensus on How to Define a Third Sex**: The policy is necessary because there is no generally accepted medical consensus as to how to define a third sex, making it unreliable as a component of identity verification.  "Although the Department acknowledges that there are individuals whose gender identity is neither male nor female, the Department lacks a sound basis on which to make a reliable determination that such an individual has changed their sex to match that gender identity."

5. **Altering Department System Would Be Expensive and Time-Consuming**: The policy is necessary because changing it would be inconvenient.

Looking at the proffered reasons and cited evidence provided by the Department, I find that the

Department's decision is arbitrary and capricious.  I will address each of the Department's

proffered reasons and explain why in my judgment they do not show that the gender policy is the product of a rational decision-making process.

*i. Reasons One through Three Fail to Show Rational Decision Making*

Reasons one through three essentially boil down to the same argument—*the Department needs to maintain the binary gender classification system for passports because this will ensure accuracy and reliability in cross-checking gender data with other identity systems*. R. 82–86. The Department notes that the binary system is important at two points: (1) when determining if an applicant is eligible to receive a passport, and (2) when a passport holder seeks to use their passport as proof of identity. *Id.* After reviewing the memorandum and administrative record, I find that the Department failed to add any substantive arguments or evidence that wasn't previously before the Court when I rejected this argument in my November 2016 Order.

In that order, I noted that the Department's argument that the binary gender policy helped to ensure the accurate identification of passport applicants/holders failed when one looked deeper at the evidence in the administrative record. For example, I noted that the Department undermined its purported rationale when it informed Dana that Dana could receive a male passport if Dana provided a physician's letter attesting to that gender, even though Dana's Colorado driver's license listed Dana's gender as female. ECF No 55 at 10. The Department has established policies in place that passport specialists and consular officers must follow "when an applicant indicates a gender on the 'sex' line on the passport application with information different from some or all of the submitted citizenship and/or identity evidence[,]" R. 178; 7 FAM § 1310 App. M. By allowing this means of gender designation on the passport, the Department made it apparent that it did not actually rely on other jurisdictions' gender data to verify passport applicants' identities to the extent it argued.

Further, I noted that the administrative record included evidence that "not every law enforcement record from which data is input to this system designates an individual's sex," and "a field left blank in the system is assumed to reflect that the particular datum is unknown or unrecorded." ECF No. 55 at 10 (citing declaration of Bennet Fellows, Division Chief at the Department). Therefore—in addition to the Department's admission that gender is just one of many fields used to crosscheck a passport applicant/holder's identity with other systems (other fields include one's social security number, date of birth, name, etc.)—the Department also admitted that in some systems the gender field isn't even used or reliable. As such, I held the Department's insistence that a binary gender data option is necessary to ensure accuracy and reliability simply was not the case under the evidence provided and therefore was insufficient to show that the policy was the product of rational decision making.

Since that decision, the only "new" evidence in the record on this point cuts against the Department. Joining multiple countries and the International Civil Aviation Organization's recognition of a non-binary gender classification system, at least four U.S. states and territories now issue identification cards with a third gender option.[6] The Department was on notice of this when it reconsidered its policy.[7] As such, the Department's insistence that a binary gender system is necessary to accurately and reliably crosscheck a passport applicant/holder's identity ignores the reality that some American passport applicants will have gender verification documents that exclusively list a gender that is neither female nor male.

_____

[6] These U.S. states are Washington, Oregon, California, and the District of Columbia. Further, at oral argument in June 2018, Dana represented that New York issued a birth certificate stating "intersex" in the sex field. *See* ECF No. 85 at 7.

[7] *See* R. 189 (Department's acknowledgment that other jurisdictions considering non-binary gender policy).

As support to its May 2017 letter, the Department offers a "History of the Designation of Sex in U.S. Passports," to explain the basis for its 1976 decision to add a requirement that applicant's designate either "male" or "female" in passport applications.  R. 87–90.  This brief history explained that the decision to add a sex marker to passport applications was made under the direction of the International Civil Aviation Organization (ICAO), which commissioned a panel of passport experts to address border security concerns resulting from the increase in international air travel.  Apparently, the data field of "SEX (M-F)" was recommended because experts thought "[that with] the rise in the early 1970s of unisex attire and hairstyles, photographs had become a less reliable means for ascertaining a traveler's sex."  R. 88.  In a 1974 report "an ICAO panel confirmed that a holder's sex should be included on passports because names did not always provide a ready indication, and appearances from the passport photograph could be misleading."  *Id*.  Though this still doesn't answer the question of why a traveler's sex needed to be ascertained, the Department notes that at the time there was no consideration of a third sex marker as the passport book was based on the technical specifications of the ICAO, and the ICAO specified only male and female.  *Id*.

But as noted already, the ICAO standards for machine-readable travel documents now specify that sex should be designated by "the capital F for female, M for male, or X for unspecified." ECF 1 ¶ 35; ICAO Document 9303, Machine Readable Travel Documents, at IV-14 (7th ed. 2015) at 14.  The Department does not explain its departure from adherence to this standard.

Overall, in these three rationales, the Department argues that the purpose of the sex designation on the passport is to ensure the accuracy and integrity of the document.  The Department has maintained that the male and female markers "help identify the bearer of the

document, and ensure that the passport remains reliable proof of identification." ECF 35 at 24.

Dana submitted multiple medical certifications from licensed physicians attesting that she is

neither male nor female, but intersex. Dana's Complaint describes invasive and unnecessary

medical procedures that doctors subjected Dana to as a child that attempted but failed to change

Dana's intersex nature. ECF 1 ¶ 15. I find that requiring an intersex person to misrepresent their

sex on this identity document is a perplexing way to serve the Department's goal of accuracy and

integrity. In sum, taking the Department's proffered rationales that I previously determined were

inadequate with the new evidence in the administrative record regarding the growing body of

jurisdictions that allow for a non-binary gender marker, I find that the Department failed to show

that its decision-making process regarding the policy was rationale.

### ii. Reason Four Fails to Show Rational Decision Making

The Department's fourth asserted reason for maintaining the binary gender policy also

fails. The Department argues that the policy is necessary because there is no generally accepted

medical consensus as to how to define a third sex, making it unreliable as a component of

identity. R. 85. However, by its own regulations, the Department relies upon a medical

authority which plainly recognizes a third sex. *See* 7 FAM §1310(b). The Department defers to

the medical "standards and recommendations for the World Professional Association for

Transgender Health (WPATH), recognized as the authority in this field by the American Medical

Association (AMA)," 7 FAM §1310(b) App. M. WPATH recognizes a third sex. R. 646–763.

In addition, the administrative record includes the opinions of three former U.S. Surgeons

General and the American Medical Association Board of Trustees that describe non-binary sex

categories. ECF No. 65 at 13–14. The Department recognizes that it is medically established

that an intersex person is born with mixed or ambiguous markers of sex that do not fit into the

typical notions of either male or female bodies. 7 FAM §1360 App. M; R. 185, 605, 765.  The

Department's uncertainty about how it would evaluate persons "transitioning" to a third sex

misses the ball – intersex people are born as they are.

In the May 2017 letter, the Department highlights that it is unable to recognize a third

gender "partly due to the lack of consensus of what it means, biologically, for an individual to

have a sex other than male or female."  R 86.  However, the information relied upon in the

administrative record also reflect a lack of consensus as to how individuals born intersex could

be classified as either "male" or "female," R. 947–65. [8]  This has not prevented the Department

from requiring intersex people to elect, perhaps at random, as it doesn't seem to matter to the

Department which one of those two categories Dana chooses.  Even if the Court ignored the

Department's deference to the WPATH, the justification that there is a lack of medical

consensus, whereby "there are a number of genetic, hormonal and physiological conditions in

which an individual is not easily classified as male or female," R. 86, still fails to account for

why the binary sex designation is preferable.

Taking this evidence together, the Department's argument that the gender policy is

necessary because there is no medically accepted consensus regarding a third sex is not rational

and fails.

---

[8] Moreover, Plaintiff offers evidence of the potential harmful effects of forcing an arbitrary binary classification upon people born intersex. ECF. 65 at 14.  Re-Thinking Genital Surgeries on Intersex Infants, Elders, Satcher and Carmona (October 26, 2016), at http://www.palmcenter.org/wp-content/uploads/2017/06/Re-Thinking-Genital-Surgeries-1.pdf ("[A] consensus is emerging that concludes that children born with atypical genitalia should not have genitoplasty absent a need to ensure physical functioning.").  Dana's Complaint reflects that attempts to sort intersex individuals into the categories of "male" or "female" upon birth have resulted in unnecessary and painful medical surgeries and harm to intersex individuals.

### iii. Reason Five is not Sufficient

Finally, the Department arrives at what this Court suspects is the real reason that the Department has been so resistant to adding a third gender option to passports: money and time. The Department argues that switching the existing data systems—which are currently incapable of printing a passport that reflects a gender option other than "M" or "F"—would be considerably costly and timely.  R. 86.  However, the Department admits that it has not undertaken a level of effort (LOE) estimation on the time and cost that it would take to add the third sex designation option to the U.S. passport biodata page.  *Id.*  This does not ring of a rational decision.  Without record evidence of or even an attempt at determining the time, cost, or coordination necessary, the Court cannot defer to the Department's claims of administrative convenience.  *See, e.g.*, *Plyer v. Doe*, 457 U.S. 202, 227–28 (1982) ("There is no evidence in the record suggesting . . . any significant burden on the State's economy.").  True, common sense would tell anyone that altering a system will necessary involve some effort and money.  However, the Department's rational here is the product of guesswork rather than actual analysis, and it does not rise to the level of reliable evidence that is needed to show that the Department's policymaking was rational.

In sum, the Department added very little to the evidence and explanations that were before this Court in November 2016 when I determined that the Department's policymaking was not the product of rational decision making.  Even with the new memorandum and proffered reasons, I again find that the gender policy is arbitrary and capricious and not the product of rational decision making.

2. __The Denial of Dana's Passport Application Exceeds the Authority Delegated to the Department by Congress, 5 U.S.C. § 706(2)(C)).__

Dana challenges the policy under a second provision of the APA, section 706(2)(C), which empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).  Dana argues that the Department is acting beyond its authority in denying the option for a non-binary gender option on the passport application.  ECF No. 1 at 14–15.

The Department has the power to issue passports under the Passport Act of 1926 "under such rules as the President shall designate and prescribe for and on behalf of the United States." 22 U.S.C. § 211a; *see* Exec. Order 11295.  While this grant of authority does not expressly authorize the denial of passport applications nor specify particular reasons that passports may be denied, the Supreme Court has construed this power broadly.  Defendant and plaintiff refer to the Supreme Court cases of *Kent v. Dulles* and *Haig v. Agee* to resolve the question of whether the Department is acting outside of its authority in withholding a passport from Dana.

*Haig* held that the Secretary has the power to deny passports for reasons not specified in the Passport Act.  *Haig v. Agee*, 453 U.S. 280, 290 (1981).  *Haig* concerned the Department's revocation of a former employee of the CIA's passport engaging in activities.  There, the Supreme Court examined historical practices to conclude that the Executive did have "authority to withhold passports on the basis of substantial reasons of national security and foreign policy," and that legislative history confirmed congressional recognition and of this power.  *Id.* at 293.  In *Kent v. Dulles*, the Supreme Court examined whether the Secretary of State had the authority to deny a passport based on suspicions that the passport applicant was a communist.  Though the

Court concluded that the Secretary of State did not have authority to promulgate regulations denying passports to persons suspected of being communist, it also emphasized that the Department had a long history of exercising the power to deny passport applications based on grounds related to "citizenship or allegiance on the one hand or to criminal or unlawful conduct on the other." *Id.* at 127–28. Here, we don't have a case where the passport applicant is being denied on grounds related to national security, foreign policy, citizenship, allegiance, or criminal or unlawful conduct. Indeed, 22 C.F.R § 51.60 identifies a number of discretionary and mandatory reasons that a passport can be denied, and these provisions relate to such grounds. None of the provisions setting forth reasons for mandatory and discretionary restrictions of passports in 22 C.F.R. § 51.60 apply to Dana. ECF No. 61 at 23. "It is beyond dispute that the Secretary has the power to deny a passport for reasons not specified in the statutes," *Haig* at 281; however a reason must be given, and *Kent* and *Haig* both hold that it must also be a good one.

The authority to issue passports and prescribe rules for the issuance of passports under 22 U.S.C. § 211a does not include the authority to deny an applicant on grounds pertinent to basic identity, unrelated to any good cause as described in *Kent* and *Haig*. The Department contends that it was acting within its authority in requiring every applicant to fully complete the passport, *see* 2 C.F.R. §51.20(a). ECF No. 41 at 5. I agree, but Dana does not take issue with the regulation that requires fully completing a passport application. Dana's issue is that there is not an option on the passport application that does not require Dana to untruthfully claim to be either male or female. ECF No. 61 ¶ 26. I have already held that the Department has acted arbitrarily and capriciously in maintaining a gender policy that requires Dana to inaccurately select M or F, when the administrative record does not provide a rational basis for this requirement. Because neither the Passport Act nor any other law authorizes the denial of a passport application without

good reason, and adherence to a series of internal policies that do not contemplate the existence of intersex people is not good reason, the Department has acted in excess of its statutory jurisdiction.

### 3.  Injunctive Relief

In addition to declaratory judgment that defendant is in violation of the Administrative Procedure Act, plaintiff's requested relief includes an injunction "permanently restrain[ing] or enjoining Defendants from relying upon its male-or-female, binary-only gender maker policy to withhold the requested passport from Dana or any other individual." ECF No. 1 at 21.  Because Dana is the only plaintiff in this case, I will only evaluate this request for relief with regards to Dana.

Section 706(1) of the Administrative Procedure Act directs a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed."  Section 706(2)(A) directs the court to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law," and section 706(2)(C) directs the court to do the same with those "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  This Court has already given the Department an opportunity to shore up the record and show that its decision to deny Dana Zzyym a passport was the result of rational decision making. For the reasons explained above, the Department failed to do so.  Dana has been pursuing a passport for close to four years now.  I grant Dana's request for injunctive relief and enjoin the Department from relying upon its binary-only gender marker policy to withhold the requested passport from Dana.

### B.  Plaintiff's Claims for Mandamus Relief (Count V)

The grant of a writ of mandamus under 28 U.S.C.A. § 1361 requires a showing that no

other adequate remedy is available.  *See Rios v. Ziglar*, 398 F. 3d 1201, 1206 (10th Cir. 2005);

*Mt. Emmons Mining co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997).  Here, relief is

available under the APA, and the available remedy under both statutes is essentially identical.

*See, e.g., Mt. Emmons Min. Co.* 117 F. 3d at 1170; *Estate of Smith v. Heckler*, 747 F.2d 583, 591

(10th Cir. 1984) (citing *Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419, Bhd. of

Painters & Allied Trades, AFL-CIO v. Brown*, 656 F.2d 564, 567 (10th Cir. 1981)) (" . . . 28

U.S.C. § 1331 gives the district court jurisdiction to issue a mandatory injunction.  The

injunctive remedy is provided for by the Administrative Procedure Act, 5 U.S.C. § 706(1), where

a court reviewing agency action is authorized to 'compel agency action unlawfully withheld.'

Thus, . . . we concluded that a mandatory injunction is essentially in the nature of mandamus,

and jurisdiction can be based on either 28 U.S.C. § 1361, §1331, or both.").

Ordering the defendant to issue the passport is, in substance, the same as enjoining the

defendant from relying on its binary gender policy to withhold a passport, since that is the only

basis on which the defendant has acted.  Technically, however, because injunctive relief is

available under the Administrative Procedure Act, and this relief is essentially identical to a writ

of mandamus, the Court need not issue a writ of mandamus.  Also, because the Administrative

Procedure Act grants plaintiff relief, I will not proceed to the constitutional claims in Counts III

and IV.

### CONCLUSION AND ORDER

I find that the administrative record does not show that the decision making process that resulted in the policy in question was rational.  The withholding of the passport from Dana Zzyym is in excess of statutory authority.  Recognizing the unreasonable delays Dana has faced in the issuance of a passport with an intersex marker, the Court enjoins the Department from relying upon its binary-only gender marker policy to withhold the requested passport from Dana.

DATED this 19th day of September, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge