IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-02362-RBJ

DANA ALIX ZZYYM,

    Plaintiff,

v.

MICHAEL R. POMPEO, in his official capacity as the Secretary of State; and
STEVEN J. MULLEN, in his official capacity as the Director of the Colorado Passport Agency
for the United States Department of State,

    Defendants.

## ORDER ON MOTION TO STAY JUDGMENT

Final Judgment was entered in this case on September 19, 2018, ECF No. 89. I held that the U.S. Department of State ("Department") violated the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and (C) and enjoined the Department from relying upon its binary-only gender marker policy to withhold the requested passport from Plaintiff Dana Zzymm ("Dana"). Defendants filed a Notice of Appeal on November 19, 2018, ECF No. 93, and now move to stay this judgment pending appeal, ECF No. 98. Plaintiff filed their response in opposition to this motion, ECF No. 101, and this motion became ripe with the filing of defendants' reply, ECF No. 105. For the reasons set forth below, this motion is denied.

## I.     STANDARD OF REVIEW

District Courts have the authority to stay an injunction while an appeal is pending from the final judgment that granted the injunction.  Fed. R. Civ. P. 62(c).  However, "[a] stay is an intrusion into the ordinary process of administration of judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant."  *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks and citations omitted).  It is within this Court's discretion to stay an injunction and the Department "bears the burden of showing that the circumstances justify an exercise of that discretion."  *Id.* at 434.

The Supreme Court has identified four factors that guide the issuance of a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The Tenth Circuit has held that "where the moving party has established that the three 'harm' factors tip decidedly in its favor, the 'probability of success' requirement is somewhat relaxed."  *F.T.C. v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 852 (10th Cir. 2003).  In these circumstances, the moving party need only to show that it "has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation."  *Id.* at 853.  However, as I will explain, I do not conclude that the defendants demonstrate that the harm factors weigh so decidedly in their favor to justify a relaxed review of the probability of success factor.  Therefore, the standard for factor

two is whether defendants show "a substantial likelihood of success on the merits of its appeal." *Id.*

## II. ANALYSIS

A) **<u>The Harm Factors.</u>**

The Department argues that compliance with the Court's injunction during pendency of the appeal would irreparably harm defendants and the public. Where, as here, the government's "asserted injury is exclusively one involving the public interest," the second and fourth prongs of the stay analysis overlap. *Mainstream Mktg. Servs., Inc.*, 345 F.3d at 852. As support, the defendants provide the declarations of Carl C. Risch, Assistant Secretary of State for Consular Affairs, ECF No. 98-1, and Kenneth J. Reynolds, Director of the Office of Consular Systems and Technology, ECF No. 98-2. In his declaration, Mr. Reynolds discusses the process of producing a valid U.S. electronic passport. An electronic passport or "ePassport" is the standard U.S. passport issued by the Department and contains an electronic chip containing secure digitized image and biographic data about the bearer. ECF No. 98-2 at ¶3. Mr. Reynolds describes the numerous information technology systems involved in producing ePassports that would need to be modified to ensure that an additional sex marker would be recognized and supported. He estimates that the changes to existing software systems to create a fully integrated ePassport would take approximately 24 months and cost $11 million. *Id.* at ¶1.

Mr. Reynolds also states that the Bureau of Consular Affairs ("CA") has considered the possibility of printing a single ePassport for Dana with an "X" sex marker as a "one-off," outside of the normal processes. *Id.* at ¶7. Instead of updating all software systems to create a fully integrated ePassport, he can incorporate modifications to certain systems to change the sex

3

marker in the issuing system's database to an "X." Producing a one-off passport would take approximately four weeks. *Id.* at ¶7. Mr. Reynolds describes some drawbacks to the one-off passport: mismatches with Department of Homeland Security (DHS) systems could lead DHS officials at ports of entry to require additional screening for Dana, *id.* at ¶9, and a one-off passport would take longer to replace if lost or stolen, *id.* at ¶10. Mr. Reynolds describes another option as well: producing a type of passport known as an Emergency Photo-Digitized Passport (EPDP). *Id.* at 17. Unlike an ePassport, an EDPD does not have an electronic chip. It can only be printed at overseas posts, and would need to be renewed more frequently than an ePassport, typically every year. *Id.* at ¶16. This type of passport would also take approximately four weeks to produce. *Id.* at ¶18. Issuing a one-off EDPD passport has the same drawbacks as the ePassport: delays in re-issuance if lost or stolen and not matching data in the record systems potentially causing Dana additional screening. *Id.* at ¶¶18-20.

Mr. Risch, in his declaration, describes harms that he perceives the issuance of a one-off passport for Dana would cause. He states that the issuance of a single passport that does not conform to publicized U.S. standards would undermine the U.S. passport's status as the "gold standard" identity and travel document. ECF No. 98-1 at 7. He states that because the Department has not announced any intention to produce passports with anything other than "F" or "M" as sex markers, that the bearer of the one-off passport, Dana, would be subjected to additional vetting, inconvenience, delay, and possible denial of entry. *Id.* He further states that the issuance of a one-off passport to Dana could make foreign officials more likely to accept similarly nonconforming passports issued by other countries in the future, undermining the reliability of the system of international travel. ECF No. 98-2 at 5.

The Department argues the time and cost required to fully integrate changes to their system is irreparable injury. It argues further that pursuing an option that does not require investment in their software systems and takes four weeks, producing a "one-off" passport for Dana, would cause irreparable harm to "the U.S. passport's status as the gold standard identity and travel document." ECF No. 98 at 9-10.

Plaintiff argues that if the Department chooses to pursue the first option of updating their software systems, economic loss does not, in and of itself, constitute irreparable harm. *See Port City Props. V. Union Pac. R.R. Co.*, 518 F.3d 1186, 1190 (10th Cir. 2008). Citing law from other circuits, plaintiff argues that "[t]o successfully shoehorn potential economic loss into a showing of irreparable harm, a [movant] must establish that the economic harm is so severe as to 'cause extreme hardship to the business' or threaten its very existence." *Coal for Common Sense in Gov't Procurement v. United* States, 576 F. Supp. 2d 162, 168 (D.D.C. 2008). Defendants point out that these cases refer to businesses, and not federal agencies. However, the reasoning in these cases is applicable to any entity. That is, that economic loss is not irreparable harm unless the movant can show that such an economic loss would cause it harm as an entity, for example by impairing its ability to perform its core functions.

Plaintiff asserts that an $11 million expense would not amount to irreparable harm as that cost represents only .03 percent of DOS's annual budget. The Department points out that plaintiff identifies no authority for comparing the cost of implementing the "X" sex marker to the entire DOS budget. Instead, the Department offers that the estimated cost of implementing the "X" marker changes would be 4.7 percent of the budget allocated to CA, Office of Consular Systems and Technology for systems development, operations and maintenance relating to the

Passport function for FY2019. ECF No. 105 at 2. It is the Department's burden to show that it would suffer an irreparable injury. The Department does not argue that an expenditure that amounts to 4.7 percent of the budget allocated to consular systems and technology for systems development, operations and maintenance for this year would impair its ability to perform these technological tasks related to the Passport function. Because the Tenth Circuit has held that economic loss by itself is not irreparable harm, I cannot conclude that updating its software systems would cause irreparable harm to the Department.

In reference to the one-off passport solution, plaintiff also argues that the Department cannot claim potential harm to Dana, such as travel delays, as irreparable harm to itself. Given that there are possible reasonable solutions to these issues, such as giving notice to passport officials, and that U.S. customs and border officials already encounter "X" passports of foreign nationals entering the United States, plaintiff suggests that the difficulty of processing this "X" passport may be overstated. ECF No. 101 at 4-6. I also note that Dana now has a Colorado driver license bearing gender marker of "X," undercutting some of the Department's "matching" concerns, and that Dana plans to use this passport to travel to a conference in New Zealand, a country that issues and accepts passports with a gender designation of "X".[1]

Plaintiff also argues that the Department's arguments that a one-off passport would impair national security are speculative. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862 ("National-security concerns must not become a talisman used to ward off inconvenient claims."). Much of the defendants' brief discusses how harm to the U.S. passport's reputation can harm national

---

[1] *See Information about Changing Sex/ Gender Identity*, Government of New Zealand Identity and Passports https://www.passports.govt.nz/what-you-need-to-renew-or-apply-for-a-passport/information/ (Last Accessed Feb. 20, 2019).

security interests, and I find this to be a reasonable and almost self-evident argument. However, the Department's argument that the U.S. passport's reputation will be harmed in the first instance is premised on the fact that the U.S. passport is backed by a "robust set of *publicized* [Department of State] regulations and policies" and that the Department undertakes "substantial effort to notify all countries about [an] impending change and send exemplars of the document so that foreign authorities can recognize the valid document." ECF No. 98 at 9. I don't see why the Department cannot issue appropriate notice or publicize its issuance of Dana's passport in the same way to address concerns that the U.S. Passport's reputation will be harmed if a passport does not conform to information that the Department publicizes about U.S. passports. Yet, the Department asks that I do not substitute my views for the conclusion of a senior Department official, ECF No. 105 at 3, and I do not intend to do so. If the Department concludes that issuing a single passport to Dana even with appropriate notice will undermine the system of international travel as we know it, ECF No. 98 at 10, it can comply with the judgment by updating its software systems. While this may be a difficult choice for the Department, it is not an impossible choice. Complying with a judgment necessarily involves some harm to the party against whom a judgment is entered. Yet, the issuance of a stay is "an extraordinary remedy," *Nken,* 556 U.S. at 437 (J. Kennedy concurring), and the Department has not demonstrated irreparable harm to justify it.

To the third harm factor, the Department argues that a stay would not affect plaintiff, as the Department can issue Dana a passport with an "F" or "M" marker. However, the Department has made this offer throughout the course of this case's litigation, arguing at times that Dana's ability to obtain such a passport should render Dana's case meritless. I have addressed this

7

argument in past orders, and will not do so again here, finding that a stay will cause harm to Dana.  *See* ECF Nos. 55, 88.  Dana has missed travel opportunities for four years throughout the course of this litigation, and Dana would continue to miss travel opportunities if a stay is granted.

**B) Likelihood of Success on the Merits of the Appeal.**

Defendants must also demonstrate a substantial likelihood of success on the merits of an appeal to justify the issuance of the stay.  Defendants raise some arguments regarding the Department's 2017 decision to deny Dana's passport application that they argue they did not have an opportunity to brief prior to this Court's judgment.  After reviewing the briefings, I respectfully conclude that this factor also does not weigh in the defendants' favor.

## ORDER

Defendants' Motion to Stay, ECF No. 98 is DENIED.

DATED this 21st day of February, 2019.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge